# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS R. ABBE, individually and on behalf of all others similarly situated; et al., <br><br> Plaintiffs, <br><br> vs. <br><br><br> CITY OF SAN DIEGO, and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 05cv1629 DMS (JMA) <br><br> **ORDER (1) GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS; AND (2) DENYING MOTION FOR A MORE DEFINITE STATEMENT** <br><br> [Doc. No. 55] <br> [Doc. No. 57] |

Defendant City of San Diego ("City") has filed a Motion for Partial Judgment on the Pleadings in *Abbe v. City of San Diego*, 05cv1629; and a Motion to Dismiss and Motion for a More Definite Statement in *Burkett v. City of San Diego*, 06cv538. The *Abbe* and *Burkett* cases recently were consolidated, and therefore the motions are addressed together. Plaintiffs have filed oppositions to the motions, and the City has filed a consolidated reply. The motions were heard on September 29, 2006, at which time the parties were represented by counsel. For the reasons discussed below, the Court GRANTS-IN-PART and DENIES-IN-PART the City's Motion for Partial Judgment on the Pleadings, GRANTS-IN-PART and DENIES-IN-PART the City's Motion to Dismiss, and DENIES the Motion for a More Definite Statement.

# I.

# BACKGROUND

These consolidated cases involve similar facts and identical legal theories. Plaintiffs, more than 1400 individuals, are current and former San Diego police officers. (*Abbe* Second Amended Complaint ("*Abbe* SAC") at ¶ 7; *Burkett* First Amended Complaint ("*Burkett* FAC") at ¶ 3.) Plaintiffs sue the City asserting statutory and contractual rights to overtime payment and reimbursement of certain expenses. Both complaints allege claims under: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (2) Cal. Labor Code § 226.7, for denial of meal and rest breaks, and failure to compensate therefor; (3) Cal. Labor Code § 512, for denial of meal breaks; (4) Cal. Labor Code § 2802, for failure to reimburse work-related expenses; and (5) common law breach of contract. The City, through its pending motions, challenges Plaintiffs' California Labor Code claims.[1]

Plaintiffs allege the City violated federal and state labor law by failing to compensate Plaintiffs for, among other things, time spent in required preshift and postshift activities, including reviewing and finalizing arrest and investigation reports; time spent getting dressed; and time spent working during meal, rest break and free-time periods. (*Abbe* SAC at ¶7; *Burkett* FAC at ¶7.) According to Plaintiffs, the City also failed to reimburse them for necessary expenses incurred, including purchasing and maintaining uniforms, weapons and safety equipment. (*Abbe* SAC at ¶8; *Burkett* FAC at ¶8.) Plaintiffs also allege the City adopted procedures that resulted in the failure to keep accurate wage records as required by federal and state law. (*Abbe* SAC at ¶9; *Burkett* FAC at ¶9.) Further, the Plaintiffs allege the City breached the employment contract as set forth in a Memorandum of Understanding ("MOU") entered into between the City and the San Diego Police Officers' Association. (*Abbe* SAC at ¶10; *Burkett* FAC at ¶10.) Plaintiffs allege they are intended beneficiaries of the MOU, which sets forth the terms and conditions of their employment. (*Abbe* SAC at ¶¶13, 15; *Burkett* FAC at ¶12.)

On May 16, 2006, pursuant to stipulation, the Court ordered the respective cases consolidated. [*Abbe* Doc. No. 53.] The City now moves for partial judgment on the pleadings in *Abbe* as to all state labor code claims. Similarly, the City challenges all such claims in *Burkett* through its motion to

---

[1] Unless otherwise indicated, all further statutory references are to the California Labor Code.

dismiss. The City also moves for a more definite statement in *Burkett* as to the FLSA claim.[2] Because the City's motions to dismiss and for partial judgment on the pleadings are based on the same grounds, the Court addresses the motions together.

