1   Peter H. Benzian (Bar No. 47456)
    Colleen C. Smith (Bar No. 231216)
2   Aryn P. Thomas (Bar No. 247989)
    LATHAM & WATKINS LLP
3   600 West Broadway, Suite 1800
    San Diego, California 92101-3375
4   Telephone: (619) 236-1234
    Facsimile: (619) 696-7419
5
    George F. Schaefer (Bar No. 139399)
6   Deputy City Attorney
    Office of the City Attorney
7   1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
8   Telephone: (619) 533-5800
    Facsimile: (619) 533-5856
9

10  Attorneys for Defendant City
    of San Diego
11

12              UNITED STATES DISTRICT COURT

13          SOUTHERN DISTRICT OF CALIFORNIA

14

15  MARCUS ABBE, *et al.*              NOS. 05-CV-1629 & 06-CV-0538 DMS (RBB)

16              Plaintiffs,
                                       DEFENDANT CITY OF SAN DIEGO'S REPLY
17      v.                             IN SUPPORT OF ITS MOTION FOR
                                       SUMMARY JUDGMENT
18  CITY OF SAN DIEGO, *et al.*,
                                       Date:      September 14, 2007
19              Defendants.            Time:      1:30 p.m.
                                       Ctrm:      10
20                                     Judge:     Hon. Dana M. Sabraw
                                       Trial:     September 22, 2008
21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3  I.       INTRODUCTION ...................................................................................1

4  II.      DONNING OF UNIFORMS AND EQUIPMENT IS NOT
            COMPENSABLE ..................................................................................2

5
6          A.       Donning and Doffing Basic Uniform Items Is Not Integral and
                    Indispensable ...........................................................................2

7          B.       Donning and Doffing Required Personal Equipment Is *De Minimis* ...................3

8          C.       Section 203(*o*) Precludes Compensation for Donning and Doffing......................4

9  III.     THE CITY DID NOT HAVE ACTUAL OR CONSTRUCTIVE
            KNOWLEDGE OF OTHER UNCOMPENSATED PRE- OR POST-
10         SHIFT ACTIVITIES ...........................................................................5

11  IV.     PLAINTIFFS ALREADY HAVE BEEN COMPENSATED FOR ANY
            ALLEGEDLY UNCOMPENSATED OVERTIME WORK ..............................8

12
13         A.       Plaintiffs Are Not Entitled to Overtime Compensation Until They
                    Have *Worked* More Than Forty-Three Hours in a Single Work
14                  Week ......................................................................................8

15                  1.       The City May Rely on § 207(k) Irrespective of the Absence
                            of Any Announced Intention to Do So......................................8

16                  2.       The City Need Not Pay Plaintiffs Overtime for Up to Thirty
17                          Minutes Per Day of Paid Meal Breaks ....................................11

18         B.       The City May Offset Any FLSA Liability Under § 207(h)...............................11

19  V.      PLAINTIFFS' ARGUMENTS CONCERNING COMPENSATORY
            TIME OFF FAIL TO STATE A VIOLATION OF THE FLSA, AND ARE
20         UNSUPPORTED BY THE EVIDENCE IN ANY EVENT ............................12

21         A.       The City's Compensatory Time Off Program Is Not "Illusory" ........................12

22         B.       The City's CTO Practices Fully Complied With the Law................................13

23                  1.       CTO Was Granted Within a "Reasonable Period" of Time ....................14

24                  2.       The FLSA Permits Denial of CTO Requests If the Officer's
                            Absence Would "Unduly Disrupt" the Division's
25                          Operations................................................................14

26  VI.     CONCLUSION ................................................................................15

27

28

| 1 | **TABLE OF AUTHORITIES** |
|---|---|
| 2 | **Page(s)** |

**FEDERAL CASES**

*Adair v. City of Kirkland,*
    185 F.3d 1055 (9th Cir. 1999) ................................................................10

*Alvarez v. IBP, Inc.,*
    339 F.3d 894 (9th Cir. 2003) ...............................................................4, 5

*Anderson v. Cagle's Inc.,*
    488 F.3d 945 (11th Cir. 2007) ....................................................................4

*Avery v. City of Talladega,*
    24 F.3d 1337 (11th Cir. 1994) ...............................................................9, 11

*Ballaris v. Wacker Siltronic Corp.,*
    370 F.3d 901 (9th Cir. 2004) ....................................................................11

*Barefield v. City of Winnetka,*
    81 F.3d 704 (7th Cir. 1996) ...............................................................10, 11

*Bejil v. Ethicon, Inc.,*
    269 F.3d 477 (5th Cir. 2001) ......................................................................4

*Birdwell v. Gadsden,*
    970 F.2d 802 (11th Cir. 1992) ...............................................................9, 10

*Cherup v. Pitt. Plate Glass Co.,*
    350 F. Supp. 386 (N.D.W. Va. 1972) ..........................................................7

*David v. Food Lion,*
    792 F.2d 1274 (4th Cir. 1986) .....................................................................8

*Donovan v. Williams Chem. Co.,*
    682 F.2d 185 (8th Cir. 1982) ...................................................................6, 7

*Forrester v. Roth's I.G.A. Foodliner, Inc.,*
    646 F.2d 413 (9th Cir. 1981) .......................................................................8

*Franklin v. City of Kettering,*
    246 F.3d 531 (6th Cir. 2001) .....................................................................10

*Freeman v. City of Mobile,*
    146 F.3d 1292 (11th Cir. 1998) .................................................................10

*Harvill v. Westward Commc'ns, LLC,*
    311 F. Supp. 2d 573 (E.D. Tex. 2004) .........................................................8

*Houston POU v. City of Houston,*
    330 F.3d 298 (5th Cir. 2003) .....................................................................14

*Kimpel v. Williams,*
    1999 WL. 638580 (C.D. Cal. Feb. 3, 1999) ...............................................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\598994.8

ii

CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
MOTION FOR SUMMARY JUDGMENT

*Kohlheim v. Glynn County,*
    915 F.2d 1473 (11th Cir. 1990) ........................................................................... 12

*Lamon v. City of Shawnee,*
    972 F.2d 1145 (10th Cir. 1992) ................................................................... 6, 7, 10

*Lindow v. United States,*
    738 F.2d 1057 (9th Cir. 1984) ............................................................................ 7, 8

