1  Peter H. Benzian (Bar No. 47456)
   Colleen C. Smith (Bar No. 231216)
2  Michael P. Pulos (Bar No. 246474)
   Aryn P. Thomas (Bar No. 247989)
3  LATHAM & WATKINS LLP
   600 West Broadway, Suite 1800
4  San Diego, California  92101-3375
   Telephone:  (619) 236-1234
5  Facsimile:   (619) 696-7419

6  George F. Schaefer (Bar No. 139399)
   Deputy City Attorney
7  Office of the City Attorney
   1200 Third Avenue, Suite 1100
8  San Diego, California  92101-4100
   Telephone:  (619) 533-5800
9  Facsimile:   (619) 533-5856

10 Attorneys for Defendant
   City of San Diego

11

12                 UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

   MARCUS ABBE, *et al.*               NOS. 05-CV-1629 & 06-CV-0538 DMS (RBB)
15
                  Plaintiffs,          DEFENDANT CITY OF SAN DIEGO'S
16                                      TRIAL BRIEF
        v.
17                                      Judge:    Hon. Dana M. Sabraw
   CITY OF SAN DIEGO,                   Ctrm:     10
18                                      Trial:    January 5-30, 2009
                  Defendant.
19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3 I.   STATEMENT OF FACTS ............................................................................. 1

4     A.   Summary of Facts and Claims ......................................................... 1

5          1.   Overview ............................................................................... 1

6          2.   SDPD Overtime Policies ...................................................... 2

7          3.   Pre- and Post-Shift Activities ............................................. 3

8               a.   Pre-Shift Activities .................................................. 3

9               b.   Post-Shift Activities ................................................ 5

10         4.   Actual or Constructive Knowledge ..................................... 6

11         5.   The Trial Plaintiffs .............................................................. 7

12              a.   Joseph Bane ............................................................. 7

13              b.   Neal N. Browder ...................................................... 10

14              c.   Thomas J. Broxtermann ........................................... 11

15              d.   Kevin B. Friedman .................................................. 13

16              e.   Ronald P. Larmour ................................................... 14

17              f.   Michael McCollough ............................................... 16

18              g.   Kerry A. Mensior ..................................................... 17

19              h.   Christopher M. Sarot ............................................... 18

20              i.   Michael S. Shiraishi ................................................ 20

21              j.   Angela Zdunich ....................................................... 22

22 II.  SIGNIFICANT ISSUES OF LAW ........................................................... 22

23     A.   Required Elements of Plaintiffs' First Claim for Relief for
            Violation of the Fair Labor Standards Act, 29 U.S.C. § 207 ............. 22
24
            1.   Each Plaintiff Must Prove that the City Is His "Employer" ................... 23
25
            2.   Each Plaintiff Must Prove that He Worked Uncompensated
26               Overtime ............................................................................... 23

27              a.   Each Plaintiff Must Prove that the City
                     "Employ[ed]" Him ................................................... 24
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
i   DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

(1)     "Work"........................................................................ 24

(2)     "Suffer or Permit" ...................................................... 26

(a)     An Employer Does Not "Suffer or Permit" Work of Which It Merely Could Have Known.............................. 26

(b)     No "Pattern or Practice" Standard Exists............................................................. 27

(c)     Actual or Constructive Knowledge of Overtime Work By Low-level Supervisors Does Not Establish the Employer's Knowledge ...................................... 28

(d)     An Employer Generally Cannot "Suffer or Permit" Work the Employee Fails to Report................................... 31

b.     Portal-to-Portal Act............................................................. 33

(1)     Home to Work Travel ....................................................... 34

(2)     Preliminary and Postliminary Activities.......................... 36

(3)     Continuous Workday Rule.............................................. 37

c.     *De Minimis* ........................................................................... 39

3.     Each Plaintiff Must Prove the Amount and Extent of Overtime Worked................................................................. 42

4.     Plaintiffs Must Prove that Department of Labor Regulations Do Not Render Certain Activities Non-compensable.......................................................................... 43

a.     29 C.F.R. § 785.23 ............................................................. 44

(1)     Court Pay ....................................................................... 44

(2)     Uniform Maintenance .................................................... 45

b.     29 C.F.R. § 785.27 ............................................................. 46

(1)     Weapons Training.......................................................... 46

(2)     Physical Fitness Activities............................................ 47

5.     Plaintiffs Must Establish a Willful Violation of the FLSA to Extend the Statute of Limitations ...................................... 48

B.     Plaintiffs' Third Claim for Relief for Late Payment of Overtime in Violation of 29 U.S.C. § 207(a)......................................................... 49

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

ii

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

C.   The City's Affirmative Defenses ......................................................... 50

1.   Good Faith Defense:  Liquidated Damages ............................ 50

a.   The City Subjectively Intended to Comply With the FLSA ........................................................... 51

b.   The City's Conduct Was Objectively Reasonable ...................... 53

(1)   Investigation and Industry Practice ................................. 53

(2)   Other Means of Compliance ........................................... 54

(3)   Novelty of the Issues ..................................................... 54

(4)   Lack of Knowledge ........................................................ 55

2.   Offsets and Adjustments ..................................................... 56

a.   Section 207(k) ............................................................ 56

b.   Section 207(h) Offsets ................................................. 58

(1)   Holiday Pay ................................................................... 58

(2)   Court Pay ..................................................................... 58

(3)   Section 207(h) Offsets Should Be Credited to Any FLSA Liability, Rather Than Limited to Specific Work Periods ..................... 59

III.   EVIDENTIARY ISSUES ................................................................. 62

A.   Issues to Be Addressed Prior to Trial ..................................... 62

B.   Issues to Be Addressed During Trial ....................................... 62

1.   Wearing or Demonstration of Uniforms ................................. 62

2.   Third Party Knowledge Testimony......................................... 62

3.   Common Knowledge Testimony ............................................ 63

4.   Subsequent Remedial Measures .......................................... 63

5.   Rebuttal Expert Testimony .................................................. 63

6.   Full Examination of Witnesses When Called .......................... 63

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

## FEDERAL CASES

3

4

*Abbey v. City of Jackson*,
   883 F. Supp. 181 (E.D. Mich. 1995)..........................................................58, 60, 61

5

*Abbey v. United States*,
   82 Fed. Cl. 722 (2008) ...............................................................................................39

6

7

*Adams v. United States*,
   65 Fed. Cl. 217 (2005)...........................................................................................35, 39

8

*Addison v. Huron Stevedoring Corp.*,
   204 F.2d 88 (2nd Cir 1953)........................................................................................51

9

*Albanese v. Bergen County*,
   991 F. Supp. 410 (D.N.J. 1997) ................................................................................40

10

11

*Albee v. Village of Bartlett*,
   861 F. Supp. 680 (N.D. Ill. 1994) .............................................................................33

12

*Alexander v. United States*,
   32 F.3d 1571 (Fed. Cir. 1994)..............................................................................58, 59

13

14

*Alexander v. Wackenhut Corp.*,
   No. 07-262, 2008 WL 2697163 (E.D. La. Jul. 1, 2008) ...........................................38

15

*Alvarez v. IBP, Inc.*,
   339 F.3d 894 (9th Cir. 2003) ........................................................................34, 40, 84

16

17

*America Title Insurance Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) .....................................................................................49

18

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946).........................................................................................27, 40, 42

19

20

*Bell v. Iowa Turkey Growers Cooperative*,
   407 F. Supp. 2d 1051 (S.D. Iowa 2006) ...................................................................59

21

*Berry v. County of Sonoma*,
   30 F.3d 1174 (9th Cir. 1994) ...............................................................................45, 52

22

23

*Berry v. Sonoma County*,
   791 F. Supp. 1395 (N.D. Cal. 1992) .........................................................................56

24

*Biggs v. Joshua Hendy Corp.*,
   183 F.2d 515 (9th Cir. 1950) ...............................................................................58, 59

25

26

*Biggs v. Wilson*,
   1 F.3d 1537 (9th Cir. 1993) .......................................................................................50

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
iv   DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

*Blankenship v. Thurston Motor Lines,*
    295 F. Supp. 632 (W.D. Va. 1968) ..................................................................51

*Block v. City of Los Angeles,*
    253 F.3d 410 (9th Cir. 2001) .........................................................................51

*Blum v. Great Lakes Carbon Corp.,*
    418 F.2d 283 (5th Cir. 1969) ........................................................................36

*Bobo v. United States (Bobo I),*
    37 Fed. Cl. 690 (1997) ...................................................................................40

*Bobo v. United States (Bobo II),*
    136 F.3d 1465 (Fed. Cir. 1998) ...............................................................40, 41

*Bratt v. County of Los Angeles,*
    912 F.2d 1066 (9th Cir. 1990) ................................................................51, 52

*Brennan v. General Motors Acceptance Corp.,*
    482 F.2d 825 (5th Cir. 1973) ........................................................................30

*Bright v. Houston NW Medical Center Survivor, Inc.,*
    934 F.2d 671 (5th Cir. 1991) ........................................................................45

*Brock v. City of Cincinnati,*
    236 F.3d 793 (6th Cir. 2001) ...................................................................44, 55

*Brumbelow v. Quality Mills, Inc.,*
    462 F.2d 1324 (5th Cir. 1972) .............................................................32, 33, 42

*Bull v. United States,*
    68 Fed. Cl. 212 (2005) ........................................................................... passim

*Bureerong v. Uvawas,*
    922 F. Supp. 1450 (C.D. Cal. 1996) ............................................................43

*Cameron v. Chichagof Mining Co.,*
    82 F. Supp. 665 (D. Alaska 1948) ................................................................54

*Cherup v. Pittsburgh Plate Glass Co.,*
    350 F. Supp. 386 (W.D. Va. 1972) ...............................................................36

*Chao v. Tyson Foods, Inc.,*
    No. 2:02-CV-1174-VEH, 2008 WL 2020323 (N.D. Ala. Jan. 22, 2008) .................................41

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ......................................................................................43

*City National Bank v. United States,*
    907 F.2d 536 (5th Cir. 1990) ........................................................................49

*Clarke v. City of New York,*
    No. 06-civ-11397 (GEL) 2008 WL 3398474 (S.D.N.Y. June 16, 2008)...............................25

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

v

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   *Cunningham v. Gibson Electric Co.*,
2       43 F. Supp. 965 (N.D. Ill. 1999) ...........................................................30

3   *Dade County v. Alvarez*
        124 F.3d 1380 (11th Cir. 1997) ...........................................................48
4
5   *Davis v. Food Lion*,
        792 F.2d 1274 (4th Cir. 1986) ...........................................................32
6
    *Devine v. Joshua Hendy Corp.*,
7       77 F. Supp. 893 (S.D. Cal. 1948)...............................................51, 55

8   *Dice v. Weiser Security Services*,
        No. 06-61133-civ, 2008 WL 269513 (S.D. Fla. Jan. 29, 2008)...............60
9
    *Donavan v. Bel-Loc Dinner, Inc.*,
10      780 F.2d 1113 (4th Cir. 1985) ...........................................................28

11  *Dunlop v. City Electric, Inc.*,
        527 F.2d 394 (5th Cir. 1976) .......................................................34, 36, 37
12
    *Dunn v. Muskegon*,
13      No. 1:97-cv-01003, 1998 WL 34302060 (W.D. Mich. Nov. 5, 1998) ...............60

14  *East v. Bullock's, Inc.*,
        34 F. Supp. 2d 1176 (D. Ariz. 1998) ...........................................................43
15
    *Falzo v. County of Essex*,
16      No. Civ. A. 03-1922 (JLL), 2008 WL 2064811 (D.N.J. May 14, 2008)...............40

17  *Featsent v. City of Youngstown*,
        70 F.3d 900 (6th Cir. 1995) ...............................................51, 53
18
    *In re Food Lion Effective Scheduling Litigation*,
19      861 F. Supp. 1263 (E.D.N.C. 1994).................................................28, 29, 32

20  *Forrester v. Roth's I.G.A. Foodliner, Inc.*,
        574 F. Supp. 630 (D. Ore. 1979).................................................42
21
    *Forrester v. Roth's I.G.A. Foodliner, Inc.*,
22      646 F.2d 413 (9th Cir. 1981) ...............................................26, 27, 31

23  *Gaylord v. Miami-Dade County*,
        78 F. Supp. 2d 1320 (S.D. Fla. 1999) ...........................................................31, 33
24
    *Genarie v. PRD Management, No. Civ. A. 04-2082 (JBS)*,
25      2006 WL 436733 (D.N.J. Feb. 17, 2006) ...........................................................40

26  *Harold Levinson Associates, Inc. v. Chao*,
        No. 01-6105, 37 Fed. Appx. 19 (2nd Cir. 2002).................................................61
27
    *Harvill v. Westward Communications, LLC*,
        311 F. Supp. 2d 573 (E.D. Tex. 2004) ...........................................................32

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO
SD\663160.2
vi
CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604 (1993).................................................................................................49

*Hellmers v. Town of Vestal*,
    969 F. Supp. 837 (N.D.N.Y. 1997).................................................................36, 45

*Herman v. Fabri-Centers of America*,
    308 F.3d 580 (6th Cir. 2002) .................................................................................59

*Hesseltine v. Goodyear Tire & Rubber Co.*,
    391 F. Supp. 2d 509 (E.D. Tex. 2001)........................................40, 58, 59, 60

*Holzapfel v. Town of Newburgh*,
    145 F.3d 516 (2d Cir. 1998)...................................................................25, 27, 29

*Holzapfel v. Town of Newburgh (Holzapfel II)*,
    950 F. Supp. 1267 (S.D.N.Y. 1997)............................................................27, 29

*Horan v. King County*,
    740 F. Supp. 1471 (W.D. Wash. 1990).................................................................51

*Houston Police Officers' Union v. City of Houston*,
    330 F.3d 298 (5th Cir. 2003) .................................................................................53

*Howard v. City of Springfield*,
    274 F.3d 1141 (7th Cir. 2001) ........................................................................59, 60

*Hultgren v. County of Lancaster*,
    913 F.2d 498 (8th Cir. 1990) ........................................................................51, 53

*Huss v. Huntington Beach*,
    317 F. Supp. 2d 1151 (C.D. Cal. 2000) .................................................................45

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005)....................................................................................34, 36, 38

*Imada v. City of Hercules*,
    138 F.3d 1294 (9th Cir. 1999) ...............................................................................35

*Jackson v. Air Reduction Co.*,
    402 F.2d 521 (6th Cir. 1968) .................................................................................36

*Jackson v. City of San Antonio*,
    No. SA-03-CA-0049-RF, 2006 WL 2548545 (W.D. Tex. Aug. 31, 2006) ..............46

*Johnson v. Methodist Medical Center*,
    10 F.3d 1300 (7th Cir. 1993) .................................................................................45

*Johnson v. RGIS Inventory Specialists*,
    554 F. Supp. 2d 693 (E.D. Tex. 2007)...................................................................25

*Kavanaugh v. Grand Union Co., Inc.*,
    192 F.3d 269 (2d Cir. 1999)...................................................................................35

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

vii

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

*Kelly v. Ballard*,
   298 F. Supp. 1301 (S.D. Cal. 1969) ....................................................................51, 55

*Kohlheim v. Glynn County*,
   915 F.2d 1473 (11th Cir. 1990) .........................................................................58, 59

*Laffey v. Northwest Airlines, Inc.*,
   567 F.2d 429 (D.D.C. 1976) .....................................................................................51

*Lamon v. City of Shawnee*,
   972 F.2d 1145 (10th Cir. 1992) .................................................................................25

*Leone v. Mobil Oil Corp.*,
   523 F.2d 1153 (D.C. Cir. 1975) ..........................................................................24, 25

*Lindow v. United States*,
   738 F.2d 1057 (9th Cir. 1984) ........................................................................ passim

*Local 246 Utility Workers' Union of America v. S. Cal. Edison*,
   83 F.3d 292 (9th Cir. 1996) ......................................................................................51

*Local 1605 Amalgamated Transit Union v. Central Contra Costa County Transit Authority*,
   73 F. Supp. 2d 1117 (N.D. Cal. 1999) ......................................................................45

*Lockwood v. Prince George's County*,
   58 F. Supp. 2d 651 (D. Md. 1999) ............................................................................49

*Maciel v. City of Los Angeles*,
   542 F. Supp. 2d 1082 (C.D. Cal. 2008) ...............................................................29, 30

*Marshall v. Brunner*,
   668 F.2d 748 (3rd Cir 1982) .....................................................................................51

*Maus v. City of Towanda*,
   165 F. Supp. 2d 1223 (D. Kan. 2001) .......................................................................33

*McClean v. Crabtree*,
   173 F.3d 1176 (9th Cir. 1999) ..................................................................................43

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1998) .............................................................................................48, 49

*Millington v. Morrow County Board of Commissioners*,
   No. 2:06-cv-347, 2007 WL 2908817 (S.D. Ohio Oct. 4, 2007) ...............................32

*Mitchell v. Reynolds*,
   125 F. Supp. 337 (W.D. Ark. 1954)...........................................................................43

*Mortensen v. County of Sacramento*,
   368 F.3d 1082 (9th Cir. 2004) ..................................................................................53

*Murphy v. Town of Natick*,
   516 F. Supp. 2d 153 (D. Mass. 2007) .......................................................................60

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

1

*Nardone v. General Motors, Inc.*,
   207 F. Supp. 336 (D.N.J. 1962) ...................................................................................41

2

*Nash v. Resources, Inc.*,
   982 F. Supp. 1427 (D. Ore. 1997).................................................................................51

3

4

*Nelson v. Ala. Institute for Deaf & Blind*,
   896 F. Supp. 1108 (N.D. Ala. 1995)..................................................................51, 52, 54

5

*Nelson v. Waste Mgmt. of Alameda County, Inc.*,
   33 Fed. Appx. 273, 274 (9th Cir. 2002).......................................................................23

6

7

*Newton v. City of Henderson*,
   47 F.3d 746 (5th Cir. 1995) .................................................................................. passim

8

*Nolan v. City of Chicago*,
   125 F. Supp. 2d 324 (N.D. Ill. 2000) ......................................................................58, 59

9

10

*O'Brien v. Town of Agawam  ("O'Brien V")*,
   491 F. Supp. 2d 170 (D. Mass. 2007) ..........................................................................60

11

*Owens v. Local No. 169*,
   971 F.2d 347 (9th Cir. 1992) ........................................................................................45

12

13

*Pforr v. Food Lion, Inc.*,
   851 F.2d 106 (4th Cir. 1988) ..................................................................................23, 27

14

*Purgess v. Sharrock*,
   33 F.3d 134 (2d Cir. 1994)............................................................................................49

15

16

*Reich v. Department of Conservation & Natural Resources*,
   28 F.3d 1073 (11th Cir. 1994) ......................................................................................29

17

*Reich v. Gateway Press*,
   13 F.3d 685 (3d Cir. 1994)............................................................................................48

18

19

*Reich v. New York City Transit Authority*
   147 F.3d 71 (1st Cir. 1998) ..........................................................................................60

20

*Roman v. Maietta Construction, Inc.*,
   45 F.3d 646 (2d Cir. 1995)............................................................................................36

21

22

*Rudolph v. Metropolitan Airports Commission*,
   103 F.3d 677 (8th Cir. 1996) ..................................................................................44, 45

23

*Schneider v. City of Springfield*,
   140 Lab. Cas. (CCH) ¶ 34,064 (S.D. Ohio Mar. 30, 2000) .........................................56

24

*Singer v. City of Waco*,
   324 F.3d 813 (5th Cir. 2003) ..................................................................................59, 60

25

26

*Smith v. Aztec Well Servicing Co.*,
   321 F. Supp. 2d 1234 (D. N.M. 2004) .........................................................................25

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

ix

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

*Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*,
   321 U.S. 590 (1944) ...........................................................................................24

*Thomas v. County of Fairfax*,
   758 F. Supp. 353 (E.D. Va. 1991) ...............................................................51, 52, 55

*Treece v. City of Little Rock*,
   923 F. Supp. 1122 (E.D. Ark. 1996) ................................................................37

*United Transport Union Local 1745 v. City of Albuquerque*,
   178 F.3d 1109 (10th Cir. 1999) .......................................................................35

*Vega v. Gasper*,
   36 F.3d 417 (5th Cir. 1994) ..............................................................................35

*Walling v. Woodruff*,
   49 F. Supp. 52 (M.D. Ga. 1942) .......................................................................42

*Wasco Products, Inc. v. Southwall Technologies, Inc.*,
   435 F.3d 989 (9th Cir. 2006) ...........................................................................45

*Wyatt v. Holtville Alfalfa Mills, Inc.*,
   106 F. Supp. 624 (S.D. Cal. 1952) ..................................................................54

## FEDERAL STATUTES

29 C.F.R. § 790.22 ..............................................................................................51

29 U.S.C. § 203(d) ...............................................................................................23

29 U.S.C. § 203(g) ...........................................................................................23, 24

29 U.S.C. § 203(y) ...............................................................................................57

29 U.S.C. § 207 ................................................................................................ passim

29 U.S.C. § 207(a) ...............................................................................................23

29 U.S.C. § 207(h) ...........................................................................................58, 59

29 U.S.C. § 211(c) ...............................................................................................43

29 U.S.C. § 216(b) ...............................................................................................61

29 U.S.C. § 254(a) ...............................................................................................34

29 U.S.C. § 255(a) ...............................................................................................48

29 U.S.C. § 260 ....................................................................................................50

Fed. R. Civ. P. 32 .................................................................................................62

29 C.F.R. § 553.211(a) .........................................................................................56

29 C.F.R. § 553.211(b) .........................................................................................57

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

x

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1  29 C.F.R. § 553.212 ................................................................................58

2  29 C.F.R. § 553.221(d) ...........................................................................45

3  29 C.F.R. § 553.233 ..........................................................................58, 60

4  29 C.F.R. § 778.106 ................................................................................50

5  29 C.F.R. § 778.201 ..........................................................................58, 60

6  29 C.F.R. § 778.203(a) ......................................................................58, 60

7  29 C.F.R. § 778.320 ................................................................................23

8  29 C.F.R. § 785.11 .................................................................................27

9  29 C.F.R. § 785.12 .................................................................................27

10  29 C.F.R. § 785.17 ................................................................................45

11  29 C.F.R. § 785.23 .................................................................1, 45, 46, 47

12  29 C.F.R. § 785.27 ...........................................................................46, 48

13  29 C.F.R. § 785.36 ................................................................................35

14  29 C.F.R. § 785.37 ................................................................................35

15  29 C.F.R. § 790.6(b) .............................................................................38

16  29 C.F.R. § 790.7(h) ........................................................................26, 36

17

18  **OTHER SOURCES**

19
Kevin O'Malley et al., *Federal Jury Practice and Instructions, Civil,*
20   Fair Labor Standards Act § 175.35, P. 656 (5th ed. 2001) (current through 2008)...................49

21

22

23

24

25

26

27

28

1    Defendant the City of San Diego provides the following Trial Brief pursuant to Civil

2    Local Rule 16.1(f)(9).  As required by Rule 16.1(f), this brief addresses the significant disputed

3    issues of law and evidentiary issues.  It does not purport to be exhaustive or to address every

4    issue that may arise at trial.  Should additional issues of law arise, the City is prepared to submit

5    further trial briefing, as necessary.  The City also incorporates by reference, as if fully set forth

6    herein, its proposed supplemental jury instructions (Dkt # 511), its objections to Plaintiffs'

7    proposed jury instructions (Dkt # 517), and the City's revised proposed jury instructions (filed

8    concurrently herewith).