## II.

## DISCUSSION

**A.**   **Legal Standard: Motions to Dismiss and for Judgement on the Pleadings**

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). In deciding a 12(b)(6) motion, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill*, 80 F.3d at 338. Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro*, 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The court, however, need not accept all conclusory allegations as true; rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted). *See also Benson v. Arizona State Bd. of Dental Examiners*, 673 F.2d 272, 275-76 (9th Cir. 1982) (court need not accept conclusory legal assertions); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act."); *accord Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

---

[2] In *Abbe*, Plaintiffs have filed a Second Amended Complaint (SAC), and the City has answered. In *Burkett*, Plaintiffs have filed a SAC, adding additional plaintiffs, and the City has not yet answered. Pursuant to the stipulated order granting Plaintiffs leave to file the SAC in *Burkett*, the pending motion to dismiss applies to the SAC.

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same general standard as that applied to a Rule 12(b)(6) motion: *i.e.*, judgment on the pleadings is properly granted when, taking all of the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).

The City advances three principal arguments in its challenge to Plaintiffs' state Labor Code claims: (1) the claims are barred by the home rule provisions of the California Constitution; (2) certain Wage Orders promulgated by the California Industrial Welfare Commission (IWC) exempt Plaintiffs from the application of the Labor Code sections in question; and (3) Plaintiffs lack standing to bring suit under the Labor Code because they failed to exhaust their administrative remedies.[3] The Court addresses only the first two arguments as the City concedes the exhaustion argument in its Reply. (Reply at 9.)

**B.     The California Constitution and its Home Rule Provisions**

The California Constitution, through its home rule provisions, grants charter cities and counties autonomy to "make and enforce all ordinances and regulations in respect to municipal affairs, subject only to [the] restrictions and limitations provided in their several charters . . ." Cal. Const. art. XI, § 5, subd. (a). The California Constitution further provides that "municipal affairs" shall include such matters as the "compensation, method of appointment, qualifications, tenure of office and removal" of charter city and county employees. *Id.* It is undisputed the City of San Diego is a charter city.

In *County of Riverside v. Superior Court*, 30 Cal.4th 278, 285 (2003), the California Supreme Court held that the home rule provisions are an express limitation on the Legislature. Where charter entities "provide for the compensation of [their] employees," the Legislature "does not have . . . authority" to regulate such matters. *See id.* "It has long been settled that, insofar as a charter city legislates with regard to municipal affairs, its charter prevails over general state law." *Sonoma County Organization of Public Employees v. County of Sonoma*, 23 Cal.3d 296 (1979).

---

[3] The City raised its constitutional argument regarding sections 512 and 226.7 for the first time in its reply brief. Accordingly, the Court ordered additional briefing on the issue, and Plaintiffs submitted a supplemental opposition on September 18, 2006.

In addition, the State is permitted to override a charter city's regulation of municipal affairs *only* on matters of "statewide concern." *Baggett v. Gates*, 33 Cal.3d 128, 136 (1982). What constitutes a municipal affair as opposed to a matter of statewide concern "is often a difficult question." *Sonoma County Organization of Public Employees*, 23 Cal.3d at 316. Where a state law regulates compensation, it is generally barred by the home rule provisions. *County of Riverside*, 36 Cal.4th at 289 ("[T]he determination of the wages paid to employees of charter cities . . . is a matter of local rather than statewide concern."). If, however, a state law regulates only the process by which compensation is determined, it is deemed to regulate a matter of statewide concern that does not conflict with the home rule provisions. In *County of Riverside*, the court addressed the issue as follows:

> We have 'emphasize[d] that there is a clear distinction between the *substance* of a public employee labor issue and the *procedure* by which it is resolved. Thus there is no question that 'salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws.' Nevertheless, the process by which the salaries are fixed is obviously a matter of statewide concern . . . .'