*Long Beach Police Officers' Ass'n v. Luman,*
    8 Wage & Hour Cas. 2d (BNA) 1395 (C.D. Cal. 2001) ........................................ 15

*Lupien v. City of Marlborough,*
    387 F.3d 83 (1st Cir. 2004) .................................................................................. 12

*Maus v. City of Towanda,*
    165 F. Supp. 2d 1223 (D. Kan. 2001) .................................................................... 8

*McGrath v. City of Philadelphia,*
    864 F. Supp. 466 (E.D. Pa. 1994) ....................................................................... 10

*Martin v. City of Richmond,*
    2007 WL. 2317590 (N.D. Cal. Aug. 10, 2007) ................................................... 2, 3

*Milner v. Hazelwood,*
    165 F.3d 1222 (8th Cir. 1999) ............................................................................. 10

*Mortensen v. County of Sacramento,*
    368 F.3d 1082 (9th Cir. 2004) ........................................................................ 14, 15

*Riley v. Dow Corning Corp.,*
    767 F. Supp. 735 (N.D.N.C. 1991) ......................................................................... 6

*Slattery v. HCA Wesley Rehabilitation Hosp.,*
    83 F. Supp. 2d 1224 (D. Kan. 2000) ...................................................................... 6

*Whitaker v. Pacific Enters. Oil Co.,*
    956 F.2d 1170 (10th Cir. Mar. 9, 1992) ................................................................. 6

## FEDERAL STATUTES AND REGULATIONS

29 U.S.C. § 207(h)(2) ................................................................................................ 12

29 U.S.C. § 207(k) ............................................................................................. 8, 9, 10

29 U.S.C. § 207(*o*) ....................................................................................... 4, 13, 14

29 C.F.R. § 553.27 .................................................................................................... 14

29 C.F.R. § 778.202 .................................................................................................. 12

29 C.F.R. § 785.47 ...................................................................................................... 3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\598994.8

iii

CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
MOTION FOR SUMMARY JUDGMENT

1

**MISCELLANEOUS**

2   Dep't of Labor, Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006))........................................2

3   Dep't of Labor, Wage & Hour Div. Op. Ltr. FLSA2007-10 (May 17, 2007)................................5

4   Dep't of Labor, Wage & Hour Div. Op. Ltr. FLSA2002-2 (June 6, 2002)....................................5

5   Dep't of Labor, Wage & Hour Div. Op. Ltr. (Dec. 30, 1985)........................................................4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP   SD\598994.8
ATTORNEYS AT LAW
SAN DIEGO

iv       CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
         CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
         MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

1
2          Plaintiffs attempt to create disputed issues of material fact in their opposition papers
3    simply by referring the Court to largely irrelevant (and undisputed) evidence that does not suffice
4    to defeat the City's Motion.  Rather, even viewing Plaintiffs' evidence in the most favorable
5    light, as detailed below, the City is entitled to judgment as a matter of law.

6          First, the City is entitled to summary judgment with regard to Plaintiffs' claims for
7    compensation for time spent donning and doffing their uniforms.  Every court to consider this
8    issue, including recently the Northern District of California, has concluded that such time is not
9    compensable when, as here, Plaintiffs are not expressly or effectively *required* to change at
10   work.  Whether Plaintiffs cannot practicably don and doff their bulletproof vests and gun belts at
11   home is a somewhat closer question, yet because the undisputed facts establish that this time is
12   both *de minimis* and not customarily compensated, this time is not compensable in any event.

13         Second, with regard to other pre- and post-shift activities Plaintiffs claim they performed
14   without compensation, the City is entitled to summary judgment because, *inter alia*, the City did
15   not have constructive knowledge of any unreported overtime hours purportedly worked.
16   Plaintiffs can identify no contrary evidence.  Instead, Plaintiffs argue that the City's budgetary
17   difficulties and the Department's current understaffing somehow establish that the City should
18   have assumed its officers were working uncompensated overtime.  Yet these economic realities
19   actually bolster the City's approach to excess overtime:  Precisely *because* the City faces tight
20   budgets, the City has clearly instructed officers to avoid working unnecessary overtime hours *at
21   all*.  The City recognizes that as a result of this clear and unambiguous direction (which Plaintiffs
22   admit they understood), the City must settle for competent, rather than excellent police work.
23   Thus, while Plaintiffs attest to various activities they consider indispensable to perform at the
24   high level of aptitude Plaintiffs wish to pursue, these activities are well in excess of the principal
25   job activities the City requires, expects, or even *desires* Plaintiffs to perform.  The FLSA simply
26   does not require the City to pay for excellence the City does not want and can ill afford.

27         Finally, the City also is entitled to summary judgment with regard to Plaintiffs late
28   payment of overtime and compensatory time off claims, neither of which has any merit.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\598994.8

1

CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
CITY OF SAN DIEGO'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT

1    II.    **DONNING OF UNIFORMS AND EQUIPMENT IS NOT COMPENSABLE**

2           A.    **Donning and Doffing Basic Uniform Items Is Not Integral and Indispensable**

3           Although Plaintiffs have gone to great lengths in an attempt to establish that the SDPD

4    uniform is "integral and indispensable" to police work, Plaintiffs have failed entirely to establish

5    that: (1) the City *requires* Plaintiffs to change at the station; or (2) that nature of the job

6    mandates that they change at the station.  In the absence of such a showing, time spent by

7    Plaintiffs donning and doffing police uniforms accordingly is not compensable under the FLSA.

8    City's Request for Judicial Notice ("RJN") Exhibit D (Dep't of Labor, Wage & Hour Adv. Mem.

9    No. 2006-2 (May 31, 2006)).

10          This analysis was applied very recently in *Martin v. City of Richmond*, 2007 WL

11   2317590 (N.D. Cal. Aug. 10, 2007).  In *Martin*, plaintiff police officers claimed unpaid overtime

12   compensation under the FLSA for, *inter alia*, time spent donning and doffing their uniforms.  *Id.*

13   at *1.  Plaintiffs sought summary judgment, arguing (much like Plaintiffs in this case) that the

14   police uniform "by its very nature, is integral and indispensable to his work in law enforcement"

15   and is "necessary to make [officers] safe and functional on the street."  *Id.* at *6.  As here,

16   plaintiffs were permitted to don and doff their uniforms at home, at their discretion.  *Id.*