9    **I.       STATEMENT OF FACTS**

10           **A.       Summary of Facts and Claims**

11                  **1.       Overview**

12    Plaintiffs[1] are ten sworn police officers and members of the San Diego Police Department

13    (SDPD), holding the rank of Sergeant or Police Officer II.  Each Plaintiff works a seven-day

14    schedule that alternates four ten-hour days on-duty and three days off-duty.  This schedule is

15    known as the "4/10 Schedule."  Each Plaintiff is paid for a full ten hours each shift.  Patrol

16    officers work one of three "watches":  First Watch, which begins at 6:00 a.m. and ends at 4:00

17    p.m.; Second Watch, which begins at 2:00 p.m. and ends at 12:00 a.m.; or Third Watch, which

18    begins at 9:00 p.m. and ends at 7:00 a.m.  Patrol watches are staggered and overlap substantially

19    in order to enable better patrol coverage and to facilitate shift changes.  Non-patrol officers are

20    assigned to various other watch rotations, but nevertheless work the same four days on/three

21    days off schedule.

22    SDPD officers are assigned "ranks" as follows, from the lowest rank to the highest rank:

23    Recruit, Police Officer I, Police Officer II, Sergeant, Lieutenant, Captain, Assistant Chief, Chief.

24    Officers of the rank of Lieutenant and above are salaried and are considered "management."

25    These management officers are not represented by the officers' collective bargaining

26

27

28    [1]       Unless otherwise specified, the term "Plaintiffs" is used in this memorandum to refer
only to the ten designated trial Plaintiffs.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
1   DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    representative union, the San Diego Police Officers' Association, although senior officers may

2    remain members of the union for other purposes.

3                            **2.        SDPD Overtime Policies**

4            SDPD overtime policy is specified in Department Procedure ("DP") 1.20, entitled

5    "Overtime Compensation."  DP 1.20 was most recently revised as of June 26, 2007.  Two prior

6    versions of DP 1.20 were in effect at various times relevant to this lawsuit:  DP 1.20 –

7    07/06/2005 and DP 1.20 – 12/20/1987.  Each of these versions of the overtime policy authorizes

8    overtime compensation under specifically defined "emergency" conditions, including when

9    necessary to:  "(1) Prevent the interruption of a necessary public service; (2) Protect property

10   from damage; (3) Remove hazards that threaten the public safety; and (4) Complete an activity,

11   project, or work assignment within an established legal time limitation."  In most cases, however,

12   "approval from a supervisor must be received prior to working overtime."  When overtime hours

13   are incurred, such hours are to be reported to the nearest tenth of an hour, and must be submitted

14   for approval within three calendar days of the date the overtime is worked.

15           Consistent with this policy, and in order to limit the amount of overtime incurred during

16   times of budgetary crisis, officers and their supervisors are encouraged to avoid working

17   unnecessary overtime hours.  Supervisors are expected to manage personnel in the field so as to

18   avoid or minimize the need for overtime work.  For their part, the rank and file are expected to

19   undertake reasonable efforts to avoid working unnecessary overtime hours and to seek pre-

20   approval of overtime work when such work is necessary.

21           The SDPD reiterated the importance of avoiding unnecessary overtime work in a

22   Department Order, numbered 03-09 issued on January 29, 2003.  This order directed all

23   members of the Department to "closely monitor[]" and "avoid[] whenever possible" unnecessary

24   extended shift overtime.  For informational and budgetary management reasons, Department

25   Order 03-09 required supervisors to submit a short explanation of the reason for the overtime

26   with each extension of shift overtime request.  These overtime requests were routinely approved

27   and paid.  The practice of submitting explanatory notes with extension of shift overtime requests

28   was promptly discontinued and is no longer effective Department policy.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    When overtime hours must be incurred, officers' requests for overtime compensation are

2    routinely submitted and approved, whether or not pre-approval was obtained and irrespective of

3    the existing state of the overtime budget.  Officers' evaluations, grades, or chances of promotion

4    are not determined by reference to the amount of overtime they permit or incur.

5    Officers are permitted by some supervisors to elect to take time off on another day during

6    the same work period in lieu of requesting overtime compensation.  This informal flex time

7    practice is voluntary and officer-driven.

8    **3.      Pre- and Post-Shift Activities**

9    **a.      Pre-Shift Activities**

10   The City's expectations of its non-supervisory officers prior to the start of a shift are

11   simple:  officers must appear for lineup at the start of their appointed shift, fully dressed in

12   uniform and associated required gear or equipment.  No other pre-shift preparatory activities are

13   required, encouraged, or desired by the Department to be performed prior to the start of the shift.

14   Patrol sergeants (or acting sergeants), and supervisory officers in some other types of

15   assignments, are required to perform certain preparatory tasks prior to the formal start of the

16   shift.  These tasks include preparing the daily schedule, preparing line up training and

17   presentations, checking an incident log, checking the "redbook" (*i.e.*, leave roster) to ensure

18   proper shift staffing levels, checking mailboxes, and checking for subpoenas.  Sergeants

19   normally are designated as the "lineup sergeant," with responsibility to complete these "lineup"

20   duties two out of the four days they are scheduled to work, although any particular sergeant may

21   perform these duties more or less often.

22   To accommodate the completion of these additional duties prior to the start of the watch,

23   and to ensure that each officer is paid for the completion of these lineup duties, the designated

24   lineup sergeant for a particular watch is required to arrive thirty minutes prior to the start of

25   watch and to end his or her shift exactly ten hours later, *i.e.*, thirty minutes prior to the end of the

26   watch.  For example, on the days that she is the designated lineup sergeant, a sergeant working

27   the First Watch would start her shift at 5:30 a.m. and end her shift ten hours later, at 3:30 p.m.  A

28   different sergeant, designated as the "late reports sergeant," is required to start his shift at 6:00

LATHAM&WATKINS\ufeff
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

3

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    a.m. and will remain at the station until the 4:00 p.m. end of the watch.  The Department does not

2    expect or require that the lineup sergeant duties be completed prior to the beginning of an

3    officer's shift without compensation.

4           Although officers are not expected or required to arrive early for their shifts, other than to

5    dress into their uniforms and don associated gear or equipment, some officers nevertheless arrive

6    early of their own accord for various personal reasons.  Some officers arrive early to their

7    assigned station to "beat the traffic" or to engage in non-work related activities such as

8    exercising, socializing with their peers, checking personal email or mail, making personal phone

9    calls, and similar activities.  Others may engage in work-related activities prior to the start of the

10   shift that are not necessary or required to be completed prior to lineup, and hence are not

11   conducted primarily for the City's benefit.

12          For instance, while loading patrol cars is neither expected or required to be performed

13   prior to lineup (in fact, the City expects that officers will load their cars after lineup), some

14   officers may arrive early to load patrol vehicles prior to the start of their shifts for their own

15   benefit, such as to "claim" a particular or newer vehicle.  Other officers arrive early to load a

16   patrol vehicle with extra equipment or weapons they choose to carry above and beyond what is

17   required by the City.  However, Plaintiffs admit that they have occasionally loaded their vehicles

18   after lineup, and on those occasions, none of the Plaintiffs has been disciplined, reprimanded, or

19   counseled for doing so.  Still other Plaintiffs confirm that they have inspected and loaded their

20   patrol vehicles after lineup, and they have seen others do so as well, without having been

21   reprimanded or disciplined for doing so.

22          The Plaintiffs also claim they performed other types of activities prior to their shifts,

23   including briefings with the prior shift, checking email, or completing reports.  Yet the City

24   expects and requires these activities to be completed while *on duty*, rather than prior to the start

25   of the shift.  Many of the Plaintiffs themselves confirm that they occasionally have completed

26   these activities after lineup, without having been disciplined or reprimanded for doing so.

27          The Plaintiffs voluntarily engaged in these activities outside their regular shifts despite

28   the City's having undertaken numerous efforts to discourage employees from incurring overtime.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

4

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    Critically, Department Procedure 1.20 and numerous Divisional operations manuals make clear

2    that officers are not to work additional hours absent pre-approval for overtime compensation.

3    The importance of avoiding unnecessary overtime work was re-iterated in Department Order 03-

4    09, which directs all members of the Department to "closely monitor[]" and "avoid[] whenever

5    possible" unnecessary extended shift overtime.  Plaintiffs were aware of these efforts and

6    understood that in 2003, and at various other times, the City sought to control the amount of

7    overtime hours worked in light of the City's budgetary constraints.  At no time did the City

8    direct that any of its officers should work overtime hours without compensation; instead, the City

9    directed its officers not to work overtime hours whenever those hours were unnecessary or could

10   be avoided.

11                        **b.       Post-Shift Activities**

12            The City likewise does not regularly expect or require its officers to perform post-shift

13   work activities.  Officers who work in the field, including patrol officers, return to the station

14   forty-five minutes to thirty minutes prior to the end of their shifts.  During this time, officers

15   unload their patrol vehicles, complete and submit any remaining reports or other paperwork,

16   check email, and, in many instances, may doff their uniforms and associated gear.  It is standard

17   practice to permit patrol officers to depart their shifts early if all reports are completed and the

18   next watch is already out in the field.  If an officer is unable to complete all of his or her reports

19   prior to the end of the watch, depending upon the type of report, the officer may be permitted to

20   "hold" the report for completion during his or her next shift, after lineup.

21            Officers are occasionally required to remain on-duty at the end of the shift to complete or

22   stabilize a long service call or arrest and to complete the associated reports.  When it is necessary

23   for an officer to work overtime past the end of his or her scheduled shift, he or she is expected

24   and encouraged to submit an overtime request for this time.  Extension of shift overtime requests

25   are routinely approved irrespective of whether the overtime incurred was formally pre-approved.

26            Although many of the Plaintiffs contend that they were discouraged from submitting

27   extension of shift overtime slips of thirty or sixty minutes or less, they do not contend that the

28   City or any particular supervisor discouraged or refused extension of shift overtime requests in

1    excess of an hour.  All of the Plaintiffs have received such extension of shift overtime, and most

2    specifically testified in depositions that they submitted and were paid for extension of shift

3    overtime requests of thirty minutes or an hour or more.

4                        **4.        Actual or Constructive Knowledge**

5              Neither the City, nor the SDPD's management had actual or constructive knowledge that

6    any of the Plaintiffs completed compensable work for which he or she was not compensated

7    under the FLSA.  The Department's written policies and instructions to its officers are to submit

8    overtime requests for all compensable overtime hours worked.

9              The City did not have actual or constructive knowledge of the Plaintiffs' claimed post-

10   shift uncompensated overtime.  The Plaintiffs admit that their supervisors would not always

11   remain at the station after the end of a shift, and that their supervisors would not necessarily

12   know if and whether an officer had completed work-related activities beyond his or her shift

13   hours.  Mensior, as one example, admitted that his supervisors usually would not know if he was

14   working past the end of his shift.  McCollough also observed that even if he knew an officer he

15   supervised had stayed late past the end of her shift, for instance Zdunich, he would not know

16   whether she had submitted and been paid for overtime as the overtime request would have been

17   handled by a sergeant on the oncoming shift.

18             Nor did the City have actual or constructive knowledge of the Plaintiffs' claimed "other

19   uncompensated overtime" for work they allegedly performed at home or away from their

20   workplaces.  The Plaintiffs have admitted that they did not report this time to their supervisors or

21   to a member of the SDPD management.  For example, Shiraishi admits that he did not inform his

22   supervisors of his claimed "other uncompensated overtime" activities, and that his supervisors

23   were not present to observe him working outside of the regularly-scheduled shift hours.  Because

24   the activities were not performed at the workplace, unless the Plaintiffs had reported the time to

25   their supervisors or to SDPD management, the City lacked actual or constructive knowledge that

26   any Plaintiff was engaged in such activities while off-duty.

27             Although Plaintiffs contend there is a "culture" or "unwritten policy" that discouraged

28   them from submitting overtime requests for less than thirty minutes of overtime worked, and that

the City possessed constructive knowledge of uncompensated overtime work activities falling within this threshold, Plaintiffs for the most part were unable to identify specific individuals or any document from which they gleaned this information.  Moreover, not one Plaintiff testified that he or she was ever disciplined for submitting an overtime request for any length of time or for any reason, and scant few testified that they had personal knowledge of an overtime request for less than thirty or sixty minutes having been denied.

Additionally, even if Plaintiffs are able to satisfy their burden to prove at trial that they were discouraged or precluded from reporting overtime hours worked of thirty or sixty minutes or less, the City lacked constructive knowledge of any other unreported alleged overtime hours worked.  Plaintiffs themselves acknowledge that they were expected to, directed to, required to, and often did, report all overtime hours worked in excess of thirty or sixty minutes per day.  Plaintiffs admitted that during the time periods relevant to this lawsuit they often have been encouraged to submit overtime requests for all time worked.  They have never been directed by any supervisor to perform work without obtaining compensation.  Indeed, Plaintiffs virtually universally stated that during the period relevant to this lawsuit (*i.e.*, since August 2002 or August 2003), they have not had an overtime slip denied for any reason.

In addition, Plaintiffs with supervisory responsibilities -- some of whom supervise other Plaintiffs -- encourage and expect their subordinates to submit overtime requests for all hours worked.  With one exception, Plaintiffs with supervisory responsibilities admit that they have never denied an overtime slip that has been presented to them.

Finally, none of the Plaintiffs lodged a grievance with the City regarding the Department's overtime practices, nor did any Plaintiff file a formal or informal complaint with anyone in the Department, at any level.

### 5.    The Trial Plaintiffs

#### a.    Joseph Bane

Plaintiff Joseph Bane holds the rank of Sergeant, which he attained on February 2, 1993.  He has been with the SDPD since 1984.  Bane has a specialty in SWAT, for which he receives an additional 3.5% in his hourly pay rate.  From October 25, 2003 until January 26, 2007, Bane

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

7

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   had a specialty in Mounted, for which he received an additional 3.5% in his hourly pay rate.

2   Until 2003, while assigned to SWAT, Bane also had a specialty as a field training officer, for

3   which he received an additional 3.5% in his hourly pay rate.

4         Bane is presently assigned to the Traffic Division as a member of the Photo Red Light

5   Enforcement Unit.  He has held this assignment since January 27, 2007.  From October 25, 2003

6   until January 26, 2007, Bane was assigned to the Traffic Division as a member of the Mounted

7   Enforcement Unit.  From December 13, 1997 through October 24, 2003, Bane was assigned to

8   the Operational Support Division as a member of the Special Response Team (or SWAT Unit).

9   Bane has worked on a 4/10 schedule, which includes a paid lunch.  Bane has submitted in excess

10  of 195 overtime slips in these assignments, and he has received more than $137,614 in overtime

11  pay.  During the period August 2002 through July 2008, Bane's regular hourly rate of pay ranged

12  from approximately $38.70 to $48.95.

13        <u>Pre-Shift Claim.</u>  Bane claims he is owed thirty minutes per day of overtime

14  compensation for the following pre-shift activities:  donning his uniform and associated gear,

15  including polishing brass and boots, checking email, reviewing and preparing the daily work

16  schedule, and logging into the laptop computer/loading a patrol car.

17        <u>Post-Shift Claim.</u>  Bane claims he is owed thirty minutes per day of overtime

18  compensation for the following post-shift activities:  doffing his uniform and associated gear,

19  unloading the patrol vehicle, writing, processing, or reviewing reports, and, during the periods he

20  was assigned to the Mounted Unit, cleaning the horses.  He clarified in his deposition that his

21  post-shift activities during the period he was assigned to full-time SWAT (until October 25,

22  2003) were typically limited to fifteen to twenty minutes to doff and put away his uniform and

23  gear.  Bane also clarified in his deposition that the same is true of his current assignment in the

24  Photo Red Light Enforcement Unit; he typically takes fifteen to twenty minutes to unload SWAT

25  gear from his vehicle and doff his uniform and related gear.

26        <u>Other Uncompensated Overtime Claim.</u>  Bane claims he is owed 350 hours of other

27  unpaid overtime compensation from August 1, 2002 through October 24, 2003 for activities

28  associated with his full-time SWAT assignment.  These activities are:  SWAT training extended

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

8

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   shifts (forty-eight hours/year), responding to phone calls and emails on days off (180

2   hours/year), and training activities for the SWAT academy (fifty-two hours/year).  Bane claims

3   he is owed 479.66 hours of other unpaid overtime compensation for the period from October 25,

4   2003 through January 26, 2007, while he was assigned to the Mounted Enforcement Unit.  The

5   activities for which he alleges he is owed overtime compensation are:  email and phone calls

6   while off duty (100 hours/year), and training activities for the mounted academy (fifty-two

7   hours/year).  Bane also includes claims for contract overtime that he contends he would have

8   earned if he had not instead been required to adjust his shift hours within the work week.  The

9   total of these "adjusted hours" claims is 155, which includes:  sixty hours for "SWAT warrant

10  services on adjusted hours"; sixty-five hours for "adjusted hours for special events with the

11  Mounted Unit"; and thirty hours "adjusted to work Padres games to avoid overtime."  Bane also

12  claims 120 hours of overtime compensation for overtime he claims he would have had the

13  opportunity to earn had his pay status not been changed from essential to non-essential.

14      Bane was paid overtime for all overtime request forms he submitted; none of his requests

15  were denied.  He has not made a formal or informal complaint regarding overtime compensation

16  practices to his supervisor nor any senior member of the SDPD.

17      <u>Summary of Offsets and Adjustments</u>.  The City's expert, Mr. Cary Mack, will testify

18  regarding the computation of pertinent offsets and adjustments to each of the Plaintiff's claims.