30 Cal.4th at 289 (original emphasis)(citations omitted).

### 1. Municipal Affairs and Labor Code Sections 226.7, 512 and 2802

The question presented here is whether sections 226.7, 512 and 2802 regulate matters of municipal affairs or matters of statewide concern. The City advocates a broad reading of the home rule provisions, arguing: "this exemption broadly prohibits any state regulation of the *terms and conditions* of employment that have been established by charter cities . . ." (Reply at 2)(emphasis added). Specifically, the City argues it is "exempt from all Labor Code provisions regarding wages, compensation, overtime, as well as closely related provisions, including meal and/or rest breaks." (*Id.* at 5.) But case law does not support such a broad reading of the home rule provisions. In fact, the relevant case law closely tracks the language of section 5 of the Constitution, granting charter cities and counties autonomy regarding matters of "compensation," but not all terms and conditions of employment.

Plaintiffs, on the other hand, argue without citing authority that "case law clearly indicates that [the labor issues in question] are statewide concerns and the Legislature is well within its rights to pass regulation that impinges on home rule [provisions]. . . ." (Supplemental Opposition at 7.) A review

of the Labor Code sections in question and the relevant case law indicates the City has the better reasoned argument as to sections 226.7 and 2802, but not section 512.

### a. Section 226.7

Section 226.7 involves matters of municipal affairs because it regulates compensation. It requires employers to provide rest periods, or to "*pay* the employee one additional hour of *pay* at the employee's regular rate of *compensation* for each work day that the meal or rest period is not provided." *Id.* (emphasis added).[4] Section 226.7 clearly regulates the substance of employment compensation and, as such, it encroaches on matters of municipal affairs and may not be applied to the City without violating the home rule provisions.[5] *See County of Riverside*, 36 Cal.4th at 289 ("[T]he determination of the wages paid to employees of charter cities . . . is a matter of local rather than statewide concern.").

### b. Section 2802

Section 2802 also involves matters of municipal affairs because it regulates compensation by requiring employers to indemnify employees for "necessary expenditures."[6] California case law supports this conclusion, holding that section 2802 cannot be applied to charter cities because

---

[4] Section 226.7 provides, "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." § 226.7 (a) - (b).

[5] Several California Courts of Appeal have addressed whether payment under section 226.7 is compensation or a penalty for purposes of determining the appropriate statute of limitations. There is no consensus on the question, and the issue is presently before the California Supreme Court. *See National Steel and Shipbuilding Co. v. Superior Court*, 135 Cal.App.4th 1072 (2006) (review granted April 12, 2006) (holding payment under section 226.7 "is in the nature of a statutory remedy to employees," and not a penalty on employers); *cf. Murphy v. Kenneth Cole Productions, Inc.*, 134 Cal.App.4th 728 (2006) (review granted Feb. 22, 2006) (holding payment imposed by section 226.7 is "not overtime pay for an allowed work period, but a penalty for violating the law that prohibits work during those times.") For purposes of evaluating section 226.7 in the context of the home rule provisions, this Court finds persuasive the *National Steel* court's holding that "Section 226.7 has the dual function of deterring employers from requiring their employees to work through mandated meal and rest periods and compensating employees required to work through these periods." *National Steel*, 135 Cal.App.4th at *8.

[6] Section 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or his or her obedience to the directions of the employer . . ."

indemnification for expenditures such as work uniforms constitutes compensation. *In re Work Uniform Cases*, 133 Cal.App.4th 328, 340 (2005) ("payment to employees for work uniforms is a part of the employee's compensation."). Similarly here, indemnification for work-related expenses such as the purchase and maintenance of uniforms, weapons, safety equipment and related items constitutes compensation. Plaintiffs may not therefore bring a claim against the City under section 2802.