17          While acknowledging the superficial attractiveness of the officers' argument, Judge

18   Breyer concluded that "it proves too much":

19               A waitress's apron or a stewardess's uniform marks its wearer as an
                 employee and thereby allows restaurant patrons or flight passengers to
20               seek service directly from the worker. . . . And at least most of the time, a
                 black robe establishes a judge's authority in a courtroom.  *Yet there is no*
21               *law to support the proposition that an employee is entitled to*
                 *compensation by virtue of donning and doffing of a distinctive costume. .*
22               *. .* Aside from the authority [the parts of a uniform] connote, these items
                 of clothing do not help catch suspects, and they do not protect officers
23               from violence.  Something more than the salutary effect of a uniform on
                 those who recognize its cultural significance is necessary to make its
24               donning and doffing 'integral and indispensable' to an officer's
                 'principal activities' of law enforcement.
25

26   *Id.* at *7 (emphasis added).  To hold otherwise, the court reasoned, "*all* uniforms would entitle

27   their wearers to compensation under the FLSA."  *Id.*  The court accordingly held that Richmond

28   was entitled to summary judgment with regard to uniform donning and doffing time.

LATHAM&WATKINS┴┴┴
ATTORNEYS AT LAW
SAN DIEGO
SD\598994.8
2
CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
MOTION FOR SUMMARY JUDGMENT

1   Likewise here, the undisputed evidence demonstrates that Plaintiffs have both the option

2   and the ability to don and doff at home.  Plaintiffs admit that the City does not require them to

3   change at any particular location.  City's Separate Statement of Undisputed Material Facts

4   ("UMF") 84, 86.  Instead, they are free to don or doff their uniforms at any location they please,

5   as long as they wear a cover garment to alleviate any safety concern.  UMF 83.[1]  Further,

6   Plaintiffs cannot establish that they change at the station due to the nature of their job duties or

7   the uniforms and equipment.  Rather, they *admit* that they change on site for a variety of personal

8   reasons, including convenience.  UMF 87.  Since Plaintiffs are given a meaningful opportunity to

9   change at home, time spent changing at the station is not compensable under the FLSA.

10   **B.     Donning and Doffing Required Personal Equipment Is *De Minimis***

11   While the City believes the time Plaintiffs spend donning bulletproof vests and gun belts

12   is not compensable, the City recognizes that whether donning and doffing these items is "integral

13   and indispensable" is a somewhat closer question.  Indeed, the court in *Martin* concluded that the

14   facts were sufficient to raise a triable issue of fact concerning whether there was a meaningful

15   opportunity to don or doff "duty equipment" at home.  *Martin*, 2007 WL 2317590 at * 9-10.[2]

16   The *Martin* decision did not, however, address whether the time Richmond officers take

17   to don and doff this equipment is *de minimis* and therefore not compensable.  *Id.* at * 10  In this

18   case, in contrast, the City has presented uncontroverted evidence demonstrating that the time

19   Plaintiffs spend donning and doffing the bulletproof vests and gun belt is *de minimis* and thus not

20   compensable.  29 C.F.R. § 785.47.  Plaintiffs' deposition testimony consistently establishes that

21   it takes less than five minutes to don and secure the bullet-proof vest.  UMF 91, 93-94.

22   Moreover the donning of the gun belt takes no longer time, as the numerous instruments and

23   equipment are already on the belt and easy to secure.  UMF 92-93.  Plaintiffs have presented no

24   _____

25   [1]     In an effort to establish that donning equipment at home is impractical, Plaintiffs dubiously assert that an officer who dons her uniform and related equipment at home would be required to drive to work while wearing a gas mask.  Opp. at 20:20-25.  This assertion is patently

26   absurd.  No reasonable person would or could conclude that officers wear, or are expected to wear, their gas masks each time they regularly don their uniform.

27   [2]     In contrast to the substantial evidence offered by plaintiffs in *Martin*, here, Plaintiffs have

28   presented unsupported and speculative testimony that does not raise any triable factual issues.

1   evidence to the contrary.  Given the minimal amount of time it takes for Plaintiffs to don and

2   doff this equipment each day, along with the administrative difficulty of recording such time, this

3   time *de minimis* as a matter of law.  *See* City's Mot. at 18-20.

4       **C.**    **Section 203(*o*) Precludes Compensation for Donning and Doffing**

5       The *Martin* court also did not consider whether any time police officers spend donning

6   and doffing equipment is non-compensable pursuant to § 203(*o*) of the FLSA, which excludes

7   time spent by employees "changing clothes" from compensation when there exists a custom or

8   practice of non-compensation for these activities stemming from a collective bargaining

9   agreement.  29 U.S.C. § 203(*o*); *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 (5th Cir. 2001).  The

10  application of § 203(*o*) was, however, recently and extensively addressed by the Eleventh Circuit

11  in *Anderson v. Cagle's Inc.*, 488 F.3d 945 (11th Cir. 2007).

12      In *Anderson*, plaintiff-employees argued that time spent donning and doffing certain

13  personal protective equipment did not constitute "changing clothes" under § 203(*o*).  *Id.* at 949,

14  955.  The Eleventh Circuit rejected this argument, concluding that the plain language and

15  legislative history of § 203(*o*) revealed that, in this context, the phrase "changing clothes" does

16  encompass donning and doffing of personal protective equipment.  *Id.* at 957-58.  In particular,

17  the court noted that there is "no need to distinguish uniforms from protective clothes."  *Id.* at

18  955.  In reaching this conclusion, the Eleventh Circuit distinguished the Ninth Circuit's analysis

19  in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003).  The court determined that § 203(*o*) is *not*

20  an "exemption" from FLSA requirements, as the Ninth Circuit panel in *Alvarez* incorrectly

21  concluded, but rather a "definition that limits the scope of the FLSA's key minimum wage and

22  maximum hour provisions."  *Id.* at 957.

23      The Department of Labor consistently has embraced the same approach to § 203(*o*).  For

24  instance, in a 1985 opinion letter notable for its relevance to the facts presented in this case, the

25  Administrator wrote that the time spent by City of Los Angeles police officers donning and

26  doffing their uniforms and associated equipment fell within the parameters of § 203(*o*).  RJN Ex.