19  Based on Plaintiffs' declarations, Mr. Mack has calculated each Plaintiff's approximate total

20  uncompensated overtime claims, as well as offsets and adjustments for both a three-year statute

21  of limitations and a two-year statute of limitations.  When such adjustments and offsets are

22  applied to Bane's claims, Bane must prove in excess of 1088 hours of uncompensated overtime

23  in order to be eligible for any damages if a three-year statute of limitations applies.  This

24  calculation does not include further adjustments as may be appropriate to remove donning and

25  doffing activities or other adjustments that may be necessary to claimed time for non-

26  compensable activities.

27

28

#### b.   Neal N. Browder

Plaintiff Neal N. Browder holds the rank of Police Officer II, which he attained on August 20, 1990.  He has been with the SDPD since 1988.  Browder has a specialty in SWAT, for which he receives an additional 3.5% in his hourly pay rate.  He also has a specialty as a field training officer for which he receives an additional 5% in his hourly pay rate.

Browder is presently assigned to Western Division as a patrol officer and field evidence technician.  He has held this assignment at all times relevant to this lawsuit.  Browder has worked on a 4/10 schedule, which includes a paid lunch.  Browder has submitted in excess of 152 overtime slips in these assignments, and he has received more than $92,734 in overtime pay.  During the period August 2002 through July 2008, Browder's regular hourly rate of pay ranged from approximately $32.50 to $44.00.

Pre-Shift Claim.  Browder claims he is owed twenty minutes per day of overtime compensation for the following pre-shift activities:  donning his uniform and associated gear, checking email, and logging into the laptop computer/loading a patrol car.

Post-Shift Claim.  Browder claims he is owed fifteen minutes per day of overtime compensation for the following post-shift activities:  doffing his uniform and associated gear, unloading the patrol vehicle, and writing, processing, or reviewing reports.

Other Uncompensated Overtime Claim.  Browder also claims he is owed 108 hours of overtime per year for other activities for which he alleges he was not paid overtime.  The activities for which Browder seeks compensation as part of this claim are the following:  preparation for court, travel time to and from court, travel time to and from SWAT training, going to the firing range for practice and for range certification, reviewing reports or checking and responding to emails on days off, and cleaning and maintaining his uniform, boots and other gear, including travel to and from the dry cleaners.

Browder contends that one of his supervisors, Sergeant Albert Massey, had denied overtime requests for less than an hour.  His current supervisor, Sergeant Stephanie Rose, has approved all of the overtime requests Browder has submitted, including requests for overtime of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

10

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   less than an hour.   Browder has not made a formal or informal complaint regarding overtime

2   compensation practices to his supervisor nor any senior member of the SDPD.

3          <u>Summary of Offsets and Adjustments</u>.  When adjustments and offsets are applied to

4   Browder's claims, Browder must prove in excess of 1452.10 hours of uncompensated overtime

5   in order to be eligible for any damages if a three-year statute of limitations applies.  This

6   calculation does not include further adjustments as may be appropriate to remove donning and

7   doffing activities or other adjustments that may be necessary to claimed time for non-

8   compensable activities.  Based on the claims in Browder's declaration, and assuming that all of

9   the time he claims is accurate, reasonable, and compensable, application of the offsets and

10   adjustments renders Browder's remaining potential claims as zero for either limitations period.

11                        **c.      Thomas J. Broxtermann**

12          Plaintiff Thomas J. Broxtermann holds the rank of Police Officer II, which he attained on

13   May 11, 1997.  He has been with the SDPD since 1985.  For some periods of time, Broxtermann

14   has had a specialty as a field training officer for which he has received an additional 5% in his

15   hourly pay rate.

16          Broxtermann is presently assigned to Northern Division as a patrol officer.  He has held

17   this assignment at all times relevant to this lawsuit.  Broxtermann has worked on a 4/10 schedule,

18   which includes a paid lunch.  Broxtermann has submitted in excess of 275 overtime slips in these

19   assignments, and he has received more than $123,255 in overtime pay.  During the period

20   August 2002 through July 2008, Broxtermann's regular hourly rate of pay ranged from

21   approximately $31.60 to $40.85.

22          <u>Pre-Shift Claim.</u>  Broxtermann claims he is owed thirty minutes per day of overtime

23   compensation for the following pre-shift activities:  donning his uniform and associated gear,

24   checking email, and logging into the laptop computer/loading a patrol car.  Broxtermann

25   estimates that thirteen to fifteen minutes of his claim pertains to time spent donning his uniform

26   and associated gear.  He estimated that it takes him approximately fifteen minutes per day to load

27   his patrol vehicle and to log into the laptop computer carried in the vehicle.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

11

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    <u>Post-Shift Claim.</u>  Broxtermann claims he is owed thirty minutes per day of overtime

2    compensation for the following post-shift activities:  doffing his uniform and associated gear,

3    unloading the patrol vehicle, and writing, processing, or reviewing reports.  Broxtermann

4    estimates that ten minutes of his claim pertains to time spent doffing his uniform and associated

5    gear.

6    <u>Other Uncompensated Overtime Claim.</u>  Broxtermann also claims he is owed 120 hours

7    of overtime per year for other activities for which he alleges he was not paid overtime.  The

8    activities for which Broxtermann seeks compensation as part of this claim are the following:

9    preparation for court, travel time to and from court, going to the firing range for practice and for

10   range certification, reviewing reports or checking and responding to emails on days off, and

11   cleaning and maintaining his uniform, boots and other gear, including travel to and from the dry

12   cleaners.  Broxtermann estimated that he spent thirty minutes per week (*i.e.*, 26 hours per year)

13   going to the dry cleaners to drop off and pick up his uniforms.  He estimated that he spent six to

14   7.5 hours per year cleaning his weapons.

15   Broxtermann was paid overtime for all overtime request forms he submitted; none of his

16   requests were denied.  He has not made a formal or informal complaint regarding overtime

17   compensation practices to his supervisor nor any senior member of the SDPD.

18   <u>Summary of Offsets and Adjustments.</u>  When adjustments and offsets are applied to

19   Broxtermann's claims, Broxtermann must prove in excess of 2133.4 hours of uncompensated

20   overtime in order to be eligible for any damages if a three-year statute of limitations applies.

21   This calculation does not include further adjustments as may be appropriate to remove donning

22   and doffing activities or other adjustments that may be necessary to claimed time for non-

23   compensable activities.  Based on the claims in Broxtermann's declaration, and assuming that all

24   of the time he claims is accurate, reasonable, and compensable, application of the offsets and

25   adjustments renders Broxtermann's remaining potential claims as zero for either limitations

26   period.

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

12

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

#### d.      Kevin B. Friedman

Plaintiff Kevin B. Friedman holds the rank of Sergeant, which he attained on September 1, 1995.  He has been with the SDPD since 1985.  From 1997 until August 2004 Friedman had a specialty in SWAT, for which he received an additional 3.5% in his hourly pay rate.

Friedman is presently assigned to the Traffic Division as a member of the Accident Investigations Bureau.  He has held this assignment at all times relevant to this lawsuit. Friedman has worked on a 4/10 schedule, which includes a paid lunch.  Friedman has submitted in excess of 172 overtime slips in these assignments, and he has received more than $121,393 in overtime pay.  During the period August 2002 through July 2008, Friedman's regular hourly rate of pay ranged from approximately $39.70 to $53.65.

Pre-Shift Claim.  Friedman claims he is owed thirty minutes per day of overtime compensation for the following pre-shift activities:  donning his uniform and associated gear, checking email, reviewing the electronic redbook and preparing the daily work schedule, reviewing the subpoena folder to serve subpoenas for court during lineup, and logging into the laptop computer/loading a patrol car.  Friedman estimates that five to seven minutes of his claim pertains to time spent donning his uniform and associated gear.  He estimated that it takes him between five and ten minutes per day to load his patrol vehicle and to log into the laptop computer carried in the vehicle.

Post-Shift Claim.  Friedman claims he is owed fifteen minutes per day of overtime compensation for the following post-shift activities:  doffing his uniform and associated gear, checking email, preparing for court, unloading the patrol vehicle, writing, processing, or reviewing reports, and exchanging information with detectives or the oncoming shift.  Friedman attributes four to five minutes of his fifteen minute claim to doffing his uniform and associated gear.  He attributes five minutes of his post-shift claim to unloading his patrol vehicle and logging off from the computer, and he attributes five minutes of his claim to reviewing reports and other paperwork.

Other Uncompensated Overtime Claim.  Friedman also claims he is owed thirty-six hours of overtime per year for other activities for which he alleges he was not paid overtime.  The

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

13

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   activities for which Friedman seeks compensation as part of this claim are the following:

2   preparation for court, travel time to and from court, going to the firing range for practice and for

3   range certification, reviewing reports or checking and responding to emails on days off, and

4   cleaning and maintaining his uniform, boots and other gear.  Friedman estimates that eighteen of

5   this claimed thirty-six hours pertained to time spent responding to phone calls and emails on his

6   days off.

7        Friedman was paid overtime for all overtime request forms he submitted; none of his

8   requests were denied.  He has not made a formal or informal complaint regarding overtime

9   compensation practices to his supervisor nor any senior member of the SDPD.

10       <u>Summary of Offsets and Adjustments</u>.  When adjustments and offsets are applied to

11  Friedman's claims, Friedman must prove in excess of 1466.3 hours of uncompensated overtime

12  in order to be eligible for any damages if a three-year statute of limitations applies.  This

13  calculation does not include further adjustments as may be appropriate to remove donning and

14  doffing activities or other adjustments that may be necessary to claimed time for non-

15  compensable activities.  Based on the claims in Friedman's declaration, and assuming that all of

16  the time he claims is accurate, reasonable, and compensable, application of the offsets and

17  adjustments renders Friedman's remaining potential claims as zero for either limitations period.

18              **e.       Ronald P. Larmour**

19       Plaintiff Ronald P. Larmour retired from his employment with the SDPD in May 2007,

20  following thirty-five years of service.  At retirement, Larmour held the rank of Sergeant, which

21  he attained on March 6, 1998.  Since 1998, Larmour had a specialty as a field training officer, for

22  which he received an additional 5% in his hourly pay rate.

23       Larmour was assigned to the Central Division as a patrol sergeant at all times relevant to

24  this lawsuit.  While in this assignment, Larmour worked a 4/10 schedule, which includes a paid

25  lunch.  During the period August 2002 through his retirement in May 2007, Larmour's regular

26  hourly rate of pay ranged from approximately $39.30 to $44.15.

27       <u>Pre-Shift Claim.</u>  Larmour claims he is owed forty-five minutes per day of overtime

28  compensation for the following pre-shift activities:  donning his uniform and associated gear,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

14

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   preparing to conduct lineup (including preparing briefing materials), and conducting briefing

2   with the prior shift.  Larmour estimates that ten minutes of his claim pertains to time spent

3   donning his uniform and associated gear; the remaining thirty-five minutes of overtime he claims

4   pertains to preparation for conducting lineups and briefing with the prior shift.

5          Post-Shift Claim.  Larmour claims he is owed fifteen minutes per day of overtime

6   compensation for the following post-shift activities:  doffing his uniform and associated gear,

7   unloading the patrol vehicle, writing, reviewing, or approving reports, and exchanging

8   information with supervisors or the oncoming shift.  Larmour estimates that he typically spent

9   ten minutes per day doffing his uniform and associated gear.

10          Other Uncompensated Overtime Claim.  Larmour also claims he is owed eighteen hours

11   of overtime per year through his retirement in May 2007 for other activities for which he alleges

12   he was not paid overtime.  The activities for which Larmor seeks compensation as part of this

13   claim are the following:  laundering his uniform or taking it to the cleaners, and other uniform

14   maintenance such as polishing his uniform boots.  Larmour clarified in his deposition that he

15   does not claim unpaid overtime compensation for time spent preparing for court appearances.

16          Larmour was paid overtime for all overtime request forms he submitted; none of his

17   requests were denied.  He has not made a formal or informal complaint regarding overtime

18   compensation practices to his supervisor nor any senior member of the SDPD.

19          Summary of Offsets and Adjustments.  When adjustments and offsets are applied to

20   Larmour's claims, Larmour must prove in excess of 954.5 hours of uncompensated overtime in

21   order to be eligible for any damages if a three-year statute of limitations applies.  This

22   calculation does not include further adjustments as may be appropriate to remove donning and

23   doffing activities or other adjustments that may be necessary to claimed time for non-

24   compensable activities.  Based on the claims in Larmour's declaration, and assuming that all of

25   the time he claims is accurate, reasonable, and compensable, application of the offsets and

26   adjustments renders Larmour's remaining potential claims as zero for either limitations period.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

15

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

### f.   Michael McCollough

Plaintiff Michael McCollough holds the rank of Sergeant, which he attained on June 6, 1986.  He has been with the SDPD since 1979.  From 2005, McCollough has had specialties in Advanced POST, Collision Reconstruction, and FTO, for which he receives an additional 7.5%, 4%, and 5%, respectively, in his hourly pay rate.

McCollough is presently assigned to the Traffic Division as a member of the Traffic Operations Unit.  From June 15, 2002 through March 12, 2004, McCollough served as a patrol sergeant at Northern Division.  In each of these assignments, McCollough has worked on a 4/10 schedule, which includes a paid lunch.  McCollough has submitted in excess of sixty-six overtime slips in these assignments, and he has received more than $46,295 in overtime pay. During the periods August 2002 through July 2008, McCollough's regular hourly rate of pay ranged from approximately $38.40 to $51.59.

Pre-Shift Claim.  McCollough claims he is owed twenty minutes per day of overtime compensation for the following pre-shift activities:  checking paper work left by a prior watch, completing paperwork, loading police car, logging into computer, checking for subpoenas, reviewing lineup book notes, reviewing incident logs, and getting his radio.  McCollough estimates that it usually takes him five to six minutes to don his uniform and equipment; on days when he has to change out his shirt and vest covers, donning may take up to ten minutes.  He estimated that it takes him between three and five minutes per day to review the incident log and lineup book.

Post-Shift Claim.  McCollough claims he is owed five minutes per day of overtime compensation.  McCollough estimates that it takes him three to five minutes to doff his uniform and equipment, and attributes all of his post-shift claim to doffing his uniform and associated gear.

Other Uncompensated Overtime Claim.  McCollough does not seek compensation for any other uncompensated overtime.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

16

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    McCollough was paid overtime for all overtime request forms he submitted; none of his

2    requests were denied.  He has not made a formal or informal complaint regarding overtime

3    compensation practices to his supervisor nor any senior member of the SDPD.

4    _Summary of Offsets and Adjustments._  When adjustments and offsets are applied to

5    McCollough's claims, McCollough must prove in excess of 1197.3 hours of uncompensated

6    overtime in order to be eligible for any damages if a three-year statute of limitations applies.

7    This calculation does not include further adjustments as may be appropriate to remove donning

8    and doffing activities or other adjustments that may be necessary to claimed time for non-

9    compensable activities.  Based on the claims in McCollough's declaration, and assuming that all

10    of the time he claims is accurate, reasonable, and compensable, application of the offsets and

11    adjustments renders McCollough's remaining potential claims as zero for either limitations

12    period.

13                              **g.    Kerry A. Mensior**

14    Plaintiff Kerry A. Mensior holds the rank of Police Officer II, which he attained on May

15    12, 2000.  He has been with the SDPD since 1991.

16    Mensior is presently assigned to the Traffic Division as a member of the Traffic

17    Operations Unit.  From September 1, 2002 through April 1, 2005, Mensior was assigned to the

18    Traffic Division's Drag Net Team.  In each of these assignments, Mensior has worked on a 4/10

19    schedule, which includes a paid lunch.  Mensior has submitted in excess of 221 overtime slips in

20    these assignments, and he has received more than $114,596 in overtime pay.  During the period

21    August 2002 through July 2008, Mensior's regular hourly rate of pay ranged from approximately

22    $30.40 to $40.50.

23    _Pre-Shift Claim._  Mensior claims he is owed sixty minutes per day of overtime

24    compensation for the following pre-shift activities:  donning his uniform and associated gear,

25    checking email, reviewing the lineup book or incident log, briefing with the prior shift, and

26    preparing field equipment/inspecting and loading a patrol car.  Mensior testified in his deposition

27    that he normally would arrive for work about thirty minutes prior to his appointed shift time,

28    although he occasionally arrived at the appointed time.  Mensior estimates that he spent at least

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

17

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

twenty minutes per day donning his uniform and associated gear on the days he was required to wear a uniform.  He estimates that he spent another five minutes each day prior to his shift polishing his boots.  Mensior estimated that it takes him between five and ten minutes per day to load his patrol vehicle and to log into the laptop computer carried in the vehicle.

Post-Shift Claim.  Mensior claims he is owed forty-five minutes per day of overtime compensation for the following post-shift activities:  doffing his uniform and associated gear, checking email, preparing for court, unloading the patrol vehicle, writing, processing, or reviewing reports, and exchanging information with detectives or the oncoming shift.  Mensior estimates that he typically spent twenty minutes per day doffing his uniform and associated gear. Mensior did not provide a reasonable estimate of the average daily amount of time it takes to perform the remaining activities.

Other Uncompensated Overtime Claim.  Mensior also claims he is owed 300 hours of overtime per year for other activities for which he alleges he was not paid overtime.  The activities for which Mensior seeks compensation as part of this claim are the following: preparation for court, developing training for lineup briefings or for academy or outside agencies, and taking his uniforms to the cleaners.

Mensior was paid overtime for all overtime request forms he submitted; none of his requests were denied.  He has not made a formal or informal complaint regarding overtime compensation practices to his supervisor nor any senior member of the SDPD.

Summary of Offsets and Adjustments.  When adjustments and offsets are applied to Mensior's claims, Mensior must prove in excess of 1299.1 hours of uncompensated overtime in order to be eligible for any damages if a three-year statute of limitations applies.  This calculation does not include further adjustments as may be appropriate to remove donning and doffing activities or other adjustments that may be necessary to claimed time for non-compensable activities.

### h.    Christopher M. Sarot

Plaintiff Christopher M. Sarot holds the rank of Sergeant, which he attained on October 8, 2005.  He has been with the SDPD since 1990.  From April 1995 through May 2003, Sarot

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

18

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

had a specialty as a field training officer, for which he received an additional 5% in his hourly pay rate.  From June 1999 until October 2005, Sarot had a specialty as a sniper, which entitled him to an additional 3.5% increase in his hourly pay rate.  At present, Sarot has a specialty in SWAT, for which he receives an additional 3.5% in his hourly pay rate.

Sarot is presently assigned to Western Division as a patrol sergeant.  He has held this assignment at all times relevant to this lawsuit, except from August 21, 2004 through December 15, 2004, when he was assigned to light duty and on industrial leave.  Sarot has worked on a 4/10 schedule, which includes a paid lunch.  Sarot has submitted in excess of forty overtime slips in these assignments, and he has received more than $33,122 in overtime pay.  During the period August 2002 through July 2008, Sarot's regular hourly rate of pay ranged from approximately $32.10 to $48.95.

Pre-Shift Claim.  Sarot claims he is owed thirty minutes per day of overtime compensation for the following pre-shift activities:  donning his uniform and associated gear, checking email, reviewing the electronic redbook and preparing the daily work schedule (since his promotion to Sergeant), and logging into the laptop computer/inspecting and loading a patrol car.  Sarot estimates that it takes him approximately fifteen minutes each day to don his uniform and associated gear.

Post-Shift Claim.  Sarot claims he is owed fifteen minutes per day of overtime compensation for the following post-shift activities:  doffing his uniform and associated gear, checking email, unloading the patrol vehicle, writing, processing, or reviewing reports, and exchanging information with the oncoming shift.  Sarot estimated that it takes him ten minutes to doff his uniform and associated gear, and that it takes him an estimated twenty minutes to unload his patrol vehicle.  Some of these activities can be completed on a daily basis prior to the end of the shift.

Other Uncompensated Overtime Claim.  Sarot also claims he is owed 248.51 hours of overtime for the period from 2001 through 2006 for other activities for which he alleges he was not paid overtime.  The activities for which Sarot seeks compensation as part of this claim are the following:  preparation for court, travel time to and from court, travel time to and from sniper

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

19

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    training, cleaning sniper weapons and equipment, exercise and physical fitness activities off-

2    duty, and other SWAT or sniper related training activities.  He also seeks overtime compensation

3    for time spent traveling to and from supervisors' meetings and time spent completing evaluations

4    at home, although Sarot did not provide a reasonable estimate of the amount of time he spent in

5    these activities.

6         Sarot recalls two occasions early in his career when a supervisor refused to sign an

7    overtime request for less than an hour of time.  The supervisors were Sergeants Dwight Reece

8    and Corey Chesbrough. Sarot acknowledged that there were other supervisors who would

9    approve overtime requests for less than an hour of time.   He has not made a formal or informal

10   complaint regarding overtime compensation practices to his supervisor nor any senior member of

11   the SDPD.