Plaintiffs argue that since their terms of compensation are governed by the MOU, "to determine if the holding of *Work Uniform* is applicable [], the Court must determine if each item claimed by Plaintiffs under Section 2802 constitutes an item of 'compensation.'" (Plaintiffs'd Opposition to Mot. to Dismiss at 8.) Additionally, Plaintiffs contend that the City pays them $900 for "unspecified equipment." (*Id.* at 9.) "Consequently, the specific equipment for which Plaintiff[s] are allegedly compensated is a question of fact that cannot be resolved summarily on Defendant's motion." (*Id.*)    Plaintiffs' arguments, however, conflate their breach of contract claim with their statutory 2802 claim. Whether Plaintiffs have stated a claim under section 2802 is a legal question (*see In re Work Uniform Cases*, 133 Cal.App.4th at 340) that may be decided on a motion to dismiss. The question of whether the City's payment of $900 is sufficient to meet its alleged obligations under the MOU is a different question and relevant only to the breach of contract claim. Because section 2802 conflicts with California's home rule provisions, it may not be applied to the City.[7]

### c. Section 512

Section 512 is different from section 226.7 in one material respect: while sections 512 and 226.7 require employers to provide rest and meal breaks,[8] section 512 does not require employers to compensate their employees in the event such breaks are not provided. The City nonetheless contends section 512 is preempted by the home rule provisions because it is a "substantive regulation" of the terms and conditions of employment. (Reply at 7.) In support, the City cites *Work Uniform Cases*,

---

[7] Plaintiffs also argue the City's failure to reimburse them for work-related expenses "constitutes a taking under the Fifth Amendment of the U.S. Constitution." (Plaintiffs' Opposition to Mot. to Dismiss at 10-11.) The problem with this argument is that Plaintiffs have not alleged a violation of their Fifth Amendment rights. Whether or not the City's conduct violates the Fifth Amendment is irrelevant to the analysis of whether Plaintiffs have stated a claim under section 2802.

[8] Section 512 states, "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."

133 Cal.App.4th 328, and *Kim v. Regents of the University of California*, 80 Cal.App.4th 160 (2000). *Work Uniform Cases* and *Kim*, however, are distinguishable because they address state law provisions that regulate employee "wages" and "compensation," matters that are clearly municipal in nature. *See Work Uniform Cases*, 133 Cal.App.4th at 338 ("we conclude that payment to employees for work uniforms is a part of the employee's compensation and should be considered like any other payment of wages, compensation or benefits."); *Kim*, 80 Cal.App.4th at 167 ("the issue here pertains to the determination of the amount of wages to be paid to individual employees.") Here, in contrast, section 512 does not provide for wages or compensation in any manner; rather, it focuses solely on the requirement of meal breaks. Therefore, section 512 does not conflict with the home rule provisions because it regulates matters unrelated to compensation.

### 2.     **The Home Rule Provisions and Fundamental Fairness**

In response to the City's argument that the home rule provisions bar the application of the subject labor code provisions, Plaintiffs assert it is "contrary to the concepts of fundamental fairness and common sense," that private employees are entitled to the benefits of the Labor Code sections in question, but not public employees. (Supplemental Opposition at 3.) Plaintiffs' claim of unfairness is unfounded for several reasons. First, public employees of non-charter cities and counties, in addition to private employees, benefit from the protections of sections 512, 226.7 and 2802. Second, the home rule provisions of the California Constitution implicitly reflect the democratic judgment that charter cities ought to have autonomy to regulate their own municipal affairs. Plaintiffs, as employees of a charter city, are not without protection, as such protection is inherent in the political process; officials in charge of setting wage standards are accountable to the electorate. Third, consistent with section 5 of the California Constitution, the Legislature may require charter cities to comply with regulations regarding matters of statewide concern. *See County of Riverside*, 30 Cal.4th at 288 (requiring charter counties to comply with certain procedural safeguards for "resolving disputes regarding wages, hours and other conditions of employment"); *see Seal Beach Police Officers Assn.*, 36 Cal.3d 591 (requiring charter cities to comply with meet-and-confer requirements set out in Meyers-Milias-Brown Act (Gov. Code § 3500 *et seq*.)). Finally, federal oversight through the FLSA applies to all concerned.

For these reasons, the Court finds sections 226.7 and 2802 do not apply to the City because they impermissibly regulate employment compensation, a matter of municipal affairs. Section 512, on the other hand, does not regulate compensation and thus, does not conflict with the home rule provisions. Because section 512 is not barred by the home rule provisions, the question remains whether section 512 – as implemented by certain Wage Orders – applies to Plaintiffs.