27  G (W-H Div. Op. Ltr. (Dec. 30, 1985)).  More recently, the Department of Labor has clarified

28  that the Secretary does not believe the Ninth Circuit's decision in *Alvarez* precludes employers

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN DIEGO

SD\598994.8

4

CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
MOTION FOR SUMMARY JUDGMENT

1   from taking advantage of § 203(*o*) with regard to both clothing *and* protective equipment.  RJN

2   Ex. E (W-H Div. Op. Ltr. FLSA 2007-10 (May 14, 2007)); RJN Ex. F (W-H Div. Op. Ltr. FLSA

3   2002-2 (June 6, 2002)).[3]

4          Applying this analysis to the facts of this case confirms that, at the very least, the City is

5   entitled to summary judgment with regard to Plaintiffs' donning and doffing claims pursuant to

6   § 203(*o*).  Plaintiffs do no dispute that the City historically has not compensated its police

7   officers for time spent donning and doffing their uniforms and equipment.  Plaintiffs' Response

8   to City's UMF 88 - 89.  Indeed, Plaintiffs offer *no argument whatsoever* against the application

9   of § 203(*o*).  The City consequently is entitled to summary judgment on this issue.

10  **III.    THE CITY DID NOT HAVE ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF
        OTHER UNCOMPENSATED PRE- OR POST-SHIFT ACTIVITIES**

11

12         With regard to other pre- and post-shift activities, Plaintiffs argue that the City had actual

13  or constructive knowledge that Plaintiffs routinely engaged in various activities without

14  compensation.  Yet Plaintiffs offer no evidence whatsoever to support this contention.  In

15  contrast, the City has presented ample evidence demonstrating that the senior management of the

16  SDPD was not aware of officers regularly performing any unpaid work activities or any ongoing

17  practice by officers not to submit overtime requests for all hours worked.  UMF 37-44.  The

18  evidence further reveals that given the around-the-clock nature of police work and the

19  Department's current practice to permit officers to engage in non-work related activities at their

20  stations outside of scheduled shift hours, the City (via SDPD's senior management) would have

21  no way of knowing that its officers were working uncompensated overtime hours unless the

22  officers reported their hours (as they are required to do) or notified the Department via formal or

23  _____

[3]    The City acknowledges that the Ninth Circuit panel's decision in *Alvarez* is in tension

24  with the Eleventh Circuit's analysis in *Andersen* and with the Department of Labor's guidance
    concerning § 203(*o*).  The City respectfully submits that this aspect of *Alvarez* has been called

25  into question by these and other authorities.  Furthermore, the Ninth Circuit's decision rested, in
    part, upon policy considerations that reflect flawed logic. The court noted that to *include*

26  protective personal equipment within the scope of § 203(*o*) would create a disincentive for
    employers to use personal protective equipment. *Alvarez*, 339 F.3d at 905 n.8.  In fact, it stands

27  to reason that the *exclusion* of personal protective *equipment* from § 203(*o*) -- whereby
    customarily uncompensated clothes changing time need not be compensated by the employer --

28  provides precisely this disincentive.

1   informal complaint.  UMF 16-17.  In fact, Plaintiffs *themselves* testified that they would not

2   necessarily know whether another officer at the station was working, nor would they always

3   know if he or she submitted an overtime slip  UMF 16-17.[4]  Plaintiffs' mere assertion that certain

4   other officers (the vast majority of whom are colleagues of Plaintiffs rather than direct

5   supervisors) would have seen them around the station therefore does not suffice to establish the

6   City's constructive knowledge of Plaintiffs' alleged uncompensated work.  *See Whitaker v.*

7   *Pacific Enters. Oil Co.*, 956 F.2d 1170 at *2 (10th Cir. Mar. 9, 1992) (unpublished order)

8   (employer entitled to summary judgment with regard to employee's overtime claim when

9   supervisory employees would not have known whether employee was working uncompensated

10  overtime and in the absence of "any explanation how his supervisors . . . knew or should have

11  known that the overtime work he seeks compensation for in this case is different from the 279

12  hours of overtime which he was compensated for"); *Slattery v. HCA Wesley Rehabilitation*

13  *Hosp.*, 83 F. Supp. 2d 1224, 1230-31 (D. Kan. 2000) (same).  The FLSA does not require that

14  employers effectively "stake out" employees' comings and goings to avoid liability.

15          Moreover, simply because an individual officer chooses to come in early or stay late --

16  without reporting this additional time -- to complete activities that he is expected and instructed

17  to complete *on duty* (or not expected to complete at all)[5] does not entitle that officer to overtime

18  compensation.  *E.g.*, *Lamon v. City of Shawnee*, 972 F.2d 1145, 1158 (10th Cir. 1992); *Donovan*

19  *v. Williams Chem. Co.*, 682 F.2d 185, 188-89 (8th Cir. 1982); *Riley v. Dow Corning Corp.*, 767

20  F. Supp. 735, 743 (N.D.N.C. 1991).  Thus, while some Plaintiffs contend they completed certain

21  unnecessary pre-shift or post-shift activities in order to excel in their jobs or for other similar

22  reasons -- activities that Plaintiffs admit vary according to their own personal habits and

23  practices and are not dictated by the City -- completion of these activities outside of normal shift

24

---

[4]      *See also* Lucchesi 30:1-2; Collins 28:24-29:4, 52:21-53:15; Kries 26:9-13; Eichmann
25  44:18-23, 57:15-16; Vinson 60:3-4.

26  [5]      Plaintiffs' own testimony establishes that while sergeants frequently are expected to start
their shifts early (and to end them early) in order to complete certain preparatory activities, other
27  non-supervisory officers are not expected, encouraged, or instructed to come in early to complete
any preparatory activities.  UMF 13-14.  The only pre-shift expectation of non-supervisory
28  police officers is that they appear on time for lineup, in full uniform.  UMF 11.

1    hours is not compensable.[6]  The same holds true for other activities Plaintiffs claim to have

2    engaged in while off duty, such as physical training, gun range certification, and time spent

3    caring for canines.  Plaintiffs already are compensated for these activities; no additional

4    compensation is due simply because Plaintiffs may also engage in these activities for their own

5    benefit, *without the City's knowledge*, during their time off.  City's Mot. at 23-26, 28-30.