12        <u>Summary of Offsets and Adjustments</u>.  When adjustments and offsets are applied to

13   Sarot's claims, Sarot must prove in excess of 1183.2 hours of uncompensated overtime in order

14   to be eligible for any damages if a three-year statute of limitations applies.  This calculation does

15   not include further adjustments as may be appropriate to remove donning and doffing activities

16   or other adjustments that may be necessary to claimed time for non-compensable activities.

17                    **i.     Michael S. Shiraishi**

18        Plaintiff Michael S. Shiraishi holds the rank of Sergeant, which he attained on August 23,

19   2008.  He has been with the SDPD since 1994.  Shiraishi has a specialty as a field training

20   officer, for which he receives an additional 5% in his hourly pay rate.

21        Shiraishi is presently assigned to the Western Division as a patrol sergeant.  From March

22   1, 2003 through August 22, 2008, Shiraishi was assigned to the Northeastern Division as a patrol

23   officer.  Prior to March 1, 2003, Shiraishi was assigned to the Operational Support Division as a

24   member of the Neighborhood Policing Resource Team.  In each of these assignments, Shiraishi

25   has worked on a 4/10 schedule, which includes a paid lunch.  Shiraishi has submitted in excess

26   of 150 overtime slips in these assignments since late 2004, and he has received more than

27   $63,224 in overtime pay.  During the period August 2002 through July 2008, Shiraishi's regular

28   hourly rate of pay ranged from approximately $29.70 to $40.85.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

20

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    <u>Pre-Shift Claim.</u>  Shiraishi claims he is owed thirty minutes per day of overtime

2  compensation for the following pre-shift activities:  donning his uniform and associated gear,

3  checking weapons, checking email, and preparing field equipment/inspecting and loading a

4  patrol car.  Shiraishi did not provide a reasonable estimate of the average daily amount of time it

5  takes to perform these activities.

6    <u>Post-Shift Claim.</u>  Shiraishi claims he is owed fifteen minutes per day of overtime

7  compensation for the following post-shift activities:  doffing his uniform and associated gear,

8  checking email, preparing for court, unloading the patrol vehicle, writing or reviewing reports,

9  and exchanging information with detectives or the oncoming shift.  Shiraishi did not provide a

10  reasonable estimate of the average daily amount of time it takes to perform these activities.  He

11  admits that when he has had to stay late to complete patrol-related duties, such as to complete an

12  arrest and the associated reports, he submits and has been paid for this overtime.

13    <u>Other Uncompensated Overtime Claim.</u>  Shiraishi also claims he is owed 272 hours of

14  overtime per year for a year and a half during the period of his assignment to Operational

15  Support Division.  The activities for which Shiraishi claims he is owed overtime compensation

16  are associated with preparing, coordinating, and arranging site visits by foreign dignitaries and

17  other officials.  The only portion of this claim that could potentially fall within the statute of

18  limitations, if Plaintiffs prove that a three-year limitations period applies, is the period from

19  August 2002 through the end of February 2003.  The total of his other uncompensated overtime

20  claim for this period is 158.67 hours.

21    Shiraishi was paid overtime for all overtime request forms he submitted; throughout the

22  relevant periods none of his requests were denied.  He has not made a formal or informal

23  complaint regarding overtime compensation practices to his supervisor nor any senior member of

24  the SDPD.

25    <u>Summary of Offsets and Adjustments.</u>  When adjustments and offsets are applied to

26  Shiraishi's claims, Shiraishi must prove in excess of 1248.8 hours of uncompensated overtime in

27  order to be eligible for any damages if a three-year statute of limitations applies.  This

28  calculation does not include further adjustments as may be appropriate to remove donning and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

21

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   doffing activities or other adjustments that may be necessary to claimed time for non-

2   compensable activities.  Based on the claims in Shiraishi's declaration, and assuming that all of

3   the time he claims is accurate, reasonable, and compensable, application of the offsets and

4   adjustments renders Shiraishi's remaining potential claims as zero for either limitations period.

5                           **j.      Angela Zdunich**

6         The City has not yet been provided an opportunity to take the deposition of Plaintiff

7   Angela Zdunich.  By email correspondence dated December 29, 2008, Plaintiffs withdrew

8   Zdunich as a trial Plaintiff.  Should Plaintiffs attempt to replace Zdunich with another Plaintiff,

9   the City will object on the grounds that it would unduly prejudice the City to add another trial

10  Plaintiff at this late date.

11  **II.     SIGNIFICANT ISSUES OF LAW**

12        Many significant legal issues remain disputed by the parties.  The parties' disputes

13  regarding these issues, which are addressed below, are reflected in the parties' respective

14  proposed jury instructions.  The City maintains that Plaintiffs have misstated the law applicable

15  to their FLSA claims.  The City also contends that Plaintiffs now advance claims and legal

16  theories regarding issues that (1) were not alleged in their complaint, (2) already have been

17  adjudicated, or (3) cannot support a claim for relief as a matter of law.

18        **A.     Required Elements of Plaintiffs' First Claim for Relief for Violation of the
                   Fair Labor Standards Act, 29 U.S.C. § 207**
19

20        Plaintiffs allege that the City violated the Fair Labor Standards Act, 29 U.S.C. § 207, by

21  not paying overtime compensation for hours they allegedly worked.  Specifically, Plaintiffs

22  allege that they were not paid for various pre- and post- shift activities, for missed meal periods,

23  and for other types of activities they contend they performed while off-duty.  Plaintiffs contend

24  that they are entitled to compensation for these activities at their overtime or premium rate --

25  time-and-a-half.

26        Plaintiffs do not allege that they ever reported this time to the City.  Plaintiffs also do not

27  allege that they submitted overtime request forms seeking payment for this time, nor that any

28  such request was ever denied or rejected.  Instead, Plaintiffs allege that they did not request

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

22

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1  payment for these hours they allegedly worked because the City had a pervasive "pattern or

2  practice" of encouraging the underreporting of overtime hours and that the City had "actual or

3  constructive knowledge" that Plaintiffs were working overtime.

4         The parties dispute the elements of Plaintiffs' claim.  The City contends that, in order to

5  prevail on this claim, each Plaintiff must demonstrate:  (1) that the City was the Plaintiff's

6  employer; (2) that the Plaintiff actually worked compensable overtime without compensation;

7  and (3) the amount and extent of overtime worked.  Fifth Circuit Model Jury Instruction 11.1

8  (Fair Labor Standards Act); Eleventh Circuit Model Jury Instruction 1.7.1 (Fair Labor Standards

9  Act); *see also* 29 U.S.C. §§ 203(g), 207(a)(1), 216; *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 109

10  (4th Cir. 1988).  The parties also dispute the legal standards applicable to each of these elements;

11  the City's contentions regarding the controlling legal standards are discussed below.

12         **1.     Each Plaintiff Must Prove that the City Is His "Employer"**

13         Each Plaintiff must prove that the City was his or her "employer," as that term is defined

14  in the FLSA.  The FLSA defines "employer" as "any person acting directly or indirectly in the

15  interest of an employer in relation to an employee and includes a public agency."  29 U.S.C.

16  § 203(d).  The City does not contest that it acted as each Plaintiff's "employer," in a general

17  sense, during the times relevant to this lawsuit.

18         **2.     Each Plaintiff Must Prove that He Worked Uncompensated Overtime**

19         Each Plaintiff must also prove that he or she actually engaged in the activity or activities

20  for which compensation is claimed.  This includes the requirement that each Plaintiff prove that

21  he or she was not actually paid for the activities in question.  Consistent with this requirement, to

22  the extent that Plaintiffs seek overtime compensation under the FLSA for any allegedly missed

23  meal periods, Plaintiffs first must prove that they were not paid *at all* for their meal periods.  *See*

24  *Nelson v. Waste Mgmt. of Alameda County, Inc.*, 33 Fed. Appx. 273, 274 (9th Cir. 2002)

25  (memorandum disposition) (where it is undisputed that employer "did pay the employees for the

26  meal period (whether duty-free or not)" "the FLSA does not require the employer to compensate

27  employees for an additional half hour for times that the employees did not receive a duty-free

28  meal period. . . .  Even if the collective bargaining agreement [] requires that the employees

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

23

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   receive a duty-free paid half-hour lunch break, the FLSA does not."); *see also* 29 C.F.R.

2   § 778.320 ("In some cases an agreement provides for compensation for hours spent in certain

3   types of activities which would not be regarded as working time under the Act if no

4   compensation were provided. . . . [T]ime spent in eating meals between working hours fall[s] in

5   this category.").  Plaintiffs seemingly contend that the FLSA requires the City to provide a meal

6   break, even when the meal periods are paid, but Plaintiffs have identified no authority to support

7   this contention.

8          Each Plaintiff must then meet three additional burdens.  First, the Plaintiff must

9   demonstrate that the City "employ[ed]" him or her, *i.e.*, that the City "suffered or permitted" the

10  Plaintiff to engage in "work."  Second, the Plaintiff must demonstrate that the activity is not

11  excluded as "preliminary" or "postliminary" under the Portal-to-Portal Act.  Third, the Plaintiff

12  must demonstrate that time spent engaged in the activity was not *de minimis*.  If all of these

13  burdens are met, only then might the Plaintiff be entitled to compensation for the particular

14  activity, unless an affirmative defense applies.

15              **a.      Each Plaintiff Must Prove that the City "Employ[ed]" Him**

16         Under the FLSA, the City must compensate each Plaintiff for any activity for which it

17  "employ[ed]" him or her.  To "employ" is defined as "to suffer or permit to work."  29 U.S.C.

18  § 203(g).  Thus, in order to merit compensation, each Plaintiff must demonstrate that each and

19  every activity for which he or she is claiming compensation was (1) "work" (2) that the City

20  "suffer[ed] or permit[ed]."

21                          **(1)      "Work"**

22         Though "work" is not defined in the FLSA itself, the Supreme Court has defined "work"

23  as any (1) physical or mental exertion (whether burdensome or not), (2) controlled or required by

24  the employer, and (3) pursued necessarily and primarily for the benefit of the employer and its

25  business.  *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944);

26  *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1162 (D.C. Cir. 1975).  Each of these requirements

27  must be satisfied for an activity to qualify as "work."

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

24

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    First, each Plaintiff must demonstrate that each activity for which he or she is claiming

2    compensation under the FLSA involves physical or mental exertion.

3    Second, each Plaintiff must demonstrate that the activity is "controlled or required" by

4    the City.  The activity must be either:  (1) an activity that the City controlled, *i.e.*, was performed

5    at the City's direction; or (2) an activity that the City required the Plaintiff to perform, *i.e.*, was

6    not performed of Plaintiff's own accord.  *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 523

7    (2d Cir. 1998) ("[A]n employee may perform a task that seems reasonable in the context of his

8    work, but which the employer neither required nor controlled, and for which therefore the

9    employee is not entitled to be paid.").

10    Third, each Plaintiff must prove that each activity he or she performed was "necessarily

11    and primarily for the benefit of the employer."  The Ninth Circuit has interpreted this language to

12    exclude from the definition of "work" any activity that is performed as a matter of personal

13    preference or convenience.  *See Lindow v. United States*, 738 F.2d 1057, 1061 (9th Cir. 1984).

14    Moreover, if a principal activity could be completed during scheduled shift hours but instead is

15    performed outside a Plaintiff's scheduled shift hours as a matter of his or her own convenience or

16    preference, rather than primarily for the City's benefit, this time is not "work."  *Id.*; *see also*

17    *Lamon v. City of Shawnee*, 972 F.2d 1145, 1158 (10th Cir. 1992); *Leone v. Mobil Oil Corp.*, 523

18    F.2d 1153, 1162 (D.C. Cir. 1975); *Clarke v. City of New York*, No. 06-civ-11397 (GEL), 2008

19    WL 3398474, *8  (S.D.N.Y. June 16, 2008); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp.

20    2d 693, 713 (E.D. Tex. 2007); *Smith v. Aztec Well Servicing Co.*, 321 F. Supp. 2d 1234, 1237 (D.

21    N.M. 2004), *aff'd* 462 F.3d 1274 (10th Cir. 2006).

22    The test is not -- as Plaintiffs erroneously contend -- whether the activities in question

23    have *some* benefit to the employer; rather, the legal standards require examination of whether the

24    activities are performed outside of scheduled shift hours (as opposed to during shift hours)

25    *primarily* for the benefit of the employer or *primarily* for the benefit of the employee.  Consistent

26    with this standard, to the extent that a Plaintiff chose to engage in certain activities outside of

27    shift hours (e.g., checking email, reviewing reports, writing reports, washing vehicles, arriving

28    early to select vehicles, etc.) not because the job required him or her to do so, but rather because

1   he or she preferred to do so or believed it to be convenient to perform these activities outside of

2   shift hours, these activities are not "work" and are not compensable.

3        A Plaintiff's mere presence at the workplace does not render the time spent there "work,"

4   unless the Plaintiff's presence is required by the employer.  *See* 29 C.F.R. § 790.7(h) ("[W]hen

5   the employee voluntarily arrives at his place of employment earlier than he is either required or

6   expected to arrive," this time is not compensable.).  Thus, if a Plaintiff arrives early to the

7   workplace or leaves late from the workplace because he or she enjoys spending time and/or

8   socializing at the station, or for any other reason other than to engage in the performance of a

9   principal activity, the time is not "work" and is not compensable under the FLSA.  *See Lindow*,

10  738 F.2d at 1061.

11                **(2)**       **"Suffer or Permit"**

12       If each Plaintiff is able to establish that a certain activity is "work," each Plaintiff must

13  then prove that the City "suffered or permitted" the Plaintiff to engage in the work.  Plaintiffs'

14  proposed jury instructions and memoranda of contentions of fact and law confuse this issue by

15  conflating these two concepts of "work" and whether it is "suffered and permitted."  Although an

16  employer may be aware an activity is being performed, an employer cannot be said to have

17  "suffered or permitted" work unless the activity is in fact "work."  Mere knowledge by the

18  employer than an activity has been performed does not require the employer to compensate its

19  employees for performance of the activity if it is not "work."

20                **(a)**     **An Employer Does Not "Suffer or Permit" Work**

21                         **of Which It Merely Could Have Known**

22       An employer suffers or permits an employee  to engage in work when the employer has

23  actual or constructive knowledge that the employee is performing the work.  *See Lindow*, 738

24  F.2d at 1060; *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).  That

25  is, liability may be imposed only if the employer knew or should have known that the employee

26  engaged in work.  Contrary to Plaintiffs' contention, that the City *could* have known that

27  Plaintiffs engaged in work activities -- whether by investigation or otherwise -- is insufficient to

28  establish FLSA liability.  *See, e.g., Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

26

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   1995) ("[P]erhaps [the chief of police] could have known that [the plaintiff] was working

2   overtime hours, but the question here is whether he should have known."); *Forrester v. Roth's*

3   *I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("[A]n employer who knows or should

4   have known that an employee is or was working overtime must comply with the provisions of

5   § 207."); *see also* 29 C.F.R. § 785.12 (employer must "know or have reason to believe" work

6   was performed for it to be compensable); 29 C.F.R. § 785.11 (time is "working time" if

7   employer "knows or has reason to believe" employee is continuing to work).  As the *Newton*

8   court recognized, to hold that the City has constructive knowledge because it "had the ability to

9   investigate whether or not [an employee] was truthfully filling out the City's payroll forms,"

10  (i.e., that the City *could have known*) "would essentially be stating that the City did not have the

11  right to require an employee to adhere to its procedures for claiming overtime."  *Newton*, 47 F.3d

12  at 749; *see also Lindow*, 738 F.2d at 1061 n.3 (employer cannot be said to "suffer" or "permit"

13  work that employees perform voluntarily in spite of employer's instruction not to perform work

14  outside of normal shift); *Holzapfel v. Town of Newburgh (Holzapfel II)*, 950 F. Supp. 1267, 1277

15  (S.D.N.Y. 1997) (rejecting the notion that an employer has a duty to inquire -- the mere ability to

16  inquire is not constructive knowledge).[2]  Accordingly, Plaintiffs' assertion that the City suffered

17  or permitted overtime work because it theoretically could have reviewed MCT data to determine

18  whether an officer was or was not working is erroneous.[3]

19                    **(b)      No "Pattern or Practice" Standard Exists**

20          An employer's actual or constructive knowledge of overtime work is not judged by

21  reference to a "pattern or practice" standard, as Plaintiffs contend.  Plaintiffs have cited only one

22  case -- *Pforr v. Food Lion*, 851 F.2d 106 (4th Cir. 1988) -- that discusses the issue of "pattern or

23  practice" at all.  In discussing "pattern or practice," *Pforr* references *Anderson v. Mt. Clemens*

24  *Pottery Co.*  But that case makes no mention whatsoever of the FLSA's "suffer or permit"

25  _____

26  [2]      Although on appeal the Second Circuit determined that, unlike here or *Newton*, the
   employer had actual knowledge that overtime work was being performed without compensation,
27  it recognized that the proper standard is "knows or should have known," or -- stated differently --
   "knows or has reason to believe."  *Holzapfel*, 145 F.3d at 525.

28  [3]      This argument also assumes that the MCT records actually reflect whether a specific
   officer was working at any particular time, which is also flawed as a factual matter.

1  standard regarding employer knowledge.  *See generally Anderson v. Mt. Clemens Pottery Co.*,

2  328 U.S. 680 (1946).  *Mt. Clemens* does not analyze employer knowledge for the purpose of

3  establishing whether the employer "suffered or permitted" work, but rather *Mt. Clemens*

4  concerns an employee's ability to establish the number of hours worked by "just and reasonable

5  inference" where inadequate records exist.  A review of *Mt. Clemens* reveals whether an

6  employer suffers or permits (*i.e.*, has knowledge of) uncompensated off-the-clock work is a

7  distinct question from the employee's burden to prove the precise number of hours, or in the

8  absence of accurate records, to prove the hours them by "just or reasonable" inference.

9      There is thus no support for Plaintiffs' assertion that "pattern or practice" is the standard

10  by which to judge an employer's actual or constructive knowledge of overtime work.[4]  Plaintiffs

11  are free to argue the facts in such a way that may satisfy the relevant legal standards regarding

12  whether the City "suffered or permitted" uncompensated overtime work, but Plaintiffs'

13  misstatement of the applicable legal standard should be rejected.

14              **(c)   Actual or Constructive Knowledge of Overtime
                       Work By Low-level Supervisors Does Not
15                     Establish the Employer's Knowledge**

16      Plaintiffs may prove that the City suffered or permitted their alleged overtime work only

17  by proving that the City's upper management, *i.e.*, City officials or SDPD personnel of the rank

18  of Lieutenant or above, possessed the requisite actual or constructive knowledge.  Thus,

19  Plaintiffs' assertion that the knowledge of low-level supervisors, such as Sergeants, is sufficient

20  to prove that the City "suffered or permitted" overtime work is incorrect.  *See*, *e.g.*, *Bull v.*

21  _____

22  [4]    *In re Food Lion Effective Scheduling Litigation*, 861 F. Supp. 1263, 1272 (E.D.N.C.
    1994), which is not cited by Plaintiffs, seems to be the only case applying a "pattern or practice"
23  test to the knowledge inquiry.  However, that case similarly blurs the distinction between
    whether an employer suffers or permits uncompensated off-the-clock work and the employee's
    burden to prove the number of hours worked, or in the absence of accurate records, to prove the
24  hours by "just or reasonable" inference.  In reaching its decision, the *Food Lion* court principally
    relied on *Donavan v. Bel-Loc Dinner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985).  Yet *Donavan* --
25  the apparent origin of the "pattern or practice" language -- cites *Mt. Clemens* as giving rise to the
    "pattern or practice" inquiry and explains that a Plaintiff "need only produce sufficient evidence
26  to show the amount and extent of work improperly compensated for 'as a matter of just and
    reasonable inference.'"  It is clear from *Donavan*'s analysis -- like that of *Mt. Clemens* -- that the
27  "improper[]" failure to compensate (and thus necessarily the employer's actual or constructive
    knowledge) had already been established and that only the "amount and extent" inquiry
28  remained.  Again, these are distinct inquiries for which *both* parties have submitted distinct jury
    instructions.

1   *United States*, 68 Fed. Cl. 212, 224 (2005) ("The actual or constructive knowledge must be

2   attributable to someone with authority to bind the [employer]."); *Newton v. City of Henderson*,

3   47 F.3d 746, 749 (5th Cir. 1995) (evaluating constructive knowledge of the Chief of Police and

4   captains); *Maciel v. City of Los Angeles*, 542 F. Supp. 2d 1082, 1089–90 (C.D. Cal. 2008)

5   (concluding that a sergeant's knowledge of alleged uncompensated overtime was insufficient to

6   satisfy the plaintiff officer's burden of proof because police sergeants do not qualify as

7   "management"); *In re Food Lion Effective Scheduling Litig.*, 861 F. Supp. 1263, 1271 (E.D.N.C.