**C.      The Industrial Welfare Commission and Relevant Wage Orders**

The City contends Wage Order 4-2001 exempts Plaintiffs from the application of sections 512 and 226.7. Because section 226.7 does not apply to the City, the question presented is whether section 512 applies to the City under the Wage Orders. A brief overview of the history of the IWC, the relevant Wage Orders, and section 512 is helpful to this analysis.

Established in 1913, the IWC is a five-member "state agency empowered to formulate regulations (known as Wage Orders) governing employment in the State of California."[9] *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 581 (2000) (citations omitted). In exercising its quasi-legislative authority, the IWC has promulgated 17 Wage Orders, following a similar format, with each applying to separate industries or occupations. *See* Cal. Code Regs., tit. 8, § 11000 *et seq.*; *see also Collins v. Overnite Transportation Co.*, 105 Cal.App.4th 171, 174-175 (2003) (citing *Morillion*, 22 Cal.4th at 581). Wage Orders 1 through 16, including Wage Order 4-2001, regulate the wages, hours and working conditions for specific occupations, while Wage Order 17 governs the same for miscellaneous employees. *See* Cal. Code Regs., tit. 8, § 11000 *et seq*.

Section 512 was enacted in 1999, as a part of the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 ("Act") (stats. 1999, ch. 134, codified at Labor Code §500 *et seq.*, and commonly referred to as "AB 60"). *Bearden v. U.S. Borax, Inc.*, 138 Cal.App.4th 429, 434 (2006). The Legislature enacted the Act, in part in response to the IWC's 1997 amendment of its Wage Orders to eliminate the "state's daily overtime rule in favor of the less restrictive weekly overtime rule of the federal FLSA." *Collins*, 105 Cal.App.4th at 176. Among other things, the Act declared null and void the IWC amendment and reinstated earlier Wage Orders that were in effect in 1997, thereby restoring

---

[9] Although the IWC was defunded by the Legislature effective July 1, 2004, its wage orders remain in effect. *Huntington Memorial Hospital v. Superior Court*, 131 Cal.App.4th 893, 902, n. 2 (2005).

the daily overtime rule. *Id.*; *Bearden*, 138 Cal.App.4th at 434; *see also* § 510. "Other portions of the Act established a new statutory scheme governing hours of labor and overtime compensation for all industries and occupations, which codified certain provisions of the IWC Wage Orders, [and] amended other provisions . . ." *Collins,* 105 Cal.App.4th at 176. Section 512 codified the meal break provisions set out in existing Wage Orders. *See* Wage Order 4-89, amended 6-29-93, subd. (11)(A).

Two Wage Orders are at issue: 4-2001 and 17. Wage Order 4 (currently 4-2001; formerly 4-89) was adopted prior to the Act, while Wage Order 17 was adopted to implement "changes in the law as a result of the Legislature's enactment of the [Act]." Cal. Code Regs., tit. 8, §11170, subd. (1). Both Wage Orders include the substantive provisions of section 512, thereby implementing the mandates of that section.[10] Plaintiffs argue Wage Order 17 regulates the wages, hours and working conditions of miscellaneous employees, including police officers, and therefore they are entitled to meal breaks. The City disagrees, asserting police officers are subject to Wage Order 4-2001, which includes a provision specifically exempting public employees. Therefore, even though both Wage Orders include the substantive provisions of section 512, Plaintiffs may benefit from section 512 only if they are covered by Wage Order 17, and not by Wage Order 4-2001.

The City argues the language of Wage Order 17 does not apply to police officers. The introduction to Wage Order 17 indicates it applies to:

> Any industry or occupation not previously covered by, and all employees not specifically exempted in, the Commission's wage orders in effect in 1997, or otherwise exempted by law, are covered by this order.