6         The City's goal is to field *competent* police officers.  While the City endeavors to reward

7    its great officers where it can, the fact that officers choose to be great -- when they are hired to be

8    good -- does not obligate the City to pay for greatness it cannot afford.  Employee-initiated

9    activities undertaken by Plaintiffs above and beyond the expectations of the Department

10   therefore are completed for the benefit of the employee, not for the benefit of the employer, and

11   hence are not compensable under the FLSA.  *Lamon*, 972 F.2d at 1158; *Donovan*, 682 F.2d at

12   188-89; *Cherup v. Pitt. Plate Glass Co.*, 350 F. Supp. 386, 391 (N.D.W. Va. 1972).

13        Finally, Plaintiffs produce no evidence to dispute the City's clear direction to its officers

14   that they are not to complete compensable work outside their shifts without pre-approval.[7]  The

15   City has established this policy -- which is fully consistent with the requirements of the FLSA,

16   *Lindow v. United States*, 738 F.2d 1057, 1061 (9th Cir. 1984) -- expressly to prevent its police

17   officers from working unnecessary overtime hours that the City can ill-afford.  SDPD officers

18   consequently are expected and instructed to avoid incurring needless overtime.  UMF 56-60.

19   Indeed, the nature of police work requires the City to entrust Plaintiffs with substantial

20   responsibility to work independently and with minimal supervision on a daily basis.  Such

---

[6]      Regardless of whether certain pre- and post-shift activities are compensable, as Plaintiffs and others have testified, pre- and post-shift time often entails personal conversation, exercising, or finishing a cup of coffee.  UMF 16-17.  The City is under no obligation to compensate Plaintiffs for time engaged in these types of activities, which certainly do not benefit the City.

[7]      Contrary to Plaintiffs' assertion, Opp. at 16-17, the City does have a "hard and fast" rule that all overtime hours should be pre-approved to the extent practicable *before* overtime is incurred.  UMF 33, 49.  Indeed, Plaintiffs do not dispute that they generally are required to obtain pre-approval for overtime before working overtime hours, except when overtime hours are necessary to respond to urgent calls or to complete reports associated with late calls at the end of a shift.  UMF 50.  Nevertheless, because officers are not permitted to work uncompensated overtime hours, if an officer actually has worked overtime hours and seeks compensation for that time, he or she *will be paid* for the overtime, irrespective of whether the overtime hours were pre-approved.  UMF 28-30, 51.  There is no "grey area" to this policy.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\598994.8                                    7          CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
                                                          CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
                                                          MOTION FOR SUMMARY JUDGMENT

1  responsibility includes the responsibility to comply with Department policies and procedures

2  regarding overtime; having established formal overtime policies and procedures, the City is

3  entitled to reasonably expect officers to comply with these policies.  *See Lindow*, 738 F.2d at

4  1062; *David v. Food Lion*, 792 F.2d 1274, 1278 (4th Cir. 1986).

5         Assuming, *arguendo*, that some or all Plaintiffs mistakenly believed they were not

6  permitted to request overtime compensation for less than thirty minutes of overtime work,

7  Plaintiffs failure to complain or to inquire regarding this alleged "practice" or to pursue overtime

8  compensation they claim to have earned estops Plaintiffs from recovery.  To the extent Plaintiffs

9  chose to flout established overtime policies by declining to submit overtime requests for all hours

10 Plaintiffs claim to have worked (and without informing anyone of the purported uncompensated

11 hours worked), the City cannot be held liable under the FLSA for any such unreported hours.

12 *Harvill v. Westward Commc'ns, LLC*, 311 F. Supp. 2d  573, 583 (E.D. Tex. 2004); *see also*

13 *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); *Maus v. City of*

14 *Towanda*, 165 F. Supp. 2d 1223, 1230 (D. Kan. 2001).

15 **IV.    PLAINTIFFS ALREADY HAVE BEEN COMPENSATED FOR ANY**
         **ALLEGEDLY UNCOMPENSATED OVERTIME WORK**
16

17        Even assuming Plaintiffs were instructed not to submit overtime slips for thirty minutes

18 or less, for the reasons that follow, the City nevertheless is not liable under the FLSA for any

19 uncompensated overtime Plaintiffs may have worked as a result of any such misdirection.

20        **A.    Plaintiffs Are Not Entitled to Overtime Compensation Until They Have**
              ***Worked* More Than Forty-Three Hours in a Single Work Week**
21
                 **1.    The City May Rely on § 207(k) Irrespective of the Absence of Any**
22                      **Announced Intention to Do So**

23        The City has satisfied its burden to show the existence of a qualifying work period

24 pursuant to § 207(k).  The evidence submitted in support of the City's motion, including the

25 applicable MOUs and Plaintiffs' own testimony, establishes that the vast majority of Plaintiffs

26 work a standard four days on, three days off rotation.  UMF 2-4.  Indeed, Plaintiffs do not

27 dispute that the vast majority of sworn SDPD officers work this "4/10 plan."  *See* Plaintiffs'

28 Resp. to UMF 3.  By definition, this seven-day work period falls within § 207(k).

1    Although the City's establishment of a qualifying § 207(k) work period is a factual

2    question, this question is properly resolved on summary judgment given the absence of disputed

3    facts concerning the applicable seven-day work period. *Avery v. City of Talladega*, 24 F.3d

4    1337, 1343-44 (11th Cir. 1994); *Birdwell v. Gadsden*, 970 F.2d 802, 806 n.2 (11th Cir. 1992).

5    Not only do Plaintiffs not dispute the establishment of the 4/10 work plan, but further, Plaintiffs'

6    evidence merely confirms that even the few officers who work a more conventional five days on,

7    two days off schedule work a seven-day work period. *See* Opp. at 31.  Nor does Plaintiffs'

8    misplaced focus upon the City's failure to include the term "207(k)" in the MOUs, or to

9    announce the application of § 207(k) in an implementing ordinance, suffice to create disputed

10   factual issues.  Plaintiffs argument that because the City expressly announced the adoption of a §

11   207(k) work period for its firefighters that the City accordingly excluded its law enforcement

12   officers from § 207(k) by implication is flawed in two significant respects.