8   1994) (knowledge for purposes of FLSA must be that of company "officials").

9         Indeed, the authorities Plaintiffs have cited to support their theory that the knowledge of

10  low-level supervisors is sufficient to establish an employer's actual or constructive knowledge do

11  not support Plaintiffs' conclusion.  The principal case cited by Plaintiffs on this point, *Reich v.*

12  *Department of Conservation & Natural Resources*, 28 F.3d 1073 (11th Cir. 1994), actually

13  supports the *opposite* proposition from what Plaintiffs are contending.  In that case, the Eleventh

14  Circuit implicitly found that the knowledge of low-level supervisors is *not* enough to establish

15  "actual or constructive knowledge" for purposes of FLSA.  Rather, knowledge was established in

16  two ways:  First, the court found that upper management of the Department had actual

17  knowledge.  Second, the court blamed department *captains* for failing to notice the blatant

18  inaccuracies in the reports of the low-level supervisors and thus attributing constructive

19  knowledge to the captains.  If the knowledge of low-level supervisors were enough, as Plaintiffs

20  contend, the court's analysis of the captains' failure to inspect the reports would be unnecessary.

21        In *Holzapfel v. Town of Newburgh (Holzapfel II)*, 950 F. Supp. 1267 (S.D.N.Y. 1997),

22  the court distinguished the court's decision in *Department of Conservation & Natural Resources*

23  on the ground that in that case there were report inconsistencies sufficient to alert "*mid-level*

24  supervisory personnel that those officers were working overtime." 950 F. Supp. at 1277

25  (emphasis added).  The Second Circuit agreed with the district court's interpretation of

26  *Department of Conservation & Natural Resources*, although it overruled the district court

27  because there was, in fact, evidence that the Chief of Police knew about the overtime.  *Holzapfel*

28  *v. Town of Newburgh*, 145 F.3d 516, 535 (2d Cir. 1998).  Notably, neither the district court nor

1  the Second Circuit adopted Plaintiffs' strained reading of *Department of Conservation & Natural*

2  *Resources*.  Thus, contrary to Plaintiffs' flawed interpretation of the Eleventh Circuit's decision,

3  it is clear that the knowledge of upper-management, not merely low-level supervisors, is the

4  focus of this inquiry.

5       Nor do the other two cases Plaintiffs cite -- *Brennan v. General Motors Acceptance*

6  *Corp.*, 482 F.2d 825 (5th Cir. 1973) and *Cunningham v. Gibson Electric Co.*, 43 F. Supp. 965

7  (N.D. Ill. 1999) -- support the position that mere *knowledge* of low-level supervisors is sufficient

8  to impute knowledge to the employer.  Both cases cited involved affirmative conduct by direct

9  supervisors causing employees to falsify their reports.  The pervasiveness of the conduct,

10  combined with the employer's management's willfulness in engaging in the conduct, were such

11  that the companies in those cases could not deny knowledge.  Moreover, *Cunningham* is

12  especially inapt because there the company's actual knowledge that plaintiff was working

13  uncompensated overtime was known throughout the management strata, including not only by

14  two managers, but by the *president* of the company.  43 F. Supp. 2d at 976.

15       Finally, the meaning of "supervisor" or "manager" will necessarily vary from one

16  employment context to another.  While low-level supervisors might be considered management

17  in the industries involved in *Brennan* and *Cunningham*, they are not in the context of the San

18  Diego Police Department.  In fact, earlier this year in the Central District of California in another

19  FLSA suit brought by law enforcement officers, a court determined that a sergeant's knowledge

20  of alleged uncompensated overtime was insufficient to satisfy the plaintiff–officer's burden of

21  proof because police sergeants are not "management."  *Maciel v. City of Los Angeles*, 542 F.

22  Supp. 2d 1082, 1089–90 (C.D. Cal. 2008).  The court reasoned that management in that police

23  department was defined as "Captains and above," because -- unlike sergeants -- captains were

24  covered by a separate bargaining agreement than patrol officers.  This is the case here.

25  Moreover, as a matter of policy, it would be odd to bind the employer with the knowledge of

26  sergeants, who are *also* plaintiffs in this case.  To allow this would be to allow the perverse result

27  of having sergeants be both employers and employees in the same FLSA trial.  Plaintiffs cite no

28  precedent permitting this anomalous result.

1

**(d)    An Employer Generally Cannot "Suffer or Permit" Work the Employee Fails to Report**

2

3        Plaintiffs also fail to recognize that if the City had no knowledge that a Plaintiff engaged

4    in overtime work, and the Plaintiff failed to notify the City or otherwise deliberately prevented

5    the City from acquiring knowledge of the work, the City's failure to pay the Plaintiff for those

6    hours is not a violation of the FLSA. *Forrester*, 646 F.2d at 414. As the Ninth Circuit has

7    explained:

8            An employer must have an opportunity to comply with the provisions of the
            FLSA. This is not to say that an employer may escape responsibility by
9            negligently maintaining records required by the FLSA, or by deliberately turning
            its back on a situation. However, where the acts of an employee prevent an
10           employer from acquiring knowledge, here of alleged uncompensated overtime
            hours, the employer cannot be said to have suffered or permitted the employee to
11           work in violation of [the FLSA].

12   *Id.* at 414–15.

13       An employer normally does not have the requisite knowledge of overtime worked unless

14   the employee submits time sheets showing such overtime occurred. *Gaylord v. Miami-Dade*

15   *County*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999). In *Newton v. City of Henderson*, 47 F.3d

16   746 (5th Cir. 1995), for example, under circumstances strikingly similar to those at issue in this

17   case, the Fifth Circuit concluded that the plaintiff's unreported overtime was not compensable

18   under the FLSA. In that case, the plaintiff was a city police officer who had been temporarily

19   assigned to work with the federal Drug Enforcement Agency. *Id.* at 747. In connection with this

20   assignment, the plaintiff requested approval for overtime compensation, pursuant to city policy

21   which required officers to obtain pre-approval prior to working overtime. *Id.* Plaintiff's request

22   was denied. *Id.* The plaintiff nevertheless spent additional time engaged in work-related

23   activities, for which he did not submit overtime requests, and subsequently sought to recover

24   overtime compensation for this time. *Id.*

25       The Fifth Circuit concluded that the plaintiff's additional overtime was not compensable

26   under the FLSA, because he had both ignored the city's requirements regarding pre-approval of

27   overtime and because he had not reported the additional time. As the Fifth Circuit explained:

28           [Plaintiff] admits that he was explicitly told . . . that he could not
            work unauthorized overtime hours. The City established specific

SD\663160.2

31

1       procedures to be followed in order to receive payment for
overtime.  An employee was required to submit a request for
2       overtime within 72 hours of the time worked and to use a specified
payroll form.  [Plaintiff] ignored these procedures.  *If we were to*
3       *hold that the City had constructive knowledge that Newton was*
*working overtime because [his supervisor] had the ability to*
4       *investigate whether or not [Plaintiff] was truthfully filling out the*
*City's payroll forms, we would essentially be stating that the City*
5       *did not have the right to require an employee to adhere to its*
*procedures for claiming overtime.*

6

7   *Id.* at 749 (emphasis added).

8         The court rejected the plaintiff officer's contention that notwithstanding the City's

9 requirement that all overtime hours must be pre-approved, his supervisors must have known he

10 was putting in additional overtime hours because they understood the nature of the work and

11 because he had reported his activities to his supervisors on a daily basis.  Because it was

12 reasonable, the court observed, for the officer's supervisors "to assume that [the plaintiff] was

13 taking flex time to compensate for unscheduled hours worked, it was reasonable for [the

14 supervisors] to rely on [the plaintiff's] payroll submissions as a reliable indicator of the number

15 of hours being worked" by him.  *Id.* at 749–50; *see also Davis v. Food Lion*, 792 F.2d 1274,

16 1278 (4th Cir. 1986) (upholding district court's finding that the FLSA did not impose on the

17 employer a burden to "anticipate[] that employees would routinely falsify their time records in

18 violation of established company policy"); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324,

19 1327 (5th Cir. 1972) (employee is estopped from offering an estimate of overtime hours where

20 the inaccuracy in employer's records was caused by the employee's failure to furnish accurate

21 data); *Millington v. Morrow County Bd. of Comm'rs*, No. 2:06-cv-347, 2007 WL 2908817, *10

22 (S.D. Ohio Oct. 4, 2007) (where employee reports some overtime work, but not other overtime

23 work, the employee misleads the employer to believe that he or she is properly claiming all

24 overtime hours worked; thus, to the extent that the employee does not report certain overtime

25 hours, the employer cannot be said to "suffer" or "permit" that time worked) (*citing Lindow v.*

26 *United States*, 738 F.2d 1057 (9th Cir. 1984)); *Harvill v. Westward Commc'ns, LLC*, 311 F.

27 Supp. 2d  573, 583 (E.D. Tex. 2004) (an employer's failure to pay for overtime hours worked is

28 not a violation of the FLSA "where an employer has no knowledge that an employee is engaging

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

32

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   in overtime work and that employee fails to notify the employer . . . of the overtime work");

2   *Maus v. City of Towanda*, 165 F. Supp. 2d 1223, 1230 (D. Kan. 2001) ("It is not the City's

3   responsibility to ensure that its employees properly record their . . . time.  It is enough that the

4   City instructed its employees as to the procedure for receiving such compensation."); *Albee v.*

5   *Village of Bartlett*, 861 F. Supp. 680 (N.D. Ill. 1994) (relying, in part, upon the plaintiff police

6   officers' personal practice not to submit overtime requests for missed meal periods to conclude

7   that the employer city could not be held liable for the unreported time); *Gaylord*, 78 F. Supp. 2d

8   at 1325.

9        The City's proposed jury instructions recognize that if an employee fails to report all of

10   his or her overtime or deliberately prevents the employer from acquiring knowledge of the

11   overtime work, the employer's failure to pay the employee for these overtime hours is not a

12   violation of the FLSA (because the employer has not "suffered or permitted" the overtime work)

13   *unless* the employee can prove that the employer instructed the employee to falsify his or her

14   time records to underreport overtime worked.  City's Proposed Supplemental Jury Instruction

15   308 (citing *Brumbelow v. Quality Mills*, 462 F.2d 1324, 1327 (5th Cir. 1972)).  Under the FLSA,

16   employers may rely on their instruction that employees not work overtime, or at the very least,

17   that employees accurately report all overtime they do work.  "Otherwise, employers would not

18   have any reasonable means of defending against claims for overtime compensation made by

19   employees who voluntarily report early for work, short of locking their doors prior to the start of

20   a shift."  *Lindow*, 738 F.2d at 1061 n.3.  In short, absent compelling evidence that an employer

21   encourages or requires its employees to falsely report their hours, employees may not be

22   compensated for unreported hours.  *See Newton*, 47 F.3d at 750.

23                              **b.     Portal-to-Portal Act**

24        If each Plaintiff establishes that he or she engaged in "work" that the City "suffered or

25   permitted," each Plaintiff must also establish that his or her claimed work activities do not fall

26   within the scope of the FLSA's Portal-to-Portal Act.  Under the Portal-to-Portal Act, the City is

27   not liable to any Plaintiff for either:  "(1) walking, riding, or traveling to and from the actual

28   place of performance of the principal activity or activities which such employee is employed to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

33

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   perform, [or] (2) activities which are preliminary to or postliminary to said principal activity or

2   activities." 29 U.S.C. § 254(a).

3        The "preliminary" and "postliminary" rules enunciated by the Portal-to-Portal Act were

4   meant to protect employers, not to extend liability.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th

5   Cir. 2003) (quoting 29 U.S.C. § 254(b)) ("The Portal-to-Portal Act of 1947 relieves an employer

6   of responsibly for compensation employees for 'activities [that] are preliminary or postliminary

7   to [the] principal activity or activities' of a given job.").  By default, activities performed before

8   or after an employee's shift are not compensable; it is only when such activities are "integral and

9   indispensable" to a principal activity, and are performed prior to or following the shift primarily

10  for the benefit of the employer, that such activities are rendered compensable.  *Dunlop v. City

11  Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976).  "[T]he fact that certain preshift activities are

12  necessary for employees to engage in their principal activities does not mean that those preshift

13  activities are 'integral and indispensable' to a 'principal activity' under *Steiner*."  *IBP, Inc. v.

14  Alvarez*, 546 U.S. 21, 40–41 (2005).

15       The Portal-to Portal Act renders non-compensable certain activities for which Plaintiffs

16  are claiming compensation.

17                    **(1)    Home to Work Travel**

18       Plaintiffs contend that they are entitled to compensation for time spent traveling from

19  home to court appearances or to range practice on their off-duty days.[5]  The City contends that

20  this time spent traveling from home to the location of the Plaintiff's principal activity that he or

21  she is required to perform is not compensable as a matter of law.  Time spent "walking, riding, or

22  traveling to and from the actual place of performance of the principal activity or activities which

23  such employee is employed to perform" is not compensable.  29 U.S.C. § 254(a).  Time spent

24  commuting is therefore non-compensable under the FLSA.  Moreover, "otherwise non-

25  compensable commuting to work is not compensable merely because the employee uses his

26

27  [5]    Plaintiffs also have identified travel to special events as potentially compensable time in
    their statement of issues of fact that remain to be litigated in the proposed pre-trial order.  None
28  of the ten trial Plaintiffs has claimed compensation for such time; in any case, the same legal
    analysis would apply to this travel time.

1   employer's vehicle."  *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109,

2   1117 (10th Cir. 1999) (interpreting the Employee Commuting Flexibility Act of 1996); *Adams v.*

3   *United States*, 65 Fed. Cl. 217, 225 (2005) (federal law enforcement officers not entitled to

4   compensation for commuting time in agency vehicles, even when required to monitor radios

5   while commuting).

6         There are only two narrow exceptions, neither of which applies here:  (1) when, for

7   example, an employee is "subsequently called out at night to travel a substantial distance to

8   perform an emergency job"; and (2) "when an employee who regularly works at a fixed location

9   in one city is given a special 1-day work assignment in another city."  *See* 29 C.F.R. § 785.36; 29

10  C.F.R. § 785.37.  Generally, courts have been unreceptive to any cases involving home-to-work

11  travel, even when the travel is to another city and when the travel is quite lengthy.  *See Imada v.*

12  *City of Hercules*, 138 F.3d 1294 (9th Cir. 1999) (police officers' travel time to mandatory

13  training which involved hour-long commute not compensable because not "special" or

14  "unusual," but rather contemplated and mandated by the collective bargaining agreement); *see*

15  *also Kavanaugh v. Grand Union Co., Inc.*, 192 F.3d 269 (2d Cir. 1999) (mechanic not entitled to

16  compensation for time spent traveling to and from various stores where he performed services);

17  *United Transp. Union Local 1745*, 178 F.3d at 1109 (bus drivers not entitled to compensation for

18  travel from last location route even though it may be at a relief point where own vehicles were

19  unavailable); *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994) (farm workers' travel time on bus not

20  compensable even when up to two hours long).

21        In keeping with this legal framework, any time any Plaintiff spent traveling from home to

22  the location of his or her first required principal work activity is not compensable.  If, as

23  Plaintiffs seemingly now contend, any Plaintiff is claiming he or she is owed compensation for

24  time sent traveling from the location where he or she must pick up evidence necessary for a

25  specific court appearance to that court appearance, this time is compensated through the agreed-

26  upon four hour minimum court pay provisions of the MOU, *see infra* at 44.

27

28

LATHAM&WATKINS∟∟ᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

35

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

<div align="center">

**(2)**       **Preliminary and Postliminary Activities**

</div>

To avoid the Portal-to-Portal Act with respect to other types of activities, each Plaintiff must prove that his claimed "pre-shift" and "post-shift" overtime does not include non-compensable preliminary or postliminary activities. "The words 'preliminary activity' mean an activity engaged in by an employee before the commencement of his 'principal' activity or activities, and the words 'postliminary activity' mean an activity engaged in by an employee after the completion of his 'principal' activity or activities." 29 C.F.R. § 790.7(b). An activity that is deemed to be either "preliminary" or "postliminary" to a principal activity is simply not compensable. Any activity that is necessarily performed before or after a principal activity and that is "integral and indispensable" to the principal activity is considered a compensable principal activity. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 40 n.8 (2005). Accordingly, in order to establish FLSA liability for these pre- and post- shift activities, each Plaintiff must prove that the activities are so integral and indispensable to his principal activity (or activities) that the activity is itself a principal activity which necessitates compensation. If not, these activities are merely preliminary or postliminary and are not compensable under the FLSA.

While there is no definitive standard for defining what is "integral and indispensable," it is clear that "[t]he more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable." *Hellmers v. Town of Vestal*, 969 F. Supp. 837, 843 (N.D.N.Y. 1997) (citing *Reich v. New York City Transit Auth.*, 45 F.3d 646, 650 (2d Cir. 1995)). In *Dunlop v. City Electric, Inc.*, the court held that the important inquiry is whether the activity is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business. 527 F. 2d 394, 401 (5th Cir. 1976); *see also Blum v. Great Lakes Carbon Corp.,* 418 F.2d 283 (5th Cir. 1969); *Jackson v. Air Reduction Co.*, 402 F.2d 521 (6th Cir. 1968). Accordingly, when pre- and post- shift activities of the employees are not requested by the employers and result in little, if any, benefit to the employer, the activities are non-compensable preliminary or postliminary activities. *Cherup v. Pittsburgh Plate Glass Co.*,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

36

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   350 F. Supp. 386 (W.D. Va. 1972).  Plaintiffs ignore this legal standard and instead assume that

2   an activity that results in *any* benefit to the employer must be compensable, and cannot be treated

3   as a non-compensable preliminary or postliminary activity.  This is not the law.  The proper test

4   is whether the employer derives "significant benefit," not whether the employer is the "sole"

5   beneficiary.  *Treece v. City of Little Rock*, 923 F. Supp. 1122, 1125–27 (E.D. Ark. 1996); *see*

6   *also Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976).

7                          **(3)    Continuous Workday Rule**

8           In its December 23, 2008 order, this Court "granted without prejudice" the City's motion

9   *in limine* regarding donning and doffing of Plaintiffs' uniforms and equipment.  Dec. 23, 2008

10  Order Re: Defendant's Motions *in Limine* (Dkt # 658).  The Court agreed that this issue was

11  fully adjudicated in its November 7, 2007 order.  *Id.*  In so agreeing, the Court explicitly rejected

12  Plaintiffs' argument that despite the Court's ruling, donning and doffing nevertheless may be

13  compensable if it amounts to activity falling within the "continuous workday."  *Id.*  Because the

14  Court granted the City's motion "without prejudice," the City seeks to reiterate its main position

15  regarding the "continuous workday" rule, should this issue resurface at trial.

16          First, and most importantly, this Court's November 9, 2007 Order directly forecloses

17  Plaintiffs' theory.  In that Order, this Court explained that "[t]he Department of Labor

18  consistently has maintained that time spent donning and doffing a uniform or safety gear at home

19  is not compensable under the FLSA because *such activity is not part of the continuous workday*

20  and is not integral and indispensable to the principal activities of the employee."  Nov. 7, 2007

21  Order (Dkt # 265) at 7:15-18 (emphasis added).  Indeed, the Department of Labor has explained

22  that "donning and doffing of required gear is within the continuous workday *only when the*

23  *employer or the nature of the job mandates that it take place on the employer's premises*."  *Id.* at

24  7:11-12 (emphasis partially omitted) (quoting Wage & Hour Adv. Mem. No. 2006-2 (May 31,

25  2006)).  Because this Court specifically found that there was no genuine dispute of fact that the

26  nature of Plaintiffs' work does *not* require donning and doffing of their uniforms or gear on the

27  employer's premises, *Id.* at 8:24-11:11, the Court's ruling, combined with the Department of

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

37                CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
                  DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1  Labor's explicit exclusion of donning and doffing from the "continuous workday" under such

2  circumstances, directly precludes Plaintiffs' newly crafted "continuous workday" argument.

3        Second, Plaintiffs should not be permitted to offer this eleventh-hour theory of liability as

4  an end run around this Court's clear rulings on summary judgment.  Even assuming that the

5  "continuous workday" theory were viable here, Plaintiffs' complaint does not allege the facts

6  necessary to support this theory.  Moreover, when the issue of donning and doffing was before

7  this Court on summary judgment, Plaintiffs failed to advance this alternative theory at all.