Cal. Code Regs., tit. 8, §11170, subd. (1)(A). To determine whether Plaintiffs are entitled to the benefits of section 512, the Court must first determine whether police officers were previously covered by, or exempted in, the "wage orders in effect in 1997." The City argues that Wage Order 4-2001 was in effect in 1997 (then Wage Order 4-89), and that it implicitly covers police officers. In support, the City cites section 2(O) of the wage order, which identifies among numerous other occupations the following: "dispatchers; guards; interviewers; investigators; process servers; and 'other related

---

[10] "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of employer and employee." Cal. Code Regs., tit. 8, §11040, subd. (11)(A) [Wage Order 4-2001]; Cal. Code Regs., tit. 8, §11170, subd. (9)(A) [Wage Order 17].

occupations.'" (Mot. for Partial Judgment on the Pleadings at 3.) The City contends police officers fall within the category of "other related occupations."

The City further argues that Plaintiffs may not benefit from the meal breaks set out in Wage Order 4-2001 because subsection 1(B) of the wage order specifically exempts city employees: "*the provisions of this order shall not apply to any employees directly employed by* the State or any political subdivision thereof, including *any city*, county, or special district." Cal. Code Regs., tit. 8, § 11040, subd. (1)(B) (emphasis added). Therefore, the City argues that even though Plaintiffs are covered by Wage Order 4-2001, the city employee exception prevents them from enjoying the benefits of the meal break provisions.

Contrary to the City's argument, however, Wage Order 4-2001 (and similarly Wage Order 4-89), does not cover police officers. The list of over 80 occupations identified in Wage Order 4-2001, set forth in section 2(O), does not mention police officers. Instead, the list includes among others: guards, investigators, and "other related occupations." Cal. Code Regs., tit. 8, § 11040, subd. 2(O). The City argues, without citing any authority, that "other related occupations," includes police officers. Given the lack of authority supporting the City's position, this Court declines to hold that police officers are covered by Wage Order 4-2001. *See Lusardi Construction Co. v. Aubry*, 1 Cal.4th 976, 985 (1992) (statutes governing conditions of employment are construed broadly in favor of protecting employees). Because police officers are not covered by Wage Order 4-2001, the public employee exception therein also does not apply to them. Instead, this exception applies only to public employees whose occupations are identified in the Wage Order.

Accordingly, this Court finds persuasive Plaintiffs' argument that "peace officers are covered by Wage Order 17 because peace officers were not 'previously covered' by a Wage Order." Therefore, Plaintiffs are not exempt from the meal breaks under section 512, and may allege claims based on that section against the City.

**D.     Motion for a More Definite Statement**

A Rule 12(e) motion is proper only where the complaint is so "vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). In such cases, defendant cannot reasonably be expected to frame a proper response. *See Famolare, Inc. v. Edison*

*Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981); *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). Motions for more definite statement are viewed with disfavor, and are rarely granted. *In re American Int'l Airways, Inc.*, 66 B.R. 642, 645 (E.D. Pa. 1986).

Plaintiffs' first claim for relief in *Burkett* alleges a violation the FLSA § 7(a), 29 U.S.C. § 207(a). The City claims it is unable to determine in good faith whether to plead the statute of limitations as an affirmative defense to that claim, as the complaint is filled with allegations that the City engaged in unlawful conduct "[a]t all times relevant to this Complaint." The City moves for an order directing Plaintiffs to specify the time period during which the conduct allegedly occurred.

The complaint is not so vague that the City cannot determine whether to allege the statute of limitations as an affirmative defense. The City had no problem doing so in *Abbe*.

### III.
### CONCLUSION

Based on the foregoing, the Court GRANTS-IN-PART and DENIES-IN-PART the City's motion for judgment on the pleadings in *Abbe*; GRANTS-IN-PART and DENIES-IN-PART the City's motion to dismiss in *Burkett*; and DENIES the motion for a more definite statement.

**IT IS SO ORDERED.**

DATED: October 19, 2006

HON. DANA M. SABRAW
United States District Judge

cc: all parties
Judge Brooks