13       First, the limited documentary evidence submitted by Plaintiffs pertains only to the City's

14   firefighters and does not concern the police department. The City Council Minutes and

15   associated Resolution cited in Plaintiffs' Opposition had no impact whatsoever with regard to the

16   City's intention to adopt a § 207(k) work period for its police officers.  In fact, as of April 8,

17   1986, the City Council had as yet reached *no conclusion* with regard to police officers' work

18   periods.  RJN Ex. A (Transcription of City Council Session, April 8, 1986); RJN Ex. B (R-

19   263170); RJN Ex. C (R-264074).  Hence, on that date the City Council took no affirmative

20   action to embrace § 207(k) for police officers, but neither did the City reject it.  As the City

21   Manager's representative, Mr. Lewis, stated before the Council in connection with the

22   implementation of R-265409 (Pl. Ex. 55), the provisions of that Resolution had not yet been

23   agreed to by the Police Officers' Association with whom labor negotiations remained ongoing.

24   Consequently, the City Manager recommended that the Resolution be adopted with regard to all

25   City employees, except police, who would remain, for the time being, subject to the existing

26   salary ordinance and Resolutions, passed in September 1985. *Id.*  This then-existing salary

27   legislation is *silent* with regard to § 207(k).  RJN Ex. B (R-263170); RJN Ex. C (R-264074).

28   Although the police officers' union and the City ultimately did not reach agreement regarding

LATHAM&WATKINS LLP   SD\598994.8
ATTORNEYS AT LAW
SAN DIEGO

9       CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
MOTION FOR SUMMARY JUDGMENT

1   whether to establish a § 207(k) work period within the union's MOU, since that time, the City

2   nevertheless has adopted a qualifying seven-day work period in the form of the 4/10 plan.  Ex. 4

3   (2003 MOU at 145); Ex. 1 (2007 MOU at 49); Ex. 6 (2000 MOU at 240).  Formal agreement in

4   collective bargaining is not necessary to the establishment of a qualifying work period; instead,

5   the City may employ a qualifying work period *despite* the police union's rejection of § 207(k).

6          Second, as a matter of law, the absence of any such formal announcement by the City is

7   irrelevant to application of § 207(k).  While a public employer may establish a § 207(k) work

8   period by formal announcement or memorandum, alternately, "a public employer may establish a

9   7(k) work period even without making a public declaration, as long as its employees actually

10  work a regularly recurring cycle of between 7 and 28 days."  *McGrath v. City of Philadelphia*,

11  864 F.Supp. 466, 476 (E.D. Pa. 1994) (cited with approval in *Adair v. City of Kirkland*, 185 F.3d

12  1055, 1061 (9th Cir. 1999)); *see also Milner v. Hazelwood*, 165 F.3d 1222,1223 (8th Cir. 1999);

13  *Barefield v. City of Winnetka*, 81 F.3d 704, 709-10 (7th Cir. 1996); *Birdwell*, 970 F.2d at 806.  In

14  *Freeman v. City of Mobile*, 146 F.3d 1292 (11th Cir. 1998), for instance, the Eleventh Circuit

15  rejected the notion that the City could not benefit from § 207(k) given its failure to adopt a

16  formal resolution containing language explicitly adopting a § 207(k) compensation plan.

17  Instead, the court observed, "the City does not have to make any such 'affirmative' showing.

18  Rather, it is sufficient that the City can show, through [documentary] and other circumstantial

19  evidence, that it has adopted a [qualifying] work period."  *Id.* at 1287.  In the absence of any

20  relevant evidence tending to show that the plaintiff-employees did not work the 14-day period,

21  there was no disputed issue of material fact for a jury to resolve.  *Id.*; *see also Lamon*, 972 F.2d

22  at 1152 n.8 (rejecting the "untenable notion that [a] City does not possess any rights under [§

23  207(k)] until those rights are exercised").  Likewise, here, the City has established the

24  application of § 207(k) through the substantial and undisputed evidence that Plaintiffs actually

25  work a seven-day work period.[8]

26  _____

[8]      It is irrelevant that the applicable MOUs do not mention § 207(k), nor is it relevant that
27  the City has agreed to compensate its officers for additional contractual overtime hours.  *Section
    207(k) does not refer to or depend upon the outcome of collective bargaining*; rather, the FLSA
28  permits the City to designate any work period between seven and twenty-eight days, regardless

1   **2.     The City Need Not Pay Plaintiffs Overtime for Up to Thirty Minutes
        Per Day of Paid Meal Breaks**

2

3           Further limiting the number of overtime hours Plaintiffs may claim under the FLSA is the

4   City's provision for a 30 minute paid meal break during each officers' ten-hour shift. *See* City's

5   Mot. at 36-38.[9]  Because Plaintiffs are paid for this thirty-minute period of non-work, up to thirty

6   minutes per day that Plaintiffs claim to have worked beyond their regularly scheduled shifts

7   *already has been compensated.*[10]  Thus, even assuming Plaintiffs created a disputed issue of

8   material fact concerning the purported "culture" discouraging officers from submitting overtime

9   requests for less than 30 minutes, Plaintiffs' claims for unpaid overtime under the FLSA must be

10  rejected as a matter of law. *E.g.*, *Barefield*, 81 F.3d at 710; *Avery*, 24 F.3d at 1347.[11]

11  **B.      The City May Offset Any FLSA Liability Under § 207(h)**

12          Plaintiffs' incomprehensible arguments regarding the application of § 207(h)

13  notwithstanding, the City is entitled to an offset against any liability under the FLSA in the

14  amount of excess premium rate overtime the City has paid over that required by the FLSA.

15  Specifically, the City is entitled to an offset for:  (1) contractual overtime for hours worked in

16  excess of eight hours per day or forty hours per week (up to forty-three hours); (2) court pay

---

17  of any contrary private agreements. *See Lamon*, 972 F.2d at 1152.  The City accordingly does not

18  waive the § 207(k) exemption by adopting overtime practices that are more generous than
    required. *Id.*; *see also Franklin v. City of Kettering*, 246 F.3d 531, 535 (6th Cir. 2001).

19  [9]      Plaintiffs unfounded assertion that SDPD officers' meal periods are not compensated is

20  not supported by the evidence.  The only evidence Plaintiffs submit in support of this contention
    is a provision of the MOUs stating that meal periods are "unpaid." Opp. at 33.  Yet this
    provision merely indicates that the parties bargained for an unpaid meal period. *See* Ex. 4 (2003

21  MOU) at 144-45.  In fact, at all times relevant to this lawsuit the City has paid Plaintiffs ten
    hours worth of pay for a ten hour shift, *inclusive* of a meal break. *See* UMF 5.