8  Plaintiffs simply cannot remain silent on a legal theory of liability with respect to a particular

9  issue, stand back while the Court enters an order denying liability as to that precise issue, and

10  then later be permitted to present an alternative theory at trial in order to salvage that issue,

11  particularly where the City has not had an opportunity to conduct any discovery with respect to

12  this theory.  Contrary to Plaintiffs' suggestion at the December 19, 2008 hearing regarding

13  motions *in limine*, no newly discovered facts justify this change in theory.  Quite simply,

14  Plaintiffs should not be permitted a second chance to revive their extinct donning and doffing

15  claims, especially this late in the game.

16        Third, the "continuous workday" rule simply does not operate as Plaintiffs wish.  Indeed,

17  Plaintiffs have pointed to no authority in support of their novel and untested theory of donning

18  and doffing liability.  It is true that the continuous workday rule requires that an employee be

19  paid for all time between the first and last principal activities in a single workday, except for time

20  that is otherwise specifically excepted, such as an unpaid meal period.  *See* 29 C.F.R. § 790.6(b)

21  ("'Workday' as used in the Portal Act means, in general, the period between the commencement

22  and completion on the same workday of an employee's principal activity or activities. It includes

23  all time within that period whether or not the employee engages in work throughout all of that

24  period."); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 36–37 (2005); *Alexander v. Wackenhut Corp.*, No.

25  07-262, 2008 WL 2697163 *4 (E.D. La. Jul. 1, 2008) (unpublished order).  However, the idea

26  behind the continuous workday rule is simply that the employer cannot start and stop the clock

27  throughout the day to avoid payment for waiting time and other minor activities that occur

28  throughout an employee's work shift.  As the case law bears out, issues concerning the proper

LATHAM&WATKINS┉┉
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

38

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    application of the continuous workday rule arise virtually exclusively with regard to only two

2    types of activities:  (1) transit time (whether walking or other travel time) during the workday;

3    and (2) waiting time.  *E.g.*, *Alvarez*, 546 U.S. 21 (discussing continuous workday in the context

4    of "walking" and "waiting" time).

5         The essential element present in the continuous workday cases, but missing from

6    Plaintiffs' legal analysis, is the requirement of chronological necessity.  If Plaintiffs' theory were

7    taken at face value, an employee would be free to reorder and extend the workday at his or her

8    whim.  This is not the law.  In *Alvarez* -- the seminal case on this issue -- plaintiffs were

9    employees at a meat packing plant who were required to wear a variety of outer garments and

10   protective equipment.  *Alvarez*, 546 U.S. at 30.  The district court held that donning and doffing

11   of the unique protective gear was integral and indispensable to the employees' work; thus,

12   "consistent with the continuous workday rule . . . for those employees required to don and doff

13   unique protective gear, the walking time between the locker room and the product floor was also

14   compensable because it occurs during the workday."  *Id.* at 31.  The continuous workday rule

15   was created to address exactly this type of factual scenario -- where an activity that would

16   normally not be compensable (*i.e.*, walking prior to the start of shift, excluded from

17   compensation by the Portal-to-Portal Act) *necessarily* must be performed *after* an activity that is

18   rendered compensable by virtue of its "integral and indispensable" relationship to the principal

19   activities for which employees are employed.  The Court in *Alvarez* certainly did not

20   contemplate a regime whereby the continuous workday would begin at any time the employee

21   wished, as long as he or she were engaging in some type of compensable activity.  *See id.*

22              **c.    *De Minimis***

23        Plaintiffs also bear the burden of demonstrating that time spent engaging in these

24   activities was not *de minimis*.  *Abbey v. United States*, 82 Fed. Cl. 722, 727 (2008) (citing *Bull v.

25   United States (Bull I),* 68 Fed. Cl. 212, 220–21 (2005)).  In other words, Plaintiffs "must show

26   that the time spent engaged in the activity was not so 'insubstantial and insignificant' as to bar

27   recovery under the 'de minimis doctrine.'"  *Id.* at 728 (quoting *Bull I*, 68 Fed. Cl. at 225); *see

28   also Adams v. United States*, 65 Fed.Cl. 217, 232 (2005) (plaintiffs' burden to prove work was

1    not *de minimis* "comports with plaintiffs' burden under the FLSA to prove that compensable

2    work was performed") (citing *Bobo v. United States*, 136 F.3d 1465 (Fed. Cir. 1998) (Bobo II));

3    *Albanese v. Bergen County*, 991 F. Supp. 410, 421–22 (D.N.J. 1997) ("To recover damages for

4    uncompensated hours, employees must show that the amount of hours they worked was not de

5    minimis."); *Falzo v. County of Essex*, No. Civ. A. 03-1922 (JLL), 2008 WL 2064811 * 5, (D.N.J.

6    May 14, 2008) ("In order to recover damages for uncompensated overtime, Plaintiffs bear the

7    burden of proving that the amount of time worked was not de minimus."); *Genarie v. PRD*

8    *Mgmt.*, No. Civ. A. 04-2082 (JBS), 2006 WL 436733 *12, (D.N.J. Feb. 17, 2006) ("To recover

9    damages for uncompensated hours, an employee must show that the amount of uncompensated

10   hours the employee worked was not de minimis.").

11        In determining whether time spent engaging in certain types of work is *de minimis*, three

12   factors are relevant:  (1) the practical administrative difficulty of recording time; (2) the

13   aggregate amount of compensable time; and (3) the irregularity or unpredictability of the

14   additional work time.  *Lindow*, 738 F.2d at 1063–64; *see also Anderson v. Mt. Clemens Pottery*

15   *Co.*, 328 U.S. 680, 692 (1946); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903–04 (9th Cir. 2003), *aff'd*

16   *on other grounds*, 546 U.S. 21 (2005); *Bobo v. United States (Bobo II)*, 136 F.3d 1465, 1468

17   (Fed. Cir. 1998); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 518–20 (E.D.

18   Tex. 2001); *Adams v. United States*, 65 Fed. Cl. 217, 222 (2005); *Abbe v. City of San Diego*,

19   Nov. 9, 2007 Order (Dkt # 265) at 11; *Bull v. United States (Bull I)*, 68 Fed. Cl. 212, 220-21

20   (2005) (citing *Anderson*, 328 U.S. at 693).

21        Plaintiffs' legal arguments regarding the *de minimis* doctrine erroneously link the

22   practical administrative difficulty prong with the amount of time spent in the activity.  However,

23   these are distinct factors to be considered in assessing whether time spent in a particular activity

24   is *de minimis*.  The practical administrative difficulty inquiry takes into account, among other

25   things:  (1) Whether there is a "wide variance in the amount of time spent" by different

26   employees to accomplish the same task, *Lindow v. United States*, 738 F.2d 1057, 1063-64 (9th

27   Cir. 1984); *accord Bobo v. United States (Bobo I)*, 37 Fed. Cl. 690, 702 (1997) ("[A]mong the

28   plaintiffs who take their dogs on relief breaks, the amount of time that these sessions take is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

40

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   minimal and wide ranging-spanning from five to 15 minutes per occurrence.  Creating a reliable

2   system to chart these relief breaks would pose great administrative difficulties to the INS."), *aff'd*

3   *Bobo II*, 136 F.3d at 1468; and (2) whether "the task of recording the time spent . . . exceed[s]

4   the time expended in performance of the duties," *New York City Transit*, 45 F.3d at 653; *see also*

5   *Bull v. United States*, 68 Fed. Cl. 212, 226 (2005).  Plaintiffs improperly conflate these analyses

6   with the amount of time spent inquiry.

7        Plaintiffs also erroneously contend that the daily time spent on particular activities may

8   be aggregated across the entire pertinent time period to determine if they are *de minimis*.  This

9   does not comport with existing law which analyzes whether activities are *de minimis* only on a

10  daily basis.  *E.g.*, *Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2008 WL 2020323 *11

11  (N.D. Ala. Jan. 22, 2008) (unpublished disposition) (citing and discussing with approval *Lindow*,

12  738 F.2d at 1062) ("Regardless of the number of employees for whom Plaintiff seeks back

13  wages, or the length of time for which such pay is sought, the proper focus is on the aggregate

14  amount of uncompensated time for each employee per day, not the total number of employees

15  over any length of time.  Moreover, any damages will be individual damages and will vary from

16  employee to employee.  Thus, it is not appropriate to aggregate the time spent by multiple

17  employees, and it is equally inappropriate to aggregate that time over a period longer than a

18  single workday."); *Bull v. United States*, 68 Fed. Cl. 212, 226 (2005) ("The aggregate amount of

19  compensable time takes into account, 'the amount of time per occurrence dedicated to the

20  activity in question.'") (quoting *Bobo I*, 37 Fed.Cl. at 701, *aff'd Bobo II*, 136 F.3d at 1468);

21  *Nardone v. Gen. Motors, Inc.*, 207 F. Supp. 336, 340 (D.N.J. 1962) (rejecting argument that

22  claims over a two-year period, in the aggregate, defeated *de minimis* defense as

23  "misconstru[ing]" the *de minimis* doctrine, under which "the basic tasks still are in terms of

24  minutes per day").

25        Applying the correct *de minimis* factors, various activities for which Plaintiffs claim

26  overtime compensation, such as the time some of the Plaintiffs claim they spent taking and

27  responding to phone calls or emails at home, may be *de minimis* in nature.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

41

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1    **3.    Each Plaintiff Must Prove the Amount and Extent of Overtime**
2          **Worked**

3          If any Plaintiff establishes that he or she actually worked compensable overtime, then he

4    or she must next prove the amount and extent of overtime worked.  If the Plaintiff is unable to

5    produce accurate evidence of the overtime hours he or she worked using the employer's records,

6    the Plaintiff may meet this burden of proof by showing that the City failed to keep accurate and

7    complete records of all hours worked.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680,

8    687 (1946).  Only if the Plaintiff makes this showing, may he or she establish the hours worked

9    by "just and reasonable inference."  *Id.*

10         If the inaccuracy or incompleteness of the City's records is caused by the Plaintiff's own

11   failure to provide information to the City regarding the amount of overtime worked, then the

12   Plaintiff is responsible for inaccuracies in the records pertaining to him or her.  *See Newton v.*

13   *City of Henderson*, 47 F.3d 746, 749–50 (5th Cir. 1995) (payroll records are reliable indicators of

14   the number of hours an employee worked absent evidence that the City encouraged or forced the

15   plaintiffs to submit incorrect time sheets); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327

16   (5th Cir. 1972) (no liability where the records failed to correctly reflect the hours actually

17   worked because the employees falsely reported their hours on their own accord and were not

18   encouraged by the employer to do so), relied upon in *Forrester v. Roth's I.G.A. Foodliner, Inc.*,

19   574 F. Supp. 630, 632 (D. Ore. 1979), *aff'd at* 646 F.2d 413 (9th Cir. 1981); *Walling v.*

20   *Woodruff*, 49 F. Supp. 52, 55 (M.D. Ga. 1942) ("An employer does not violate the act or the

21   regulation [requiring proper record-keeping] by relying in good faith upon employees to keep

22   and report their own time and by using the record so made as the record of time required by the

23   regulations, if neither the employer nor his agents do or say anything to cause the employees to

24   keep an incorrect record.").  In this case, the Plaintiff may not claim that the City's records were

25   inaccurate and incomplete, unless the Plaintiff can prove that the City instructed the Plaintiff to

26   falsify his or her time records to underreport overtime worked.  *See Brumbelow*, 462 F.2d at

27   1327.  Simply put, if the City has no records relating to overtime claims because the Plaintiff

28   failed to make claims of overtime, then the Plaintiff -- and not the City -- is responsible for the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

42

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   inaccuracies and must produce competent evidence of overtime hours worked, *i.e.*, the Plaintiff

2   may not rely on the "just and reasonable inference" standard.

3          Plaintiffs proposed jury instructions and legal arguments seem to be based upon the

4   erroneous view that the mere fact that the City does not have records of the additional hours

5   Plaintiffs claim to have worked exposes the City to FLSA liability.  This assertion is inaccurate

6   in two respects.  First, *even if* Plaintiffs are able to prove that there is an inaccuracy in the City's

7   time records that resulted from instructions by the City to underreport overtime worked, the

8   consequence of such proof is not automatic FLSA liability.  Instead, the absence of accurate

9   records is simply the legal predicate to Plaintiffs' ability to rely on the *Mt. Clemens* standard of

10  proof for the amount of time they claim to have worked as a matter of just and reasonable

11  inference.  *Mt. Clemens*, 328 U.S. at 688.  Second, Plaintiffs have not alleged in their operative

12  complaint that the City has violated the recordkeeping provisions of the FLSA specified in 29

13  U.S.C. § 211(c).  Nor could they do so as this provision of the FLSA is enforceable only by the

14  Department of Labor, not through a private action.  *East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176,

15  1182 (D. Ariz. 1998); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1471 (C.D. Cal. 1996).  The

16  cases Plaintiffs have identified as support for their recordkeeping jury instructions and legal

17  contentions -- including *Mitchell v. Reynolds*, 125 F. Supp. 337 (W.D. Ark. 1954) -- all pertain to

18  this provision of the FLSA, which is not at issue in this case.[6]

19              **4.      Plaintiffs Must Prove that Department of Labor Regulations Do Not
                          Render Certain Activities Non-compensable**
20

21          Department of Labor regulations interpreting the FLSA specify that certain types of

22  activities are non-compensable.  These regulations are entitled to substantial deference because

23  they are issued by the Department of Labor, the agency Congress impliedly has tasked with

24  interpretation of the statute.  *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467

25  U.S. 837, 842–44 (1984); *McClean v. Crabtree*, 173 F.3d 1176, 1181 (9th Cir. 1999).  Here,

---

26  [6]      *Reynolds* merely makes the unremarkable statement that an employer cannot defend
27  against a Department of Labor action simply by arguing that it delegated its recordkeeping duties
    to its employees.  *Reynolds*, 125 F. Supp. at 340.  An employer may delegate its recordkeeping to
28  its employees, but this does not excuse it from compliance with the statute's recordkeeping
    provisions.  *Id.*

1  Plaintiffs claim compensation for certain "other uncompensated overtime" activities that the

2  Department of Labor has clarified are not compensable under the FLSA, either because

3  (1) Plaintiffs already are adequately compensated pursuant to a reasonable, negotiated agreement

4  for hard to track activities, or (2) the activities are non-compensable training or similar activities.

5  <div align="center">**a.      29 C.F.R. § 785.23**</div>

6  Under 29 C.F.R. § 785.23, a "reasonable agreement of the parties" may govern and

7  supplant an employer's duties to compensate employees under the FLSA, especially where it is

8  "difficult to determine the exact hours worked under the[] circumstances."  29 C.F.R. § 785.23;

9  *Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677, 679–81 (8th Cir. 1996) (holding that

10  § 785.23 applies beyond the context of "employees who live and perform all of their work on

11  their employer's premises or who work entirely at home" as the text might suggest); *see also*

12  *Brock v. City of Cincinnati*, 236 F.3d 793, 805 (6th Cir. 2001) ("With difficult factual problems

13  swirling around both the issue of what amounts to FLSA 'work' and the monitoring and

14  calculation of time spent on such 'work,' we regard the § 785.23 reasonable agreement provision

15  as doubly appropriate . . . .").  The collective bargaining agreements between the City and the

16  Plaintiffs' union contain reasonable agreements concerning (1) compensation for time spent by

17  officers appearing in court on their days off, and (2) time officers may spend engaging in

18  uniform cleaning or maintenance.

19  <div align="center">**(1)      Court Pay**</div>

20  Under the MOU, officers are compensated for at least four hours of overtime whenever

21  they must meet with a Deputy City Attorney or Deputy District Attorney in order to prepare for

22  and offer testimony in court outside of their scheduled shift.  That is, when officers are called to

23  court outside of their scheduled shift, they are paid at least four hours of overtime, regardless of

24  the actual amount of time they worked.  If they work more than four hours, they are compensated

25  for the number of hours they actually work.

26  The MOU intended that this four-hour minimum be treated as reasonable compensation

27  for officers' court appearances and related preparatory activities.  Agreements like these -- which

28  seek to alleviate the difficulty in tracking specific hours -- are permissible under the FLSA as

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

44

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   long as they reflect reasonable compensation for this type of work.  29 C.F.R. § 785.23; *Rudolph*

2   *v. Metro. Airports Comm'n*, 103 F.3d 677, 680–81 (8th Cir. 1996); *Huss v. Huntington Beach*,

3   317 F. Supp. 2d 1151, 1157 (C.D. Cal. 2000).  Thus, if the jury determines that the four-hour

4   minimum policy provided for in the MOU is reasonable compensation for a Plaintiff's court

5   appearances and related preparatory activities, no further compensation is warranted.[7]

6                        **(2)     Uniform Maintenance**

7        Time spent cleaning and maintaining police uniforms is not "work" under the FLSA.

8   However, even if it were considered to be work, when there is a provision in the collective

9   bargaining agreement that is meant to fully compensate for this time, no additional compensation

10   is required under the FLSA.  In *Hellmers v. Town of Vestal*, 969 F. Supp. 837, 844 (N.D.N.Y.

11   1997), for instance, the court held that the plaintiff was "not entitled to overtime compensation

12   for time spent cleaning and maintaining his police uniform" because there was a collective

13   bargaining agreement which provided a stipend for "either dry cleaning or purchasing new

14   uniforms."  In such circumstances, the collective bargaining agreement represents the intention

15   of both parties to agree jointly on reasonable compensation outside of the FLSA framework, and

16   this reasonable agreement should be upheld.  *See* 29 C.F.R. § 785.23; *Rudolph v. Metro. Airports*

17   *Comm'n*, 103 F.3d 677, 679–81 (8th Cir. 1996); *see also Local 1605 Amalgamated Transit*

18   *Union v. Cent. Contra Costa County Transit Auth.*, 73 F. Supp. 2d 1117, 1121 (N.D. Cal. 1999)

19

---

20   [7]     Although Plaintiffs did not plead the issue in their complaint and none of the trial
Plaintiffs has stated that he or she is making a claim for compensation for "standby" time related
21   to court appearances for which he or she was not compensated, Plaintiffs have identified this as
an issue (for the first time) in their proposed jury instructions.  To the extent that Plaintiffs are
22   now advancing claims for uncompensated time on this theory, they are procedurally precluded
from doing so.  *See* City's Objections to Plaintiffs' Proposed Jury Instructions (Dkt # 517) at 57
23   (citing *Wasco Prods., Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989 (9th Cir. 2006);
*Johnson v. Methodist Medical Center*, 10 F.3d 1300, 1304 (7th Cir. 1993)).  Alternatively, the
24   City contends that the time is not compensable under the standards applicable to "stand by" time.
29 C.F.R. § 553.221(d); 29 C.F.R. § 785.17; *see also Bright v. Houston NW Med. Center*
25   *Survivor, Inc.*, 934 F.2d 671, 677–78 (5th Cir. 1991) (recognizing that being able to effectively
use time for employee's own purposes "does not imply that the employee must have
26   substantially the same flexibility or freedom as he would if not on call, else all or almost all on-
call time would be working time, a proposition that the settled case law and the administrative
27   guidelines clearly reject") (citations and quotations omitted); *Berry v. County of Sonoma*, 30 F.3d
1174 (9th Cir. 1994) (same); *Owens v. Local No. 169*, 971 F.2d 347, 350 (9th Cir. 1992) ("cases
28   dealing with this question have looked at two predominant factors: (1) the degree to which the
employee is free to engage in personal activities 6; and (2) the agreements between the parties").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

45

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   ("[W]hen an otherwise compensable activity under FLSA is treated as non-compensable under a

2   collective bargaining agreement, the agreement governs.").  To hold the employer both to its

3   obligation under the collective bargaining agreement and to FLSA compensation requirements

4   would be to require the employer to double-pay.

5                    **b.       29 C.F.R. § 785.27**

6           Under the FLSA, attendance at lectures, meetings, training programs, and similar

7   activities need not be counted as working time if the following four criteria are met:

8   "(1) Attendance is outside of the employee's regular work hours; (2) Attendance is in fact

9   voluntary; (3) The course, lecture, or meeting is not directly related to the employee's job; and

10  (4) The employee does not perform any productive work during such attendance."  29 C.F.R.

11  § 785.27; *see also* Dep't of Labor W-H Adm. Op. (June 1, 1994); Dep't of Labor W-H Adm. Op.

12  No. 1589 (Sept. 12, 1985).  Applying this regulation, courts have found a variety of activities --

13  many of which Plaintiffs are claiming in the present case -- to be non-compensable under the

14  FLSA.  These activities include both time spent training to maintain weapons proficiency and

15  physical fitness activities.