22  [10]     Notably, some police departments in California that provide paid meal breaks expressly
    preclude their officers from requesting overtime for less than thirty minutes, apparently in

23  reliance upon the same legal analysis. *See* MOA between San Jose and SJPOA *available at*
    http://www.sanjoseca.gov/employeeRelations/pdf/moa_poa.pdf (last visited Aug. 30, 2007).

24  [11]     The City acknowledges that a panel of the Ninth Circuit, in *Ballaris v. Wacker Siltronic*

25  *Corp.*, 370 F.3d 901, 907 n.11, 912-13 (9th Cir. 2004), concluded an employer was not entitled
    to offset paid meal periods against unpaid overtime compensation otherwise due.  The court's

26  analysis concerned availability of an offset under § 207(h), however, and failed to evaluate the
    impact of paid meal periods upon the total hours per week *actually worked* by employees. *Id.* at

27  912-14.  Further, in *Ballaris* the employees had specifically negotiated paid meal periods
    with their employer, whereas in this case (as Plaintiffs' own evidence confirms), the City's provision

28  of paid meal periods is above and beyond the negotiated terms of the MOUs. *See id.* at 913 n.17.

1    overtime in excess of actual hours worked; (3) holiday overtime in excess of actual hours

2    worked; and (3) callback pay overtime in excess of actual hours worked.  29 U.S.C. § 207(h)(2);

3    *see also* 29 C.F.R. § 778.202; *Lupien v. City of Marlborough,* 387 F.3d 83, 90 (1st Cir. 2004);

4    *Kohlheim v. Glynn County*, 915 F.2d 1473, 1481 (11th Cir. 1990).[12]

5           Plaintiffs' bare assertion that the City has failed to present competent evidence to support

6    the application of § 207(h) is unfounded.  The City has submitted ample evidence showing that

7    Plaintiffs are routinely paid court pay overtime, holiday overtime, and callback pay overtime, at

8    premium rates.  UMF 54, 67-69, 72-73.  Not only did Plaintiffs themselves admit to receipt of

9    this additional pay, but further, the existence of these contractual overtime benefits are confirmed

10   by the very terms of the MOUs.  UMF 69-70, 73.[13]

11   **V.     PLAINTIFFS' ARGUMENTS CONCERNING COMPENSATORY TIME OFF**
            **FAIL TO STATE A VIOLATION OF THE FLSA, AND ARE UNSUPPORTED BY**
12          **THE EVIDENCE IN ANY EVENT**

13          Plaintiffs offer various groundless arguments in opposition to the City's Motion for

14   Summary Judgment with regard to Plaintiffs' compensatory time off claim, including their

15   assertion that the compensatory time off program is "illusory," or that the agreement presently

16   (or formerly) in place does not satisfy the minimal requirements imposed by the FLSA.  As

17   detailed below, these arguments fail as a matter of law.

18          **A.     The City's Compensatory Time Off Program Is Not "Illusory"**

19          First, Plaintiffs falsely allege that the City's compensatory time off ("CTO") program is

20   "illusory," while providing *no* evidence either in support of their contention or in contradiction

21   of the City's evidence.  *Compare* Opp. at 37, 40 *with* UMF 119-135; City's Mot. at 43-48.[14]  As

22   [12]    Whether the City willfully violated the FLSA (which it did not) has nothing at all to do
     with whether the City is entitled to an offset pursuant to § 207(h).  An employer's willfulness is
23   only relevant to the length of the applicable statute of limitations.  Similarly, whether the City
     acted in good faith such that the Court may decline to award liquidated damages also has no
24   bearing upon the application of § 207(h).  *See Lupien,* 387 F.3d at 90.

25   [13]    Because the amount of damages, if any, to which Plaintiffs are entitled is not presently at
     issue, the City did not submit the voluminous, detailed records of the amount of all court pay,
26   holiday pay, and callback pay, *each individual* Plaintiff has been compensated in excess of the
     hours Plaintiffs claim to have worked.  Nevertheless, the City does maintain complete records of
27   overtime compensation which may be used to calculate the City's offset.
     [14]    Plaintiffs attempt to create disputed issues of material fact by citing evidence concerning
28   the Department's present staffing and budgeting levels.  Yet the City does not dispute that its

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO
SD\598994.8                          12        CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
                                               CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
                                               MOTION FOR SUMMARY JUDGMENT

1  the evidence submitted in support of the City's motion establishes, the City consistently has

2  permitted its officers to accrue and to use CTO pursuant to valid agreements.[15]

3      When the SDPOA rejected the City's modest (and FLSA-compliant) alteration to the

4  previously-operative agreement in June 2006, the City had no choice but to suspend the program.

5  *See* Cooper at 40-42; 41:15-25, 42:1-7.  Nevertheless, knowing that many officers rely on CTO

6  for various reasons, the City offered officers the option of *either* cashing out their CTO balances

7  for pay *or* using the time already accrued.  Opp. Ex. 71.  Nothing in the relevant law or

8  regulations prohibits this.  *Cf.* 29 U.S.C. §207(*o*).  In December 2006 the parties negotiated a

9  new agreement, which became operative January 1, 2007.  Opp. Ex. 72; Ex. 1 (2007 MOU at 45-

10  48).  At all other relevant times, there has been a functioning, operative agreement whereby

11  officers may elect to be compensated in pay or CTO.  UMF 119-120, 122.

12  **B.**    **The City's CTO Practices Fully Complied With the Law**

13      Second, and more importantly, at all times relevant to this action, the City's CTO policies

14  have been fully consistent with the requirements of the FLSA.[16]  For an agreed-upon CTO

15  program to be lawful under the FLSA, the employer must grant its employees' requests to use

16  CTO "within a reasonable amount of time" after receipt of their requests, unless granting the

17  requests would "unduly disrupt" operations.  29 U.S.C. § 207 (*o*)(5)(B).  In this case, the City's

18  evidence clearly demonstrates that the City consistently has complied with the letter and spirit of

19  the parties' CTO agreement, and the applicable laws.  *See* City's Mot. at 43-48.

Police Department faces staffing challenges and, just like any other employer, the City struggles with budgetary constraints.  To characterize this as "admit[ing] that it chronically under-staffs and under-budgets [its] police department" is patently false.  *See* Opp. at 40:3-5.  As usual, Plaintiffs' Opposition is replete with incendiary, accusatory, and conclusory statements that are not supported by one shred of evidence.