16                   **(1)      Weapons Training**

17          Pursuant to Department of Labor regulations, off-duty time spent engaged in weapons

18  proficiency activities of Plaintiffs' own accord is not compensable.  *Bull v. United States*, 68

19  Fed. Cl. 212, 256 (2005); *see also Jackson v. City of San Antonio*, No. SA-03-CA-0049-RF

20  2006 WL 2548545 *14 (W.D. Tex. Aug. 31, 2006) (unpublished disposition) (holding off-duty

21  weapons training was not compensable).

22          In *Bull v. United States*, the Federal Claims court engaged in analysis based on

23  regulations defining compensable off-duty time spent in training to determine that off-duty

24  weapons practice time was not compensable under the FLSA.  68 Fed. C1 at 256.[8]  Rejecting the

25  claims of the plaintiff customs enforcement officers to compensation for time spent preparing for

26

27  [8]      While the *Bull* court analyzed the plaintiffs' claims under the rubric of Office of
    Personnel and Management (OPM) regulations, it recognized that "OPM and DOL have
28  promulgated, in similar terms, regulations that define compensable off-duty time spent in
    training[,]" *id.* at 255, and cited the analogous DOL regulations throughout the decision.

1  and participating in marksmanship exams, the court explained that an employee is entitled to

2  compensation for training time only if "the training is required by the agency and the employee's

3  performance or continued retention in his or her current position will be adversely affected by

4  non-enrollment in such training." *Id.* (quoting 5 C.F.R. § 551.423(b)(1)).[9]  Applying this

5  standard, the court determined that the plaintiffs failed to establish that their employment would

6  be adversely affected if they did not participate in off-duty training as long as they passed their

7  tests, as plaintiffs "could not point to a single [officer] who failed every chance at qualification

8  . . . such that termination resulted." *Id.* at 257.  Notably, the court concluded that "even though

9  an officer's employment depends upon passing qualification tests, *the existence of the tests is not*

10 *a sufficient basis to convert off-duty training into a requirement*." *Id.* (emphasis added)

11        Additionally, the court found that plaintiffs failed to prove that the purpose of training

12 was to "improve their performance" in their current positions, as officers "are not principally

13 employed to use a firearm, nor is off-duty firearms training necessary to improve the day-to-day

14 performance of their work.  Rather, [the employer] required [officers] to maintain only a

15 minimum weapons proficiency, which plaintiffs did not establish to be high enough to qualify as

16 a skill unique to their employment." *Id.* at 257–58.  The court was also influenced by "the fact

17 that 'the method, location, and amount of off-duty [] training were left to the officers' complete

18 discretion[.]'" *Id.* at 259 n.49.  Indeed, the *Bull* plaintiffs "enjoyed complete discretion to decide

19 how and when to practice with their weapons off duty.  If the officers chose to engage in off-duty

20 practice, [the employer] neither imposed nor proscribed a particular practice regimen." *Id.*

21 Consistent with the *Bull* opinion, off-duty weapons training is not compensable work.

22                  **(2)     Physical Fitness Activities**

23        The Department of Labor has directly addressed the compensability of police officers'

24 off-duty physical fitness training, concluding that such time is not compensable under the FLSA.

25 *See* W-H Adm. Op. (June 1, 1994) (off-duty physical training is beneficial to any individual,

26

27 [9]     The analogous DOL regulations are concerned with whether attendance is "voluntary" and whether an employee is "given to understand that his present working conditions or the
28 continuance of his employment would be adversely affected by nonattendance."  *Id.* at n.44 (citing 29 C.F.R. § 785.28).

1  hence regardless of employment as an SRT officer, physical training does not constitute

2  compensable working time); *accord* W-H Adm. Op. No. 1589 (Sept. 12, 1985).

3       Moreover, applying 29 C.F.R. § 785.27, the Eleventh Circuit in *Dade County v. Alvarez*

4  concluded that off-duty physical training was not directly related to officers' employment.

5  Members of the Metro-Dade Police Department's Special Response Team ("SRT") sued to

6  recover overtime pay for off-duty hours spent engaging in physical fitness training in order to

7  maintain the excellent physical conditions required by the job, and to pass semi-annual fitness

8  tests. *Dade County v. Alvarez,* 124 F.3d 1380, 1382 (11th Cir. 1997).  As the court explained:

9  "The mere fact that fitness training must be undertaken off duty in order to perform SRT

10 functions is insufficient to establish that such activity is directly related to the employee's job."

11 *Id.* at 1385.  The court also noted that it reached an identical conclusion applying more general

12 principles:  The training had not been performed predominantly for the benefit of the employer,

13 nor was it an integral and indispensable part of the principal activity for which the officers were

14 employed.  Accordingly, off-duty physical training is not compensable work under the FLSA.

15 *Id.* at 1386.

16           **5.**       **Plaintiffs Must Establish a Willful Violation of the FLSA to Extend**

17                     **the Statute of Limitations**

18      The normal statute of limitations for FLSA violations is two years.  29 U.S.C. § 255(a).

19 However, where there is a "willful violation," the statute of limitations may be extended to three

20 years.  29 U.S.C. § 255(a).  Thus, Plaintiffs may be entitled to extend the statute of limitations by

21 one year if they prove by a preponderance of the evidence that the City's failure to pay overtime

22 was willful.

23      To establish a "willful violation" of the FLSA, Plaintiffs must show that the City either

24 knew or showed reckless disregard for whether its conduct was prohibited by the statute.

25 *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–35 (1998).  Contrary to Plaintiffs'

26 assertion, if the City only knew that the law was *potentially* applicable, its conduct is not (and

27 cannot be) "willful."  Furthermore, negligence is not enough to establish willfulness.  *Id.*;

28 *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003); *Reich v. Gateway Press*, 13 F.3d 685,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

48

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   702–703 (3d Cir. 1994); *Lockwood v. Prince George's County*, 58 F. Supp. 2d 651, 658 (D. Md.

2   1999); Kevin O'Malley et al., *Federal Jury Practice and Instructions, Civil*, Fair Labor

3   Standards Act § 175.35, p. 656 (5th ed. 2001) (current through 2008); *see also Hazen Paper Co.*

4   *v. Biggins*, 507 U.S. 604, 617 (1993).  Indeed, in *McLaughlin*, the Supreme Court explained that

5   "[t]he fact that Congress did not simply extend the limitations period to three years, but instead

6   adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a

7   *significant* distinction between ordinary violations and willful violations."  486 U.S. at 132

8   (emphasis added).

9       **B.**    **Plaintiffs' Third Claim for Relief for Late Payment of Overtime in Violation**
10            **of 29 U.S.C. § 207(a)**

11        Plaintiffs' Third Claim for Relief alleges that the City failed to pay Plaintiffs for overtime

12  compensation earned in a particular work period by the regular pay day for the period in which

13  the work was performed.  Fifth Amended Complaint (Dkt # 120) at ¶¶ 38–43.  On July 20, 2007,

14  the City moved for summary judgment on this claim.  City's Motion for Partial Summary

15  Judgment (Dkt # 152).  In response, Plaintiffs disclaimed any such claim, stating "Plaintiffs do

16  not claim damages for late payment of overtime for which they submitted overtime slips."

17  Plaintiffs' Opposition to City's MSJ (Dkt # 187) at 36.  In its November 9, 2007 Order, the Court

18  accordingly did not specifically address this aspect of the City's motion.  *See* Dkt # 265.

19        Plaintiffs recently revived their late payment of overtime claim by proposing that the jury

20  be instructed on this claim.  *See* Plaintiffs' Proposed Jury Instruction No. 200 (Dkt # 510) at ¶ 2

21  ("Plaintiffs claim that Defendant violated Plaintiffs' federal law rights under the FLSA for

22  failure to pay all wages in a timely manner.").  Yet because Plaintiffs disclaimed any damages

23  for late payment of overtime, Plaintiffs cannot revive this claim at this late date.  *See Am. Title*

24  *Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) ("statements of fact contained in a

25  brief *may* be considered admissions of the party in the discretion of the district court"); *see also*

26  *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat

27  statements in briefs as binding judicial admissions of fact."); *City Nat'l Bank v. United States*,

28  907 F.2d 536, 544 (5th Cir. 1990).

1    Additionally, Plaintiffs' Third Claim for Relief is legally and factually unsupported.  The

2    City has fully complied with the FLSA's requirement "that overtime compensation be paid on

3    the employee's regular payday," *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993), by paying for

4    overtime earned during the correct pay period.  Not only have Plaintiffs failed to identify any

5    evidence that shows otherwise, but further, numerous Plaintiffs who were deposed confirmed

6    that they do not contend that the City's payments of reported overtime were late.

7        Given the absence of evidence of late payments of overtime by the City, the only

8    plausible explanation for Plaintiffs' inclusion of this claim in the proposed jury instructions is

9    their apparent misunderstanding of the scope and application of § 207(a).  The FLSA proscribes

10   late payments of reported or recorded overtime hours, preventing delay in making those

11   payments to the employee.  *See* 29 C.F.R. § 778.106.  There is, however, no legal authority to

12   support the notion that the proscription on late payment of overtime would apply to

13   circumstances such as are at issue in this case where Plaintiffs claim they were not compensated

14   for various activities that the City honestly and in good faith has concluded are not compensable

15   under the FLSA, or work-related activities of which the City lacked constructive knowledge.

16   Plaintiffs have presented the Court with no authority to the contrary.

17       **C.    The City's Affirmative Defenses**

18           **1.    Good Faith Defense:  Liquidated Damages**

19       If the City is found to have not complied with the FLSA, the Court may exercise its

20   discretion to determine whether Plaintiffs should be awarded liquidated damages, *i.e.*, additional

21   damages equal to the amount of the City's underpayments (in effect, doubling the damages).

22   29 U.S.C. § 260; 29 C.F.R § 790.22.  This is not a question for the jury.  If the Court determines

23   that the City acted in "good faith," the Court is permitted to reduce or eliminate liquidated

24   damages altogether.  29 C.F.R. § 790.22(b).

25       In order to meet this burden, the City must show that it acted in good faith and that it had

26   reasonable grounds for believing that its act or omission was not a violation of the FLSA.

27   29 U.S.C. § 260.  The determinations of what constitutes good faith and whether the City was

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

50    CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   reasonable in its good faith are mixed questions of fact and law.  29 C.F.R. § 790.22(c).  In

2   determining whether the City acted in good faith, the Court may consider, among other things:

3            (1)  The extent to which the City relied on reasonable interpretations of the FLSA
                 obtained through investigation, consultation with counsel, or by reference to
4                 industry practice;

5            (2)  Evidence that the City attempted to comply with the FLSA through other
                 means such as by attendance at seminars;
6

7            (3)  The novelty of the FLSA issue; and

8            (4)  The lack of knowledge by the City of FLSA violations.

9   *Local 246 Utility Workers' Union of Am. v. S. Cal. Edison*, 83 F.3d 292, 297–98 (9th Cir. 1996);

10  *Horan v. King County*, 740 F. Supp. 1471, 1481 (W.D. Wash. 1990); *see also Block v. City of*

11  *Los Angeles*, 253 F.3d 410, 420 (9th Cir. 2001); *Featsent v. City of Youngstown*, 70 F.3d 900,

12  907 (6th Cir. 1995); *Nelson v. Ala. Inst. for Deaf & Blind*, 896 F. Supp. 1108, 1114–15 (N.D.

13  Ala. 1995); *Hultgren v. County of Lancaster*, 913 F.2d 498, 508–10 (8th Cir. 1990); *Thomas v.*

14  *County of Fairfax*, 758 F. Supp. 353, 368 (E.D. Va. 1991); *Laffey v. Northwest Airlines, Inc.*, 567

15  F.2d 429, 463–65 (D.D.C. 1976); *Kelly v. Ballard*, 298 F. Supp. 1301, 1309 (S.D. Cal. 1969);

16  *Blankenship v. Thurston Motor Lines*, 295 F. Supp. 632, 635 (W.D. Va. 1968) rev'd on other

17  grounds, 415 F.2d 1193 (4th Cir. 1969); *Marshall v. Brunner*, 668 F.2d 748, 753 (3rd Cir 1982);

18  *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 93 (2nd Cir 1953); *Devine v. Joshua Hendy*

19  *Corp.*, 77 F. Supp. 893, 906 (S.D. Cal. 1948).

20        The City will satisfy both requirements to establish its "good faith," including that the

21  City:  (1) acted in subjective good faith to comply with the FLSA; and (2) had objectively

22  reasonable grounds for believing that its act or omission did not violate the FLSA.  *Bratt v.*

23  *County of Los Angeles*, 912 F.2d 1066, 1071–72 (9th Cir. 1990).

24          **a.**      **The City Subjectively Intended to Comply With the FLSA**

25        The subjective good faith component of the defense to liquidated damages requires an

26  employer to show that "it had [an] honest intention to ascertain what the FLSA requires and to

27  act in accordance with it."  *Id.* at 1072; *see also Nash v. Res., Inc.*, 982 F. Supp. 1427, 1436 (D.

28  Ore. 1997).  Proactive steps taken by an employer to determine its obligations under the FLSA --

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

51

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   including actions that indicate an intent to comply with FLSA provisions not at issue in the

2   relevant litigation -- indicate the employer's honest intention to comply with FLSA.  *See e.g.,*

3   *Thomas v. County of Fairfax*, 758 F. Supp. 353, 368 (E.D. Va. 1991); *Berry v. Sonoma County*,

4   791 F. Supp. 1395, 1418 (N.D. Cal. 1992) (employer demonstrated good faith when "[p]ersonnel

5   analysts had attended seminars, reviewed the statute and reviewed [cases], as well as Wage and

6   Hour rulings"), *rev'd on other grounds*, 30 F.3d 1174 (1994).

7       Because it is the employer's subjective intention to comply with the law that controls this

8   inquiry, whether the employer's efforts are or were effective is irrelevant to the employer's good

9   faith.  *E.g.*, *Bratt*, 912 F.2d at 1072; *Nelson v. Alabama Inst. for Deaf & Blind*, 896 F. Supp.

10  1108, 1115 (N.D. Ala. 1995).  For example, in *Thomas v. County of Fairfax*, a case brought by

11  the lieutenants in the Fire Department of Fairfax County to challenge their classification as

12  employees exempt under the FLSA, the court concluded that the employer had established

13  subjective good faith to comply with the FLSA on the basis of the employer's compliance efforts

14  pertaining to unrelated FLSA issues, including issues concerning administrative leave with pay,

15  and payment of reimbursement for past deductions.  *Thomas*, 758 F. Supp. at 368.

16      The City's substantial efforts to comply with the dictates of the FLSA in a variety of

17  contexts are well-documented.  At all times relevant to this litigation, the City (including senior

18  members of the SDPD) has engaged in extensive review of labor policies to ensure their

19  compliance with FLSA and other applicable state laws.  Representatives of the Office of the City

20  Attorney regularly review the SDPD's policies and practices for compliance with the law.  In

21  addition, senior members of the Department, including Assistant to the Chief Paul Cooper and

22  Fiscal Services Division Program Managers Chelly Leonard and Ron Villa, undertook various

23  steps to ensure the Department remained in compliance with the FLSA, including by:  attending

24  annual training seminars concerning FLSA compliance for law enforcement agencies; reviewing

25  the provisions of the FLSA, along with DOL regulations, interpretations, opinion letters and

26  other guidance; reviewing pertinent caselaw; and consulting with legal advisors.  For example,

27  throughout the time period at issue in this case, Paul Cooper and various other staff members

28  engaged in a substantial review of the Department's compensatory time off policy in connection

1   with specific complaints regarding the operation of the policy and in an effort to implement

2   suggested revisions.  This review included analysis and consideration of developments in

3   applicable case law, in particular *Mortensen v. County of Sacramento*, 368 F.3d 1082 (9th Cir.

4   2004) and *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298 (5th Cir. 2003).  *See*

5   *id.*  These proactive steps demonstrate that the City made good faith efforts honestly to comply

6   with the FLSA.

7                    **b.       The City's Conduct Was Objectively Reasonable**

8           The City will also satisfy the objective component of the good faith defense to liquidated

9   damages.  Under this prong of the defense, the City's behavior must be judged objectively, by

10  reference to the existence of "reasonable grounds for believing that [the employer's] conduct

11  complies [with] the Act."  *Bratt*, 912 F.2d at 1071–72.  In assessing whether an employer had

12  reasonable grounds to believe its conduct complied with the law, courts consider several factors.

13  A review of these factors as they apply in this case reveals the objective reasonableness of the

14  City's actions.

15                       **(1)       Investigation and Industry Practice**

16          First, the City undertook various affirmative steps to ascertain the FLSA's requirements

17  and to comply with those requirements.  The City, including senior Department personnel,

18  required regular review of all SDPD polices and procedures, including those applicable to

19  overtime, through a process that included review and legal analysis of the policies.  In addition,

20  the City employed both formal and informal complaint procedures, whereby senior managers

21  and/or City officials regularly investigated the circumstances of employee compensation

22  complaints by, *inter alia*, consultation with attorneys and review of applicable statutes,

23  regulations, and other DOL guidance materials.  Such efforts generally have been held to be

24  sufficient to avoid liquidated damages.  *E.g.*, *Featsent v. City of Youngstown*, 70 F.3d 900, 907

25  (6th Cir. 1995); *Hultgren v. County of Lancaster*, 913 F.2d 498, 506–10 (8th Cir. 1990).

26          Furthermore, the City relied upon widespread industry practices, particularly with regard

27  to the non-compensability of donning and doffing time, in determining its compensation

28  practices.  In particular, the San Diego Police Department is an active participant in Peace

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

53

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   Officer Standards and Training (POST), which produces training courses that are mandatory for

2   officers, hosts seminars and forums for members of the California law enforcement agencies to

3   participate and discuss changes in the law, and issues regular bulletins about new case law.  The

4   Department reviews these bulletins to keep abreast of changes, and to keep informed about the

5   practices at other law enforcement agencies.  Moreover, the SDPD is comprised of staff who

6   have experiences and contacts at other Departments, upon whom managers may and do call to

7   discuss industry standards.  Indeed, the City's Chief of Police, William Lansdowne, previously

8   served as Chief of Police of the San Jose and Richmond Police Departments.  During his time at

9   these two departments, he became familiar with the requirements of FLSA, and each

10   department's policies and procedures.  Chief Lansdowne has relied on this knowledge and

11   experience to help shape and form the SDPD.  This type of reliance upon industry practices also

12   has been widely deemed relevant to the existence of good faith.  *E.g.*, *Wyatt v. Holtville Alfalfa*

13   *Mills, Inc.*, 106 F. Supp. 624, 633 (S.D. Cal. 1952); *Cameron v. Chichagof Mining Co.*, 82 F.

14   Supp. 665, 670 (D. Alaska 1948).

15   <center>**(2)     Other Means of Compliance**</center>

16        Second, that the City acted in good faith to ensure the Department maintained compliance

17   with the requirements of the FLSA was supported by the attendance of key senior managers at

18   annual training seminars regarding the FLSA, and by the efforts of these same senior managers

19   to investigate the requirements of the FLSA.  These efforts also confirm the City's good faith.

20   *See Nelson*, 896 F. Supp. at 1115 (employer entitled to good faith defense when director of

21   personnel attended seminars and reviewed statutes, regulations, and agency opinions regarding

22   the FLSA).

23   <center>**(3)     Novelty of the Issues**</center>

24        Third, the City's good faith is established through examination of the lack of controlling

25   precedent and the relative novelty of the issues, particularly concerning the donning and doffing

26   issues presented in this action.  Relying upon numerous cases and by guidance issued by the

27   Wage and Hour Administrator, the City concluded that donning and doffing time is not

28   compensable under the FLSA.  The City's reliance upon these authorities in the absence of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

54

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   contrary caselaw or regulatory guidance establishes the City's good faith.  *See Thomas*, 758 F.

2   Supp. at 368 (quoting *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 187 (3d Cir. 1988));

3   *Kelly v. Ballard*, 298 F. Supp. 1301, 1309 (S.D. Cal. 1969).  Indeed, this Court has confirmed the

4   City's view regarding the noncompensability of donning and doffing.

5                              **(4)      Lack of Knowledge**

6               Fourth, the City's good faith is established by Plaintiffs' failure to report their alleged

7   uncompensated work hours.  It is well-established that an employer who has no knowledge of the

8   existence of a culture, custom, or practice resulting in unpaid overtime is not liable for liquidated

9   damages.  In *Devine v. Joshua Hendy Corp*, for instance, the court held that when the employer

10  "did not know that [a] practice [of working off the clock] had grown up, no liquidated damages

11  should be allowed."  77 F. Supp. 893, 906 (S.D. Cal. 1948).  Under these circumstances, the

12  employer could not be deemed to have acted in bad faith, and liquidated damages were

13  inappropriate.  *Id*.  Likewise, here, the City has established that the City had no knowledge of

14  any purported culture, custom, or practice of not reporting small amounts of overtime.  The

15  City's failure to respond to these allegations with compliance efforts accordingly cannot support

16  an award of liquidated damages.