[15]  Plaintiffs repeatedly misstate that CTO may be offered as a custom, pattern or practice.  *See* Opp. at 37.  This is not true.  The FLSA does not permit a CTO program to persist without the express consent and agreement of both parties, *see* Cooper at 41:15-25, 42:1-7; in other words, employees *cannot* accrue CTO in lieu of overtime wages pursuant to custom, pattern, or practice.  *See* 29 U.S.C. § 207(*o*)(2)(A)(i)-(ii).

[16]  Additionally, there is no basis for Plaintiffs' allegation that the City has "failed to comply with statutory record keeping mandates of FLSA[.]"  Opp. at 40.  Plaintiffs' have cited *no* record keeping or reporting requirements regarding comp time for one simple reason:  there are none.

1        **1.    CTO Was Granted Within a "Reasonable Period" of Time**

2        Contrary to Plaintiffs' assertion, SDPD officers always have been permitted to use

3    accrued CTO within a reasonable period of requesting to use the time off.  Under the terms of the

4    current CTO agreement, which has been in effect since January 2007, officers' requests to use

5    CTO must be honored so long as they are submitted at least seven days in advance of the

6    requested day off, unless such request would cause the division to drop below minimum staffing

7    for that day's shift.  Ex. 1 (2007 MOU) at 45-48; Opp. Ex. 72.  Prior to the current CTO

8    agreement, until July 1, 2006, officers' CTO requests were granted so long as the request was

9    submitted at least seventy-two hours in advance of the requested time off.   Cooper at 35:17-25,

10   36:1.  While officers were encouraged to use the "redbook" system, whereby a certain number of

11   leave slots were allocated for each day, in order to ensure adequate staffing, UMF 121, 129; on

12   occasion squads would operate at below minimum staffing *in order to accommodate a CTO*

13   *request.*  UMF 130; Cooper at 33:7-10.  The City has agreed to return to this state of affairs:

14   beginning in 2009, all CTO requests must be granted irrespective of minimum staffing levels, so

15   long as the time off is requested at least seven days in advance.  Ex. 1 (2007 MOU at 45-48).

16   Whether CTO must be requested seven days or seventy-two hours in advance, these short

17   periods are unquestionably "reasonable." *Houston POU v. City of Houston*, 330 F.3d 298, 305-

18   07 (5th Cir. 2003); *Mortensen v. County of Sacramento*, 368 F.3d 1082, 1084 (9th Cir. 2004).[17]

19       **2.    The FLSA Permits Denial of CTO Requests If the Officer's Absence**

20               **Would "Unduly Disrupt" the Division's Operations**

21       Furthermore, on the rare occasion that a Plaintiff's request to use accumulated CTO time

22   was denied, the City's refusal to permit use of the CTO on the specific day requested was fully

23   _____

24   [17]    Plaintiffs seemingly (and inexplicably) attack the accrual/carry over provisions of the MOUs, which permit officers to accrue up to 80 hours of CTO and to carry a balance of 45 hours

25   (80 hours in new MOU) to the next fiscal year.  UMF 134.  These provisions actually *benefit* the officers as they are able to save up time off, or cash out in the future at a higher rate of pay.  *See*

26   29 U.S.C. § 207(*o*)(3); 29 C.F.R. § 553.27; *see also* City's Mot. at 48.  When an officer reaches the cap, subsequent overtime is compensated with pay.  UMF 134-135; Soda at 23:16-24.

27   Although the legal basis for Plaintiffs' apparent challenge to these carry over provisions is not clear from Plaintiffs' opposition papers, because the FLSA itself anticipates and allows for

28   accrual and carry over of CTO, Plaintiffs' arguments lack merit.  *See* 29 U.S.C. § 207(*o*)(3).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\598994.8

14

CASE NOS. 05 CV 1629 & 06 CV 0538 DMS (RBB)
CITY OF SAN DIEGO'S MEMORANDUM OF P&AS ISO
MOTION FOR SUMMARY JUDGMENT

1    consistent with the FLSA.  Under the FLSA, employers are permitted to deny employees'

2    requests for CTO when doing so would be "unduly disruptive."  Courts considering the "unduly

3    disrupt" requirement have unanimously concluded that CTO requests need not be approved

4    where such requests would cause staffing to fall below minimum levels and affect provision of

5    police services to the public.  *See, e.g.*, *Houston POU* at 306; *Mortensen*, 368 F.3d at 1084-85;

6    *Long Beach Police Officers' Ass'n v. Luman*, 8 Wage & Hour Cas. 2d (BNA) 1395 (C.D. Cal.

7    2001); *see also* City's Mot. at 46-48.  Here, the evidence demonstrates that not only were CTO

8    requests rarely denied, but further, when requests were denied, the sole reason for the denial was

9    because the officer's absence would abrogate minimum staffing levels. UMF 125-126; City's

10   Mot. at 47-48.[18]  The City thus was lawfully entitled to deny Plaintiffs' CTO requests.

11          In summary, Plaintiffs baldly claim that "[t]here exist disputed facts and law" with regard

12   to CTO claims, Opp. at 40, yet identify *no* such facts, and fail to show why controlling law

13   should not apply, entitling the City to summary judgment with regard to all § 207(*o*) claims.

14   **VI.    CONCLUSION**

15          For the foregoing reasons and for the reasons stated in the City's Motion for Summary

16   Judgment, the City requests this Court enter judgment in its favor.

17   Dated:  August 31, 2007                    LATHAM & WATKINS LLP
                                                Office of the City Attorney
18                                              George Schaefer, Deputy City Attorney

19                                              By:  /s/ Colleen C. Smith
                                                   Colleen C. Smith
20                                                 colleen.smith@lw.com
                                                Attorneys for Defendant the City of San Diego
21

22

23

24

25   _____
     [18]      Plaintiffs' reliance on *Kimpel v. Williams*, 1999 WL 638580 (C.D. Cal. 1999) is
26   misplaced; the court did not find CTO requests denied in violation of  § 207(*o*)(5).  Rather,
     *Kimpel* stands for the proposition that CTO improperly withheld or denied in violation of the
27   "unduly disrupt" standard of § 207(*o*)(5) is "unpaid overtime compensation" per of § 216(b).  *Id.*
     at *4.  Plaintiffs present *no* evidence that CTO requests were denied in violation of §207(*o*)(5),
28   while the City has provided ample evidence to the contrary.  *See* City's Mot. at 47-48.