17              Plaintiffs' failure to provide notice to the City of potential FLSA violations is amplified

18  by their failure to raise any alleged FLSA violations in collective bargaining, or through

19  grievances.  The City consistently has undertaken to address specific issues regarding overtime

20  and other FLSA compensation issues in collective bargaining.  Indeed, not only does the City

21  engage in formal contract negotiations with the SDPOA, but the City also willingly participated

22  in negotiations concerning discrete contractual and other issues outside of the regular fiscal year

23  negotiations process.  *Id*.  Through these negotiations, FLSA and other labor law related issues

24  have been raised and resolved, including the recent 2006 out of cycle negotiations regarding

25  compensatory time off.  *See id*.  Despite this established framework for discussion and

26  disposition of wage and hour issues, the claims at issue in this action were not raised by

27  Plaintiffs' union, the San Diego Police Officers' Association, in any labor negotiations context,

28  whether formal or informal.  Having decided not to avail themselves of this opportunity to notify

1  the City of the FLSA issues at hand, Plaintiffs may not now argue that the City's purported

2  failure to address their concerns is in bad faith.  *E.g.*, *Schneider v. City of Springfield*, 140 Lab.

3  Cas. (CCH) ¶ 34,064 at 17 (S.D. Ohio Mar. 30, 2000); *see also Berry v. Sonoma County*, 791 F.

4  Supp. 1395, 1418 (N.D. Cal. 1992) (concluding the employer acted in good faith based in part

5  upon finding that "[t]he parties had raised and negotiated the issue [at bar] as part of the

6  collective bargaining process and had reached a resolution several times, albeit an unsatisfactory

7  one for the plaintiffs.").

8              **2.      Offsets and Adjustments**

9                  **a.      Section 207(k)**

10             Under the FLSA, employees normally are entitled to receive overtime pay, at time-and-a-

11  half (*i.e.*, the premium rate), for all hours worked in excess of forty per week.  29 U.S.C.

12  § 207(a)(1); Nov. 9, 2007 Order (Dkt # 265), at 14:17–19.  However, § 207(k) provides an

13  exception to that rule for public agencies, like the City, with respect to "any employees in law

14  enforcement activities," to whom "a work period of at least 7 but less than 28 days applies."  29

15  U.S.C. § 207(k); Nov. 9, 2007 Ord. at 14:19–23.  These employees are entitled to overtime pay

16  only after they have worked more than 171 hours in a twenty-eight day work period (or, as in

17  this case, forty-three hours in a seven-day work period), which equals 156 hours on a yearly

18  basis.  29 U.S.C. § 207(k)(2); Nov. 9, 2007 Ord. at 14:23–25.  The City has already established

19  the § 207(k) exemption with respect to Plaintiffs.  Nov. 9, 2007 Ord. at 14–20.  Thus, Plaintiffs

20  must prove that they worked in excess of forty-three hours in a particular work period before

21  they have satisfied the required elements of their claims.

22             Plaintiffs now contend that the City must prove that each Plaintiff was engaged in

23  qualifying "law enforcement activities" at least eighty percent of the time each work period

24  before the City may take advantage of the § 207(k) exemption.  This contention is flawed in that

25  it fails to recognize that Plaintiffs, as sworn law enforcement officers, are *always* considered

26  engaged in law enforcement activities.  *See* 29 C.F.R. § 553.211(a) ("[T]he term 'any employee

27  . . . in law enforcement activities' refers to any employee (1) who is a uniformed or plainclothed

28  member of a body of officers and subordinates who are empowered by State statute or local

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

56        CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
          DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1  ordinance to enforce laws designed to maintain public peace and order and to protect both life

2  and property from accidental or willful injury, and to prevent and detect crimes, (2) who has the

3  power to arrest, and (3) who is presently undergoing or has undergone or will undergo on-the-job

4  training and/or a course of instruction and study which typically includes physical training, self-

5  defense, firearm proficiency, criminal and civil law principles, investigative and law enforcement

6  techniques, community relations, medical aid and ethics.").  This is so even when Plaintiffs are

7  engaged in support functions or during periods when they may be assigned to light duty.  29

8  C.F.R. § 553.211(b) ("Employees who meet these tests are considered to be engaged in law

9  enforcement activities regardless of their rank, or of their status as 'trainee,' 'probationary,' or

10 'permanent,' and *regardless of their assignment to duties incidental to the performance of their*

11 *law enforcement activities* such as equipment maintenance, and lecturing, or to support activities

12 of the type described in paragraph (g) of this section, whether or not such assignment is for

13 training or familiarization purposes, or for reasons of illness, injury or infirmity.") (emphasis

14 added).  Therefore, contrary to Plaintiffs' assertion in their proposed jury instructions, "a police

15 officer working as a dispatcher" *is* engaged in law enforcement activities and is properly subject

16 to a § 207(k) work schedule.  Indeed, the regulation on which Plaintiffs purport to rely is

17 inapposite as it provides only that " *'civilian' employees* of law enforcement agencies . . . who

18 engage in such support activities as those performed by dispatcher" are "[n]ot included in the

19 term 'employee in law enforcement activities.'"  29 C.F.R. § 553.212 (emphasis added).

20        Notably, the Department of Labor has issued a Notice of Proposed Rulemaking that

21 proposes to remove § 553.212 from its interpretive regulations altogether.  Proposed Rules,

22 Dep't of Labor, W-H Div., RIN 1215-AB13, Updating Regulations Issued Under the Fair Labor

23 Standards Act, 73 FR 43654 (Jul. 28, 2008).  Specifically, the Department of Labor recognizes

24 that, in effect, the "eighty percent rule" served only as a "gloss on the pre-existing regulatory

25 definition" of employees engaged in fire protection activities.  *Id.* at 43658.  In light of the

26 enactment of 29 U.S.C. § 203(y), and court decisions construing § 553.212 in light of the

27 adoption of § 203(y), the DOL concluded that § 553.212 is "unnecessary."  *Id.*  Although the text

28 of the regulation purports to apply the "eighty percent rule" to law enforcement employees as

1   well as employees engaged in fire protection activities, given the breadth of the definition of

2   employees engaged in law enforcement activities stated in § 533.211 (which expressly includes

3   support activities and other duties incidental to law enforcement activities), the eighty percent

4   "gloss" is not applicable to law enforcement employees.  The DOL's proposal to remove

5   § 553.212 from its interpretive regulations implicitly recognizes the inapplicability of the "eighty

6   percent rule" to law enforcement officers.  As of this date, no final action has been taken on the

7   proposed rule, although the comment period is closed.

8                    **b.**          **Section 207(h) Offsets**

9                            **(1)**       **Holiday Pay**

10          Pursuant to § 207(h)(2) of the FLSA, the City is entitled to offset "extra compensation

11   paid" for "holidays" paid at a premium rate.  *See* 29 U.S.C. § 207(h); 29 U.S.C. § 207(e)(5)–(6);

12   29 C.F.R. §§ 553.233, 778.201, 778.203(a).  That is, under the FLSA, the City is not required to

13   pay additional compensation -- beyond what they would normally receive on a non-holiday -- to

14   employees who work on official holidays.  Thus, § 207(h) allows the City to offset from its

15   FLSA overtime liability, any premium-rate (*i.e.*, overtime-rate) compensation paid to an

16   employee for work performed on holiday.  *See Alexander v. United States*, 32 F.3d 1571, 1576–

17   77 (Fed. Cir. 1994); *Kohlheim v. Glynn County*, 915 F.2d 1473, 1481 (11th Cir. 1990); *Biggs v.*

18   *Joshua Hendy Corp.*, 183 F.2d 515, 517–19 (9th Cir. 1950); *Hesseltine v. Goodyear Tire &*

19   *Rubber Co.*, 391 F. Supp. 2d 509, 522–23 (E.D. Tex. 2005); *Nolan v. City of Chicago*, 125 F.

20   Supp. 2d 324, 330-31 (N.D. Ill. 2000); *Abbey v. City of Jackson*, 883 F. Supp. 181, 185–86 (E.D.

21   Mich. 1995).

22                            **(2)**       **Court Pay**

23          The City contends that the four-hour-minimum of court pay to which each Plaintiff is

24   entitled for every court appearance he or she makes on a day off reflects reasonable, negotiated

25   compensation such that no Plaintiff is entitled to any additional overtime compensation for court-

26   related activities.  *See supra* at 44.  In the alternative, if the jury finds that the four-hour

27   minimum policy is not reasonable, then the City is still entitled to offset any premium time paid

28   for court appearances and preparation in excess of the actual time worked.  Specifically,

1   § 207(h)(2) of the FLSA entitles the City to offset "extra compensation paid" at a premium rate

2   by crediting that time against FLSA overtime liability.  *See* 29 U.S.C. § 207(h); 29 U.S.C.

3   § 207(e)(5); 29 C.F.R. §§ 553.233, 778.201, 778.203(a).  That is, in instances where the four-

4   hour minimum amount of court pay was paid, the City may offset the difference between the

5   amount of overtime compensation that was paid and the actual number of hours Plaintiffs

6   worked.  *See Alexander v. United States*, 32 F.3d 1571, 1576-77 (Fed. Cir. 1994); *Kohlheim v.*

7   *Glynn County*, 915 F.2d 1473, 1481 (11th Cir. 1990); *Biggs v. Joshua Hendy Corp.*, 183 F.2d

8   515, 517-19 (9th Cir. 1950); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509,

9   522-23 (E.D. Tex. 2005); *Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 330-31 (N.D. Ill.

10  2000).

11                    **(3)    Section 207(h) Offsets Should Be Credited to Any FLSA**
                              **Liability, Rather Than Limited to Specific Work**
12                            **Periods**

13          Plaintiffs have argued that the City's § 207(h) offsets should be calculated on a work

14  period-by-work period basis, and that such offsets should not be permitted to be applied to work

15  periods other than the period in which the creditable payments were earned.  This argument is

16  based upon Plaintiffs' wholesale acceptance of unsettled legal authority.

17          The plain language of the statute does not address this issue.  *See* 29 U.S.C. § 207(h).

18  Thus, the courts are divided regarding whether offsets must be credited against overtime owed

19  for work performed within the same pay period, or whether offsets may be credited against all

20  FLSA liability, without regard for when the offsets accrued.  *Compare Herman v. Fabri-Centers*

21  *of Am.*, 308 F.3d 580, 593 (6th Cir. 2002) (requiring offsets be applied on pay period by pay

22  period basis); *Howard v. City of Springfield*, 274 F.3d 1141, 1149 (7th Cir. 2001); *Bell v. Iowa*

23  *Turkey Growers Coop.*, 407 F. Supp. 2d 1051, 1064 (S.D. Iowa 2006); *Nolan v. City of Chicago*,

24  125 F. Supp. 2d 324, 331–33 (N.D. Ill. 2000); *with Singer v. City of Waco*, 324 F.3d 813, 828

25  (5th Cir. 2003); *Alexander v. United States*, 32 F.3d 1571, 1577 (Fed. Cir. 1994) (section 207(h)

26  offsets "creditable toward *any* overtime compensation due under the FLSA") (emphasis added);

27  *Kohlheim v. Glynn County*, 915 F.2d 1473, 1481 (11th Cir. 1990) (holding "that the county

28  should be allowed to set-off all previously paid overtime premiums . . . against overtime found to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

59

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   be due and owing during the damages phase of the trial"); *O'Brien v. Town of Agawam*

2   (*"O'Brien V"*), 491 F. Supp. 2d 170, 176 (D. Mass. 2007) ("Defendants are entitled to credit . . .

3   contractual overtime payments regardless of when the premiums were paid and when the

4   overtime work occurred"); *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 161 (D. Mass. 2007)

5   (employer may apply a credit "regardless of when the premiums were paid and when the

6   overtime work occurred"); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 523

7   (E.D. Tex. 2005) (employer "may credit the premiums paid Plaintiffs against any additional

8   overtime obligations incurred"); *Abbey v. City of Jackson*, 883 F. Supp. 181, 186–87 (E.D. Mich.

9   1995); *see also Dice v. Weiser Sec. Servs.*, No. 06-61133-civ, 2008 WL 269513 *4 (S.D. Fla.

10  Jan. 29, 2008) (slip copy) (Eleventh Circuit "permits an employer to credit accumulated

11  premium pay against incurred overtime"); *Dunn v. Muskegon*, No. 1:97-cv-1003, 1998 WL

12  34302060 * 4 (W.D. Mich. Nov. 5, 1998) (unpublished order).

13          Although the Ninth Circuit has not yet decided this precise issue, the City contends that

14  reasoning of the First, Fifth, Eleventh, and Federal Circuits is instructive.  Courts in several of

15  the other Circuits have simply reasoned that offsets may only be credited against liability within

16  the same pay period, "[b]ecause the statute contemplates that overtime will be paid and

17  calculated on a pay period basis, it is consistent with that language to calculate and apply credits

18  in the same manner[.]"  *Howard*, 274 F.3d at 1149.  However, in the First, Fifth, Eleventh, and

19  Federal Circuits the courts have rejected this timely pay argument, concluding that limiting

20  offsets to a particular work period penalizes the employer and allows employees a potential

21  windfall at the employer's expense.  *See O'Brien V*, 491 F. Supp. 2d at 176 (rejecting plaintiffs'

22  arguments that "limiting the premium payments which the Town can use to reduce its liability

23  will not result in a 'windfall' to them").  *See generally Roman v. Maietta Constr., Inc.*, 147 F.3d

24  71, 76–77 (1st Cir. 1998) ("plaintiffs are entitled to be made whole, not to a windfall at the

25  [defendant's] expense").

26          In *Singer v. City of Waco*, for example, plaintiffs argued that permitting the employer to

27  offset overpayments would violate the timely pay provisions of the FLSA by "permit[ting] the

28  City to pay its overtime obligations years after they were due."  *Singer*, 324 F.3d at 828.  The

1   Fifth Circuit rejected this argument, analogizing that overpayments were more appropriately

2   viewed as "prepayments."  Since "the provision does not prohibit an employer from paying

3   overtime compensation in advance[,]" the employer is entitled to offset overpayments against

4   shortfalls from other work periods.  *Id.*

5          Likewise, in *Abbey v. City of Jackson*, plaintiffs argued that offsets were limited to the

6   period in which they accrued, relying on caselaw requiring the employer to pay overtime

7   "promptly when due."  *Abbey*, 883 F. Supp. at 186.  The district court examined the "FLSA

8   provisions and the policies behind FLSA" and determined that limiting offsets to the period in

9   which they accrued was, "in effect, assessing civil money damages beyond those enunciated in

10  29 U.S.C. § 216(b)."  *Id.*  "Forcing an employer, who has given a premium rate of pay for

11  overtime, to forego the receipt of credit and to pay additional overtime punishes the employer

12  without regard to whether it was attempting to avoid its obligation to compensate employees

13  adequately for extra hours worked."  *Id.*  Were the court to so limit the employer's offsets to the

14  period in which they accrued, "plaintiffs would receive a windfall and the purposes and goals of

15  the statute would not be served."  *Id.*

16         Alternatively, in this case, because the "actual hours worked by each individual [Plaintiff]

17  for each specific [] week cannot be derived as a matter of reasonable inference[,]"and thus lack

18  foundation, this Court should find that "defendants are entitled to credit one week's overpayment

19  against another week's liability[.]"  *See Harold Levinson Assocs., Inc. v. Chao*, No. 01-6105, 37

20  Fed. Appx. 19, 22 & n.3 (2nd Cir. 2002) (unpublished summary order) (remanding for

21  recalculation of damages based on comparison of total hours worked versus total hours

22  compensated, and noting that:  "Our decision to remand effectively gives the defendants the

23  benefit of a credit for the [period], but does so not because as a matter of law the defendants are

24  entitled to credit one week's overpayment against another week's liability, but because of the

25  lack of foundation for the plaintiff's actual computations of weekly hours for the [] period.").[10]

26  
_____

27  [10]     In *Harold Levinson*, the Second Circuit recognized the Circuit split concerning "whether
    premium pay which is creditable pursuant to 29 U.S.C. § 207(h) may be credited across pay
28  periods," but determined that "this case does not involve payments that satisfy that provision."
    37 Fed. Appx. at 22.

1   **III.    EVIDENTIARY ISSUES**

2         **A.    Issues to Be Addressed Prior to Trial**

3         The City is aware of two evidentiary issues that will be presented to the Court for

4   determination prior to trial.  First, the Court will consider the admissibility of MCT data.  This

5   issue was exhaustively argued during the final pre-trial conference and will be the subject of

6   additional briefing, per the Court's request.  Second, the City anticipates that Plaintiffs may

7   attempt to use deposition testimony and video in their opening statement that is not admissible

8   because the individuals whose depositions were given are not admissible under Federal Rule of

9   Civil Procedure 32, or for other reasons, such as because the statements contain inadmissible

10  hearsay.  The City will present these evidentiary issues to the Court should they materialize, once

11  the City receives Plaintiffs' proposed opening statement demonstratives.

12        **B.    Issues to Be Addressed During Trial**

13        In addition to these issues which the Court will address prior to trial, the City anticipates

14  the following evidentiary issues are likely to arise at trial.

15                    **1.    Wearing or Demonstration of Uniforms**

16        The Court granted the City's motion *in limine* on this issue, subject to a specific proffer

17  by Plaintiffs prior to any particular witness's appearance in court in uniform.  Transcript of

18  Proceedings, December 19, 2008 at 14:1–4, 15:10–15.  The City does not anticipate that

19  Plaintiffs can make any proffer regarding the wearing of a uniform that would make it necessary

20  for a uniform to be worn.  The Court already has ruled that donning and doffing of the uniform is

21  not compensable under the FLSA, nor, for the reasons discussed *supra* at 37-38 does the

22  continuous workday rule render this time compensable.  Accordingly, the City anticipates that it

23  will object to any proffer by Plaintiffs intended to justify Plaintiffs wearing of their police

24  uniforms during trial.

25                    **2.    Third Party Knowledge Testimony**

26        The City's Motion *in Limine* Number 10 sought to preclude Plaintiffs from making any

27  statements regarding the knowledge of others, without foundation.  The Court granted this

28  motion; thus, to the extent Plaintiffs' counsel attempts to elicit any such statements, the City will

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

62        CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
          DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   object.  The City also will move to strike any statements made by any testifying Plaintiff, that

2   someone must have or would have known he or she was working overtime.

3                    **3.        Common Knowledge Testimony**

4          The City's Motion *in Limine* Number 11 sought to preclude Plaintiffs from testifying as

5   to matters that are "common knowledge."  The Court granted this motion; thus, to the extent

6   Plaintiffs' counsel attempts to elicit any such statements, the City will object.  The City also will

7   move to strike any statements made by any testifying Plaintiff, that any particular practice is

8   "common knowledge."

9                    **4.        Subsequent Remedial Measures**

10         The Court reserved ruling on the City's Motion *in Limine* Number 15; accordingly, this

11  evidentiary issue may again arise in the event that Plaintiffs attempt to use the Department's

12  November 2007 announcement or the September 2008 Order as evidence of remedial measures.

13                   **5.        Rebuttal Expert Testimony**

14         Plaintiffs have not committed to limit the potential range of rebuttal expert witnesses to

15  those already disclosed and the still-unidentified rebuttal economics expert.  *See* Tr. Dec. 19,

16  2008 at 45:10–13.  The City anticipates that if Plaintiffs attempt to designate any further new

17  experts, the City will object.  The City will also object if Plaintiffs do not properly limit their

18  rebuttal expert's opinions and testimony to matters that are properly the subject of rebuttal

19  testimony.

20                   **6.        Full Examination of Witnesses When Called**

21         The Court has ruled that parties should plan to conduct full examination of a witness the

22  first time that he or she is called, so that the witness does not have to be re-called to testify.

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\663160.2

63

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT CITY OF SAN DIEGO'S TRIAL BRIEF

1   Plaintiffs have indicated that they may have a specific proffer regarding why this is not feasible

2   as to certain witnesses.  Tr. Dec. 19, 2008 at 98:18–21, 99:16–19.

3

4   Dated:  December 29, 2008                    LATHAM & WATKINS LLP

5                                                Office of the City Attorney
                                                 George Schaefer, Deputy City Attorney
6
                                                 By:  /s/ Colleen C. Smith
7                                                    Colleen C. Smith
                                                     colleen.smith@lw.com
8                                                Attorneys for Defendant the City of San Diego

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28