1  Peter H. Benzian (Bar No. 47456)
   Colleen C. Smith (Bar No. 231216)
2  Michael P. Pulos (Bar No. 246474)
   Aryn P. Thomas (Bar No. 247989)
3  Christopher S. Olson (Bar No. 260163)
   LATHAM & WATKINS LLP
4  600 West Broadway, Suite 1800
   San Diego, California  92101-3375
5  Telephone:  (619) 236-1234
   Facsimile:   (619) 696-7419
6
   George F. Schaefer (Bar No. 139399)
7  Deputy City Attorney
   Office of the City Attorney
8  1200 Third Avenue, Suite 1100
   San Diego, California  92101-4100
9  Telephone:  (619) 533-5800
   Facsimile:   (619) 533-5856
10
   Attorneys for Defendant
11 City of San Diego

12

13                    UNITED STATES DISTRICT COURT

14                 SOUTHERN DISTRICT OF CALIFORNIA

15 MARCUS ABBE, *et al.*          NOS. 05-CV-1629 & 06-CV-0538 DMS (RBB)

16            Plaintiffs,         DEFENDANT CITY OF SAN DIEGO'S
                                  MOTION PURSUANT TO RULE 50(a)(1) FOR
17      v.                        JUDGMENT AS A MATTER OF LAW;
                                  MEMORANDUM OF POINTS AND
18 CITY OF SAN DIEGO,             AUTHORITIES IN SUPPORT OF

19            Defendant.          Judge:     Hon. Dana M. Sabraw
                                  Ctrm:      10
20                                Trial:     January 5–30, 2009

21

22

23

24

25

26

27

28

SD\664259.8

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................ 1

II.     STANDARD OF REVIEW ........................................................ 1

III.    ARGUMENT ............................................................................. 2

A.      Plaintiffs Have Not Presented Sufficient Evidence to Establish
        Certain Activities Are Compensable "Work" ...................................... 3

        1.      Plaintiffs Have Presented Insufficient Evidence That
                They Were Required By the City to Load Their Patrol
                Cars Before Lineup ....................................................... 5

        2.      Plaintiffs Have Presented No Evidence that Patrol
                Officers Were Required to Arrive Early to Perform Pre-
                Shift Activities ............................................................. 8

        3.      Certain Activities for Which Plaintiffs Claim
                Compensation Are Excluded From Compensable Work
                by Department of Labor Regulations .................................. 11

                a.      Court Appearances ............................................... 11

                b.      Training Time ...................................................... 15

                c.      Uniform Maintenance ........................................... 19

B.      Portal-to-Portal Act ................................................................. 20

                a.      Home to Work Travel ............................................ 20

                b.      Preliminary and Postliminary Activities ..................... 21

C.      Plaintiffs Have Not Satisfied Their Burden to Prove That
        Certain Activities Are More Than *De Minimis* .............................. 23

                a.      Time Spent Responding to Emails and Phone
                        Calls at Home ..................................................... 24

                b.      Post-Shift Activities ............................................. 25

D.      Plaintiffs Have Not Put Forth Sufficient Evidence That the City
        "Suffer[ed] or Permit[ted]" These Activities ................................. 26

        1.      Plaintiffs Have Failed to Present Substantial Evidence
                That the City Created a Culture in Which Officers Were
                Discouraged From Reporting Overtime During the
                Relevant Time Period ................................................... 27

        2.      Plaintiffs Failed to Present Substantial Evidence of the
                City's Actual or Constructive Knowledge of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

i

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

Uncompensated Overtime Work............................................................... 31

    a.    Plaintiffs Prevented the City From Acquiring
Actual or Constructive Knowledge of
Uncompensated Overtime Work.................................................... 31

    b.    Plaintiffs Have Not Put Forth Sufficient
Evidence That City Officials or SDPD
Management Knew of Uncompensated
Overtime Activities...................................................................... 33

    c.    Even If the Knowledge of Sergeant–Supervisors
Is Sufficient, Plaintiffs Still Failed to Establish
the City's Knowledge ................................................................. 36

    d.    Plaintiffs Failed to Establish That *Any*
Supervisor Had Knowledge That Certain
Activities Were Performed Off-Duty........................................... 37

        (1)    Plaintiffs Presented No Evidence That
Supervisors Knew They Performed
"Other" Uncompensated Overtime Work
at Home ....................................................................... 38

        (2)    Plaintiffs Failed to Present Sufficient
Evidence That Supervisors Knew of
Plaintiffs' Claimed Post-Shift Activities ..................... 38

E.    Plaintiffs Have Not Established the Amount and Extent of
Overtime Worked as a Matter of Just and Reasonable Inference...................... 39

F.    Plaintiffs Have Failed to Present Sufficient Evidence to Prove
That the City's Violation of the FLSA, If Any, Was Willful .............................. 40

G.    Plaintiffs' Remaining Claims to Compensable Overtime Are
Severely Limited by 29 U.S.C. § 207(k) ........................................................... 42

    1.    Plaintiffs' Claims Should Be Limited to
Uncompensated Overtime in Excess of Three Hours Per
Seven-Day Work Period ........................................................................ 42

    2.    The "Eighty Percent" Rule Is Inapplicable, or Has Been
Satisfied................................................................................................ 45

H.    Plaintiffs Have Failed to Prove Their Regular Rate of Pay Was
Miscalculated ................................................................................................... 48

IV.    CONCLUSION................................................................................................. 49

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

ii

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abbey v. United States*,
   82 Fed. Cl. 722 (2008) ............................................................................23

*Adair v. City of Kirkland*,
   185 F.3d 1055 (9th Cir. 1999) ...............................................................47

*Adams v. United States*,
   65 Fed. Cl. 217 (2005) ............................................................................23

*Albanese v. Bergen County*,
   991 F. Supp. 410 (D.N.J. 1998) .............................................................40

*Alvarez v. IBP, Inc.*,
   339 F.3d 894 (9th Cir. 2003) ....................................................20, 23, 40

*Amos v. United States*,
   13 Cl. Ct. 442, 450 (1987) ......................................................................40

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .........................................................................1, 2, 7

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) .....................................................................3, 23, 39

*Baker v. Stone County*,
   41 F. Supp. 2d 965 (W.D. Mo. 1999) ...................................................47

*Barvinchak v. Indiana Regional Medical Ctr.*,
   No. 3:2006-69, 2007 WL 2903911 (W.D. Pa. Sept. 28, 2007)............19, 25, 26, 28

*Berry v. Bunnell*,
   39 F.3d 1056 (9th Cir. 1994) .................................................................1, 8

*Birdwell v. City of Gadsden*,
   970 F.2d 802 (11th Cir. 1992) ...............................................................47

*Blum v. Great Lakes Carbon Corp.*,
   418 F.2d 283 (5th Cir. 1969) .................................................................22

*Bobo v. United States (Bobo I)*,
   37 Fed. Cl. 690 (Fed. Cl. 1997) ............................................................24

*Bobo v. United States (Bobo II)*,
   136 F.3d 1465 (Fed. Cir. 1998)..............................................................23

*Brock v. City of Cincinnati*,
   236 F.3d 793 (6th Cir. 2001) .................................................................11

*Brumbelow v. Quality Mills, Inc.*,
   462 F.2d 1324 (5th Cir. 1972) ...................................................32, 39, 40

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

iii

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

*Bull v. United States (Bull I)*,
  68 Fed. Cl. 212 (2005) ...........................................................16, 18, 23, 24, 33, 40

*Chaney v. New Orleans Public Facility Management, Inc.*,
  179 F.3d 164 (5th Cir. 1999) .................................................................................2

*Chao v. Tyson Foods, Inc.*,
  No. 2:02-CV-1174-VEH, 2008 WL 2020323 (N.D. Ala. Jan. 22, 2008) ...............24

*Cherup v. Pittsburgh Plate Glass Co.*,
  350 F. Supp. 386 (W.D. Va. 1972) .......................................................................22

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) .............................................................................................11

*Clarke v. City of New York*,
  No. 06-CIV-11397, 2008 WL 3398474 (S.D.N.Y. June 16, 2008) ...................4, 11

*Christian v. City of Gladstone*,
  108 F.3d 929 (8th Cir. 1997) ...........................................................................47, 48

*Davis v. Food Lion*,
  792 F.2d 1274 (4th Cir. 1986) ..............................................................................32

*Downes v. Volkswagen of America, Inc.*,
  41 F.3d 1132 (7th Cir. 1994) .................................................................................2

*Dunlop v. City Electric, Inc.*,
  527 F.2d 394 (5th Cir. 1976) ...................................................................20, 22, 23

*Fletcher v. Universal Tech. Institute, Inc.*,
  No. 6:05CV585 ORL31DAB, 2006 WL 2297041, 152 Lab. Cas. (CCH) P35,156
  (M.D. Fla. June 15, 2006) .....................................................................................30

*Forrester v. Roth's I.G.A. Foodliner, Inc.,,*
  646 F.2d 413 (9th Cir. 1981) ..............................................................................31

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  574 F. Supp. 630 (D. Ore. 1979)...........................................................................39

*Gaylord v. Miami-Dade County*,
  78 F. Supp. 2d 1320 (S.D. Fla. 1999) ...................................................................32

*Hangarter v. Provident Life & Accident Insurance Co.*,
  373 F.3d 998 (9th Cir. 2004) ..................................................................................1

*Hazen Paper Co. v. Biggins*,
  507 U.S. 604 (1993).........................................................................................40, 42

*Hellmers v. Town of Vestal*,
  969 F. Supp. 837 (N.D.N.Y. 1997).....................................................19, 22, 24, 40

*Hesseltine v. Goodyear Tire & Rubber Co.*,
  91 F. Supp. 2d 509 (E.D. Tex. 2001) ....................................................................23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

iv

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

*Holzapfel v. Town of Newburgh,*
   145 F.3d 516 (2d Cir. 1998)........................................................................4, 8, 9

*Holzapfel v. Town of Newburgh (Holzapfel II),*
   950 F. Supp. 1267 (S.D.N.Y. 1997)..................................................................33

*Huss v. Huntington Beach,*
   317 F. Supp. 2d 1151 (C.D. Cal. 2000) ...........................................................12

*IBP, Inc. v. Alvarez,*
   546 U.S. 21 (2005).....................................................................................20, 22

*Imada v. City of Hercules ("Imada II"),*
   138 F.3d 1294 (9th Cir. 1998) .........................................................................21

*Jackson v. Air Reduction Co.,*
   402 F.2d 521 (6th Cir. 1968) ...........................................................................22

*Jackson v. City of San Antonio,*
   No. SA-03-CA-0049-RF, 2006 WL 2548545 (W.D. Tex. Aug. 31, 2006) ...............16, 18, 19

*Johnson v. RGIS Inventory Specialists,*
   554 F. Supp. 2d 693 (E.D. Tex. 2007)...........................................................4, 11

*Kavanagh v. Grand Union Co.,*
   192 F.3d 269 (2d Cir. 1999).............................................................................21

*Lamon v. City of Shawnee,*
   972 F.2d 1145 (10th Cir. 1992) ................................................................4, 11, 47

*Lee v. Coahomoa County,*
   937 F.2d 220 (5th Cir. 1991) ...........................................................................47

*Leone v. Mobil Oil Corp.,*
   523 F.2d 1153 (D.C. Cir. 1975) ..................................................................3, 4, 11

*Lewis v. City of Irvine,*
   899 F.2d 451 (6th Cir. 1990) .............................................................................1

*Lindow v. United States,*
   738 F.2d 1057 (9th Cir. 1984) .........................................................4, 5, 11, 23, 24

*Lockwood v. Prince George's County,*
   58 F. Supp. 2d 651 (D. Md. 1999)....................................................................40

*Lytle v. Household Manufacturing, Inc.,*
   494 U.S. 545 (1990).........................................................................................1

*Maciel v. City of Los Angeles,*
   569 F. Supp. 2d 1038 (C.D. Cal. 2008) .......................................................33, 36

*McClean v. Crabtree,*
   173 F.3d 1176 (9th Cir. 1999) ...........................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

v

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

*McGrath v. City of Philadelphia*,
   864 F. Supp. 466 (E.D. Pa. 1994) .................................................................47

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1998)......................................................................40, 41, 42

*Mills v. State of Maine*,
   839 F. Supp. 3 (D. Me. 1993) ..............................................................46, 47

*Nardone v. General Motors, Inc.*,
   207 F. Supp. 336 (D.N.J. 1962) ................................................................24

*Newton v. City of Henderson*,
   47 F.3d 746 (5th Cir. 1995) ................................................32, 33, 38, 29

*Pforr v. Food Lion, Inc.*,
   851 F.2d 106 (4th Cir. 1988) ....................................................................2

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000).................................................................................1

*Reich v. Gateway Press*,
   13 F.3d 685 (3d Cir. 1994)......................................................................40

*Reich v. New York City Transit Authority*,
   45 F.3d 646 (2d Cir. 1995).................................................................22, 24

*Rudolph v. Metropolitan Airports Commission*,
   103 F.3d 677 (8th Cir. 1996) ..................................................11, 12, 14, 15

*Smith v. Aztec Well Servicing Co.*,
   321 F. Supp. 2d 1234 (D. N.M. 2004) .....................................................4, 11

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*,
   321 U.S. 590 (1944)..............................................................................3, 8

*Trans World Airlines, Inc. v. Thurston*,
   469 U.S. 111 (1985)................................................................................42

*Treece v. City of Little Rock*,
   923 F. Supp. 1122 (E.D. Ark. 1996) ..........................................................23

*Walling v. Woodruff*,
   49 F. Supp. 52 (M.D. Ga. 1942) ...............................................................39

*Whitaker v. Pacific Enterprises Oil Co. (USA)*,
   956 F.2d 1170 (10th Cir. 1992) ................................................................30

## FEDERAL STATUTES

29 C.F.R. § 553.211(a).................................................................45, 46, 47

29 C.F.R. § 553.212 ................................................................................46

29 C.F.R. § 553.221 ................................................................................21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

vi

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

29 C.F.R. § 778.217 ...................................................................................................19

29 C.F.R. § 785.23 ...............................................................................................11, 12

29 C.F.R. § 785.27 ...............................................................................................15, 18

29 C.F.R. § 785.35 ...................................................................................................21

29 C.F.R. § 785.38 ...................................................................................................21

29 C.F.R. § 790.7(h) .......................................................................................4, 22, 36

29 U.S.C. § 203(g) ...........................................................................................2, 3, 47

29 U.S.C. § 207(a)(1) .................................................................................................2

29 U.S.C. § 207(k) ............................................................................................. 
*passim*

29 U.S.C. § 254(a) ...................................................................................................20

29 U.S.C. § 255(a) ...................................................................................................40

Fed. R. Civ. P. 50 ..............................................................................................1, 2, 48

## MISCELLANEOUS SOURCES

Dep't of Labor W-H Adm. Op. No. 1589 (Sept. 12, 1985) .......................................15

Kevin O'Malley et al., *Federal Jury Practice and Instructions, Civil*, Fair Labor
Standards Act § 175.35, p. 656 (5th ed. 2001) ........................................................40

Proposed Rules, Dep't of Labor, W-H Div., RIN 1215-AB13, Updating Regulations
Issued Under the Fair Labor Standards Act, 73 FR 43654 (Jul. 28, 2008).........46, 47

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

vii

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    ## I.      INTRODUCTION

2            Pursuant to Federal Rule of Civil Procedure 50(a)(1), Defendant the City of San Diego

3    ("City") brings this motion for judgment as a matter of law, as Plaintiffs have finished their case-

4    in-chief and have been given a full opportunity to present all relevant evidence necessary to

5    prove their case.  As detailed below, there are several issues as to which Plaintiffs have failed to

6    present sufficient evidence from which a reasonable jury could conclude in Plaintiffs' favor.

7    Based on the evidence presented during Plaintiffs' case-in-chief, the City is entitled to judgment

8    as a matter of law as detailed in this memorandum of points and authorities.[1]

9    ## II.     STANDARD OF REVIEW

10           According to Rule 50 of the Federal Rules of Civil Procedure, "[i]f a party has been fully

11   heard on an issue during a jury trial and the court finds that a reasonable jury would not have a

12   legally sufficient evidentiary basis to find for the party on that issue, the court may:  (A) resolve

13   the issue against the party; and (B) grant a motion for judgment as a matter of law against the

14   party."  Fed. R. Civ. P. 50(a)(1).

15           A motion for judgment as a matter of law tests the sufficiency of the nonmoving party's

16   evidence to meet its burden of proof.  A Rule 50(a)(1) motion should be granted when the

17   evidence "permits only one reasonable conclusion."  *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th

18   Cir. 1994); *see also Lewis v. City of Irvine*, 899 F.2d 451, 454–55 (6th Cir. 1990).  In deciding a

19   motion for judgment as a matter of law, the court "should review all of the evidence in the

20   record."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  In doing so,

21   "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not

22   make credibility determinations or weigh the evidence."  *Id.*; *see also Lytle v. Household Mfg.,*

23   *Inc.*, 494 U.S. 545, 554–55 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51

24   (1986); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004).

25   _____

26   [1]       The City further anticipates that it will make a motion at the close of all evidence,
     pursuant to Federal Rule of Civil Procedure 50, for judgment as a matter of law with respect to

27   matters that the City will prove in its case-in-chief, including the amount of any offsets to which
     the City is entitled under 29 U.S.C. § 207(h) and its good faith efforts to comply with the FLSA.

28   Because this evidence will be presented during the City's case, a motion on these grounds would
     be premature at this time.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

1

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   In addition, the party with the burden of producing evidence on an issue or defense

2   essential to his case must produce "substantial evidence."  *E.g.*, *Chaney v. New Orleans Pub.*

3   *Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999) ("In order to create a jury question, there

4   must be a dispute in the substantial evidence, that is, evidence which is of such quality and

5   weight that reasonable and fair-minded men in the exercise of impartial judgment might reach

6   different conclusions."); *see also Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1139 (7th

7   Cir. 1994).  As such, a mere "scintilla" of evidence presented on an issue will not be sufficient to

8   prevent judgment as a matter of law.  *Liberty Lobby*, 477 U.S. at 252 ("[D]efendant in a run-of-

9   the mill civil case moves for summary judgment or for a directed verdict based on the lack of

10   proof of a material fact, . . . the mere existence of a scintilla of evidence in support of the

11   plaintiff's position will be insufficient . . . ."); *see also Chaney*, 179 F.3d at 167.

12   Finally, under Rule 50, parties may seek, and the court may grant relief on an issue-by-

13   issue, claim-by-claim, or defense-by-defense basis.  *See* Fed. R. Civ. P. 50, advisory committee

14   note 1993 ("[J]udgments as a matter of law in jury trials may be entered against both plaintiffs

15   and defendants and with respect to issues or defenses that may not be wholly dispositive of a

16   claim or defense.").

17   In this case, Plaintiffs have failed to put forth legally sufficient evidence on numerous

18   issues.  Because the jury could only reach one reasonable conclusion regarding these issues, the

19   City is entitled to judgment as a matter of law with respect to these issues.

20   **III.   ARGUMENT**

21   In order to prevail on their FLSA claims, each Plaintiff must demonstrate:  (1) that the

22   City was the Plaintiff's employer; (2) that the Plaintiff actually worked compensable overtime

23   without compensation; and (3) the amount and extent of overtime worked.  Fifth Circuit Model

24   Jury Instruction 11.1 (Fair Labor Standards Act); Eleventh Circuit Model Jury Instruction 1.7.1

25   (Fair Labor Standards Act); *see also* 29 U.S.C. §§ 203(g), 207(a)(1), 216; *Pforr v. Food Lion,*

26   *Inc.*, 851 F.2d 106, 109 (4th Cir. 1988).  With regard to the first element, the City does not

27   contest that it acted as each Plaintiff's "employer," in a general sense, during the times relevant

28   to this lawsuit.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

2

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    To satisfy the second element, each Plaintiff must meet three burdens.  First, the Plaintiff

2    must demonstrate that the City "employ[ed]" him, *i.e.*, that the City "suffered or permitted" the

3    Plaintiff to "work."  Second, the Plaintiff must demonstrate that the activity is not excluded as

4    "preliminary" or "postliminary" under the Portal-to-Portal Act.  Third, the Plaintiff must

5    demonstrate that time spent engaged in the activity was not *de minimis*.  Only if all of these

6    burdens are met might the Plaintiff then be entitled to compensation for the particular activity, if

7    no affirmative defense applies.

8    If any Plaintiff establishes that he actually worked compensable overtime, then he must

9    satisfy the third element by also proving the amount and extent of overtime worked.  If the

10   Plaintiff is unable to produce evidence of the overtime hours worked using the employer's

11   records, the Plaintiff may meet this burden of proof by showing that the City failed to keep

12   accurate and complete records of all hours worked.  *See Anderson v. Mt. Clemens Pottery Co.*,

13   328 U.S. 680, 687 (1946).  Only if the Plaintiff makes this showing, may he establish hours

14   worked by "just and reasonable inference."  *Id.*

15   As detailed below, Plaintiffs have failed to satisfy these three elements of the FLSA with

16   respect to all of their claims, or at the very least, with respect to certain portions of their claims.

17       **A.    Plaintiffs Have Not Presented Sufficient Evidence to Establish Certain
               Activities Are Compensable "Work"**

18

19   Under the FLSA, the City must compensate each Plaintiff for any activity for which it

20   "employ[ed]" him.  To "employ" is defined as "to suffer or permit to work."  29 U.S.C. § 203(g).

21   Thus, in order to merit compensation, each Plaintiff must demonstrate that each and every

22   activity for which he is claiming compensation was (1) "work" (2) that the City "suffer[ed] or

23   permit[ted]."

24   Though "work" is not defined in the FLSA itself, the Supreme Court has defined "work"

25   as any (1) physical or mental exertion (whether burdensome or not), (2) controlled or required by

26   the employer, and (3) pursued necessarily and primarily for the benefit of the employer and its

27   business.  *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944);

28   *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1162 (D.C. Cir. 1975).  Each of these requirements

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

3

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

must be satisfied for an activity to qualify as "work."  The City does not dispute the first prong; the activities Plaintiffs claim to have performed require some modicum of physical or mental exertion.

In order to demonstrate that the claimed activity is "controlled or required" by the City, however, the activity must be either:  (1) an activity that the City controlled, *i.e.*, was performed at the City's direction; or (2) an activity that the City required the Plaintiff to perform, *i.e.*, was not performed of Plaintiff's own accord.  *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 523 (2d Cir. 1998) ("[A]n employee may perform a task that seems reasonable in the context of his work, but which the employer neither required nor controlled, and for which therefore the employee is not entitled to be paid.").

Moreover, each Plaintiff must prove that each activity he performed was "necessarily and primarily for the benefit of the employer."  The Ninth Circuit has interpreted this language to exclude from the definition of "work" any activity that is performed as a matter of personal preference or convenience.  *See Lindow v. United States*, 738 F.2d 1057, 1061 (9th Cir. 1984).  If a principal activity could be completed during scheduled shift hours but instead is performed outside of scheduled shift hours as a matter of a Plaintiff's own convenience or preference, this activity is not "work" because it is not done primarily for the City's benefit.  *See id.*; *see also Lamon v. City of Shawnee*, 972 F.2d 1145, 1158 (10th Cir. 1992); *Leone*, 523 F.2d at 1162; *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 713 (E.D. Tex. 2007); *Smith v. Aztec Well Servicing Co.*, 321 F. Supp. 2d 1234, 1237 (D. N.M. 2004), *aff'd* 462 F.3d 1274 (10th Cir. 2006); *Clarke v. City of New York*, No. 06-CIV-11397-GEL, 2008 WL 3398474, *8 (S.D.N.Y. June 16, 2008).  The test is not -- as Plaintiffs erroneously contend -- whether the activities in question have *some* benefit to the employer; rather, the question is whether the activities are performed outside of scheduled shift hours (as opposed to during shift hours) *primarily* for the benefit of the employer.

Finally, a Plaintiff's mere presence at the workplace does not render the time spent there "work," unless the Plaintiff's presence is required by the employer.  *See* 29 C.F.R. § 790.7(h) ("[W]hen the employee voluntarily arrives at his place of employment earlier than he is either

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

4

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   required or expected to arrive," this time is not compensable.).  Thus, if a Plaintiff arrives early

2   to the workplace or leaves late from the workplace because he enjoys spending time and/or

3   socializing at the station, or for any reason other than to engage in the mandatory performance of

4   a principal activity at the employer's behest, the time is not "work" and is not compensable

5   under the FLSA.  *See Lindow*, 738 F.2d at 1061.

6       **1.    Plaintiffs Have Presented Insufficient Evidence That They Were
             Required By the City to Load Their Patrol Cars Before Lineup**
7

8           During their case-in-chief, Plaintiffs presented insufficient evidence to support the theory

9   that time spent loading patrol cars before lineup is "work."  The uncontroverted testimony

10  establishes that the City never required any of the Plaintiffs to load their patrol cars before

11  lineup.[2]  Instead, the evidence presented during Plaintiffs' case-in-chief establishes that when

12  Plaintiffs loaded their patrol cars prior to lineup, they did so for their own benefit.[3]  For example,

13  Plaintiffs McCollough and Broxtermann acknowledged that at least part of the reason they

14  loaded their cars prior to lineup was to claim a newer patrol car, or a particular vehicle that they

15  personally preferred.[4]  Plaintiffs Friedman and McCollough spent time prior to lineup loading

16  _____

17  [2]     Trial Tr. 1285:3–13, Jan. 15, 2009 (Browder); Trial Tr. 1457:20–22, Jan. 20, 2009
    (Broxtermann); Trial Tr. 1521:9–1522:1, Jan. 20, 2009 (Shiraishi); Trial Tr. 1179:19–1180:5,
18  Jan. 14, 2009 (Larmour); Trial Tr. 1672:22–1673:7, Jan. 22, 2009 (Sarot); Trial Tr. 974:4–9, Jan.
    14, 2009 (Friedman).  *See also* Trial Tr. 172:20–21, Jan. 7, 2009 (Lansdowne) (Department
19  Policy 9.17 only requires that officers " to show up, in uniform, ready to go to work"); *id.* at
    87:19–24 (time spent checking cars for contraband is not compensable prior to shift because
20  "there is more than ample time for them to do it on duty when they report for shift"); Trial Tr.
    281:7–9, Jan. 8, 2009 (Cornicelli) ("we have had discussion that shift begins after lineup, and
21  [officers] should be loading their car then"); Trial Tr. 393:6–7, Jan. 8, 2009 (Battrick) ("[O]nce
    you are done with lineup, then you go get a car, and you load it up with your equipment and
22  stuff."); *id.* at 392:23–393:3; *id.* at 408:21–409:1 (no expectation to load car pre-shift); Trial Tr.
    1073:13–17, Jan. 14, 2009 (Cooper) (loading car is not for "benefit" of Department when done
23  pre-shift because it could have been done on duty, but if an officer submitted an overtime slip for
    pre-shift loaded "we would pay for it").

24  [3]     Trial Tr. 1220:21–22, 1235:13–14, Jan. 15, 2009 (Browder); Trial Tr. 1421:12–19, Jan.
    20, 2009 (Broxtermann).

25  [4]     Trial Tr. 654:15–23, Jan. 12, 2009 (McCollough) ("Every car in the Police Department
26  drives differently, and everybody gets used to different types of cars.  Some cars . . . don't drive
    as well as some of the cars that are brand new. . . .  So I, personally, and a lot of my officers who
27  work for me, would come in and load their car in advance so that they get the car that they
    want."); *id.* at 655:12–18 (explaining that officers selected cars early in part because some
28  computers are in "a little better shape than the others" and "officers would have a certain
    computer system that they would like"); Trial Tr. 1421:12–16, Jan. 20, 2009 (Broxtermann)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

5

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   their vehicles with extra equipment or weapons that they chose to carry above and beyond what

2   is required by the City.[5]

3          While some Plaintiffs testified that they loaded their vehicles prior to lineup, in part so

4   that they would be ready to respond to emergencies that might arise unexpectedly, Plaintiffs

5   presented no evidence that they are required to be fully prepared to respond to emergencies that

6   may arise during lineup or immediately thereafter.[6]  To the contrary, the evidence thus far

7   demonstrates that the Department schedules shifts with one-to-three-hour overlap in order to

8   ensure adequate coverage while oncoming officers are preparing to go out into the field.[7]

9   Indeed, if the City required its officers to be fully prepared to respond to emergencies within the

10  first twenty or thirty minutes of the scheduled shift, then officers who did not load their cars until

11  after lineup would have been reprimanded or disciplined for failing to do so.  Yet the evidence

12  presented confirms that none of the witnesses who have testified thus far are aware of any

13

14
_____

15  (explaining that the first thing he does is find a car because "its kind of first come, first served, so
    you want to find the newest car you can.  We don't take home cars like some other
16  departments do, so I find a car that is pretty good and I lay claim to it so I would put like a
    flashlight or something on it so everybody knows this is my car"); *id.* at 1456:8–1457:3
17  (Broxtermann) (puts a flashlight or some other piece of equipment in a car as he is walking on
    the way into the divisional station to pick out and claim a car that is "decent looking").  *See also*
18  Trial Tr. 410:22–411:3, Jan. 8, 2009 (Battrick) ("Q. Have you, personally, or have you observed
    officers arriving at the station before lineup and simply placing the gear or kit bag in the car in
19  order to claim it?  A. Yes.  Q. Do some officers arrive early so that they can claim a particular
    vehicle?  A. Yes."); Trial Tr. 320:12–24, Jan. 8, 2009 (Cornicelli) ("It could be a personal
20  preference.  It could be that they want to get one of the newer cars that are out there.").

    [5]     Trial Tr. 972:25–973:11, Jan. 14, 2009 (Friedman) (explaining that he chooses to carry
21  his own digital camera and his own measuring devices in his car and the Department does not
    require him to do so); Trial Tr. 737:8–13 (McCollough) (specifying equipment he carries, but
22  which is not required by the Department).

    [6]     Trial Tr. 1673:8–24, Jan. 22, 2009 (Sarot) (loaded his car prior to lineup -- and continues
23  to do so -- because he does not want to reduce his response time if an emergency arises during
    lineup, despite clear direction from the City that such activity is not required nor desired); Trial
24  Tr. 599:21–600:4, Jan. 12, 2009 (Bane) (admitting that the existence of primary response teams
    (known as "PRT") minimizes the potential for full-time SWAT officers being called out at 6:02
25  a.m. for "smaller incidents" and admitting that not once during Bane's tenure at SWAT could he
    recall the SWAT team being required to respond to an incident between 6:00 a.m. and 6:15
26  a.m.).

    [7]     Trial Tr. 1149:21–1150:70, Jan. 14, 2009 (Larmour) (first watch begins at 0600, second
27  watch begins at 1400, and third watch begins at 2100); Trial Tr. 858:23–859:3, Jan. 13, 2009
    (Friedman) (Traffic division operates three watches); Trial Tr. 370:17–29, Jan. 8, 2009 (Battrick)
28  (SDPD fields three watches plus specialized teams with different hours).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

6

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    instance in which any officer -- including any of the Plaintiffs -- has been counseled or

2    disciplined for loading his or her car after lineup (*i.e.*, during his or her scheduled shift).[8]

3           Moreover, none of the Plaintiffs testified that he arrived early to load a patrol car at the

4    instruction or command of a supervisor.[9]  Although Plaintiff Sarot contends that he loaded his

5    car before lineup because supervisors encouraged him to be ready to get into the field promptly

6    after lineup,[10] one or two isolated instances of encouragement do not present "substantial

7    evidence" that the City *required* its officers to arrive early for the purpose of loading their patrol

8    cars.  *See Liberty Lobby*, 477 U.S. at 252.  Indeed, there is substantial evidence that the contrary

9    is true:  the Department expects that officers will -- and many do -- load their cars after lineup.[11]

10   For instance, Plaintiff Larmour testified that he typically loaded his vehicle after lineup, and

11   Plaintiffs and other witnesses testified that they have observed other officers loading cars after

12   lineup.[12]

13   _____

14   [8]      Trial Tr. 1521:9–1522:1, Jan. 20, 2009 (Shiraishi); Trial Tr. 1179:25–1180:2, 1180:25–
     1181:10, Jan. 14, 2009 (Larmour); Trial Tr. 1672:17–18, Jan. 22, 2009 (Sarot); Trial Tr. 973:12–
15   21; 974:10–13, Jan. 14, 2009 (Friedman).

16   [9]      Nor did any of the Plaintiffs who are sergeants ever instruct the officers they supervised
     to arrive early to load a patrol car before lineup.  Trial Tr. 1180:25–1181:10, Jan. 14, 2009
     (Larmour) (testifying that he did not instruct his officers to load before lineup: "My only
17   requirement was they get out to the field and get out to their job as soon as possible.  I didn't
     want them talking in the lineup -- talking up in the parking lot, I wanted them to get out and get
18   in the field."); Trial Tr. 1672:19–21, Jan. 22, 2009 (Sarot).

19   [10]     Trial Tr. 1672:22–25, Jan. 22, 2009 (Sarot).

20   [11]     Trial Tr. 974:4–9, Jan. 14, 2009 (Friedman) ("Q. So then it wasn't necessary for you to
     load your car before lineup; you could have done that after? A. Well, I felt it was necessary, and
21   I always wanted to.  But I thought in the hierarchy of things that I needed to get done, that was
     the one thing that I could do after lineup and not feel that I was deficient at lineup for not being
22   done.").  *See also* Trial Tr. 86:23–87:2, Jan. 7, 2009 (Lansdowne) (loading and cleaning car is
     not required pre-shift and can be done on duty); Trial Tr. 298:9–15, Jan. 8, 2009 (Cornicelli)
23   (discussing the Chief's order that no work-related activities, including loading of vehicles, are to
     occur prior to the start of shift unless the officer has permission); *id* . at 320:12–15 (testifying
24   that officers under her command are not required to load cars prior to the start of shift); Trial Tr.
     1073:11–17, Jan. 14, 2009 (Cooper) ("Q.  Does loading a police car with police gear constitute
25   work? A.  Well, again, our position, under the FLSA, we would say that it is not work; however
     if it was submitted we would pay for it.").

26   [12]     Trial Tr. 1147:12–25, 1179:19–21, Jan. 14, 2009 (Larmour); Trial Tr. 1672:14–16, Jan.
     22, 2009 (Sarot); Trial Tr. 1458:9–11, Jan. 20, 2009 (Broxtermann); Trial Tr. 973:12–18, Jan.
27   14, 2009 (Friedman); Trial Tr. 395:9–11, Jan. 8, 2009 (Battrick).  *See also* Trial Tr. 392:23–
     393:3, Jan. 8, 2009 (Battrick) ("Q. You think an officer is ready to go 10-8 if they haven't loaded
28   their car? A. They are not ready to go 10-8 if they haven't loaded up their car.  They need to
     load up their car.  They do that after lineup.  After lineup, then they go and load up their car.");

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

7

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   Because Plaintiffs failed to present substantial evidence that the City required the officers

2   to arrive before lineup to load their patrol cars, no reasonable jury could conclude that the time

3   spent loading cars is "work" under the FLSA.  *See Berry*, 39 F.3d at 1057; *Tenn. Coal*, 321 U.S.

4   at 598; *Holzapfel*, 145 F.3d at 523.  To the extent that these Plaintiffs chose to load their cars

5   before lineup not because the City or the Department required them to do so, but rather out of

6   personal convenience, to reserve a particular car, or out of a self-imposed desire to be ready to

7   respond to an emergency that might occur during or immediate after lineup, these activities are

8   not "work" and are not compensable.  Any such time should therefore be excluded from

9   Plaintiffs' claimed overtime.

10             **2.     Plaintiffs Have Presented No Evidence that Patrol Officers Were
                        Required to Arrive Early to Perform Pre-Shift Activities**

11

12             Similarly, Plaintiffs have not presented substantial evidence that the City required its

13   non-supervisory patrol officers to arrive early to perform other claimed pre-shift activities,

14   including briefings with the prior shift, checking email, or other such activities.  Instead, the trial

15   testimony establishes that the City expected and required all of these activities to be completed

16   *on duty*, rather than prior to the start of the shift.[13]  In fact, the City's only requirement was that

17

18   *id.* at 408:25–409:1 ("There was no expectation that said you shall have your car loaded prior to
     shift.").

19   [13]     Trial Tr. 1181:11–16, Jan. 14, 2009 (Larmour) (never instructed officers to check email
20   before lineup); Trial Tr. 1675:4–7, Jan. 22, 2009 (Sarot) (same); *id.* at 1682:23–1683:1 (never
     instructed subordinates to log into MCT before shift); *id.* at 1669:17–21 (as patrol officer, never
21   told he was expected to be at work early before his shift); Trial Tr. 515:20–516:8, Jan. 12, 2009
     (Bane) (Captain Cornicelli informed Bane in September 2008 that the Department policy was
22   that "pre-shift work" was to be completed on duty; if one of Bane's officers worked pre-shift
     overtime, Bane's duty was to make sure the officer was paid overtime and then instruct the
23   officer not to do it again); Trial Tr. 1244:18–1245:7, Jan. 15, 2009 (Browder) (Browder checked
     his e-mails before lineup because he "always liked to be prepared" in case something happened
24   during lineup that necessitated his quick response, not because anyone instructed him to do so);
     Trial Tr. 657:4–658:3, Jan. 12, 2009 (McCollough) (officers do not walk directly from lineup
25   room to their car and into the field, instead they go to their lockers, get equipment, finish reports,
     respond to notices that come in the mail, and get information for subpoenas, then officers go into
26   the field).  *See also* Trial Tr. 88:24–25, Jan. 7, 2009 (Lansdowne) (pre-shift tasks are not
     authorized by the City because "we have clearly told [the officers] that they need to do on-duty
27   work on City time."); Trial Tr. 319:20–320:11, Jan. 8, 2009 (Cornicelli) (no requirement that
     officers must check e-mail prior to their shift); Trial Tr. 1049:5–9, Jan. 14, 2009 (Cooper)
28   ("However, if there was activities done prior to shift and we knew about that, and we would
     encourage -- we would make sure that the directive was that the employee should put in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

8

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1  patrol officers be dressed and ready to work at the time of lineup.[14]  Again, the Plaintiffs'

2  evidence uniformly establishes that officers performed these activities *after* lineup -- as opposed

3  to before lineup or "pre-shift" -- and were never disciplined nor reprimanded for doing so.[15]

4         Plaintiffs Broxtermann and Browder are patrol officers, and Plaintiffs Shiraishi and Sarot

5  were patrol officers (as opposed to sergeants) for some or all of the portions of the time periods

6  potentially covered by this lawsuit.  Defendant's Exs. 1121, 1122, 1128, 1127.  As to these

7  Plaintiffs, the evidence presented at trial establishes that Plaintiffs voluntarily engaged in these

8  activities outside their regular shifts despite the City's having undertaken numerous efforts to

9  discourage employees from incurring overtime.[16]  To the extent that a Plaintiff chose to engage

10  in certain activities outside of shift hours not because the job required him to do so, but rather

11

---

12  overtime; then, again, discontinue the practice.  To do this type of work once their shift
   started.").

13  [14]    Trial Tr. 929:11–15, Jan. 13, 2009 (Friedman) (noting that while some officers chose to

14  come into work early, "there are others that come in, you know, five to 10 minutes before lineup,
   and get dressed…").  *See also* Trial Tr. 172:20–21, Jan. 7, 2009 (Lansdowne) (Department

15  Policy 9.17 only requires officers "to show up, in uniform, ready to go to work"); *id.* at 169:14–
   20 (officers are not required to be aware of information disseminated electronically before they

16  report to lineup); Trial Tr. 409:2–8, Jan. 8, 2009 (Battrick) (the only requirement is that officers
   show up to lineup in their uniform and be "squared away," meaning they must look "sharp" and

17  have their duty belt on); Trial Tr. 621:16–23, Jan. 12, 2009 (Kanaski) (reviewing updates or
   announcements that have come in each morning "could be done when lineup was complete").

18  [15]    Trial Tr. 657:4–658:3, Jan. 12, 2009 (McCollough) (explaining that after lineup, officers
   normally do not go directly to their cars and into service, but instead would go back to their

19  lockers, get equipment, log on to their computers, finish reports from the day before, respond to

20  different types of notices that arrived in the mail, check subpoenas and pull up information on
   the subpoenas); Trial Tr. 1181:11–16, Jan. 14, 2009 (Larmour); *id.* at 1147:16–21 (". . . after
   lineup, I would go out in the field, but sometimes I would have paperwork, I wouldn't get out in

21  the field and monitor the radio.  I would get the vehicle loaded and be going out, generally, like I
   said, a few minutes after lineup, but it could be an hour or two if I had paperwork in the office.");

22  Trial Tr. 970:2–4, Jan. 14, 2009 (Friedman) ("Q. And you weren't disciplined on those occasions
   for not checking your email prior to shift, correct?  A. No, I was not.").

23  [16]    Trial Tr. 1283:22–1284:4, Jan. 15, 2009 (Browder); Trial Tr. 383:12–14, Jan. 8, 2009

24  (Battrick) ("I would go in there, and, you know, get in there early anyway, just because I like to
   get into work early."); Trial Tr. 749:4–14, Jan. 13, 2009 (McCollough) ("Q. Was that your

25  understanding, prior to the [September 2008 Cooper Memorandum] of what you could do? . . . .
   A. Well, my understanding was that you started your shift and you ended your shift.  If you

26  decided to do anything before the shift, you did it on your own. And if you decided to do things
   that were not part of a crime incident or something that you got involved in in the nature of

27  police work . . . then that was not overtime."); Trial Tr. 904:15–18, 1008:17–21, Jan. 13, 2009
   (Friedman) (stating that he normally gets to work early "only so that I can feel like I am fully

28  briefed, and I am not rushed," and also acknowledging that some days he may socialize for part
   of that time).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

9

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    because he preferred to do so or believed it to be convenient to perform these activities outside of

2    shift hours, these activities are not "work" and are not compensable.

3          Critically, Department Procedure 1.20 and numerous Divisional operations manuals

4    make clear that officers are not to work additional hours absent pre-approval for overtime

5    compensation.  Defendant's Exhibits 1026–1028, 1066.  The importance of avoiding

6    unnecessary overtime work was re-iterated in Department Order 03-09, which directs all

7    members of the Department to "closely monitor[]" and "avoid[] whenever possible" unnecessary

8    extended shift overtime.  Defendant's Ex. 1037.  Plaintiffs were aware of these efforts and

9    understood that in 2003, and at various other times, the City sought to control the amount of

10   overtime hours worked in light of the City's budgetary constraints.  At no time did the City direct

11   any of its officers to work overtime hours without compensation; instead, the City directed its

12   officers not to work overtime hours whenever those hours were unnecessary or could be

13   avoided.[17]

14          Despite the City's specific direction that its officers limit the amount of overtime worked,

15   and despite Plaintiffs' awareness that nearly all of the activities for which the patrol officer

16   Plaintiffs claim compensation are not required or expected to be completed outside of their

17   regular shift periods, some of them nevertheless elected to dedicate additional, off-duty time to

18   these activities for various reasons.  Under these circumstances, no reasonable juror could

19

20   _____
     [17]     *See also* Trial Tr. 497:21–498:18, Jan. 12, 2009 (Bane) ("Q. Does requesting overtime
21   change as the year progresses?  A.  Yes, it does.  As the overtime budget disappears, after four to
     five months into the calendar year, fiscal year, a directive will come out asking supervisors to be
22   a lot more careful as far as giving out overtime, to signing overtime slips, to generating activities
     that will generate overtime.  Q.  And at what point in the year would you say that that occurs?  A.
23   Just before the first of the year, just after.  Q.  Could you give me an example of what you mean
     by that?  A.  A lot of it has to do with patrol work and extended shift.  Unfortunately, with the
24   nature of our business, the things that we -- situations that we are put into don't fall into 9:00 to
     5:00 type of things.  If you run into someone that has been stabbed, someone that has been raped,
25   in the past you stayed with that person until you finished whatever you are doing with them,
     either take them to the hospital, finishing reports, those type of things.  Currently, if you run into
26   something like that towards the end of your shift, the supervisor will get involved and bring on
     someone else that is working that next shift to take that person for you so you don't incur the
27   overtime."); Trial Tr. 414:23–415:11, Jan. 8, 2009 (Battrick) (explaining that since 2002, the
     Department has not instructed officers to work overtime and then not report it, but instead has
28   given supervisors the word to be "careful with overtime," which means avoiding work that
     would require overtime compensation).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

10

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    conclude the evidence put forth by Plaintiffs thus far establishes time spent performing pre-shift

2    activities is compensable. *Lindow*, 738 F.2d at 1061; *see also Lamon*, 972 F.2d at 1158; *Leone*,

3    523 F.2d at 1162; *RGIS Inventory Specialists*, 554 F. Supp. 2d at 713; *Aztec Well Servicing Co.*,

4    321 F. Supp. 2d at 1237; *Clarke*,  2008 WL 3398474, *8.  Accordingly, the City is entitled to

5    judgment as a matter of law with respect to the pre-shift claims with regard to Plaintiffs

6    Broxtermann, Browder, Shiraishi, and Sarot, during the periods of time when those individuals

7    were of the rank of Patrol Officer II.

8              **3.      Certain Activities for Which Plaintiffs Claim Compensation Are**
                         **Excluded From Compensable Work by Department of Labor**
9                        **Regulations**

10            Department of Labor regulations interpreting the FLSA specify that certain types of

11   activities are non-compensable.  These regulations are entitled to substantial deference because

12   they are issued by the Department of Labor, the agency Congress impliedly has tasked with

13   interpretation of the statute.  *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467

14   U.S. 837, 842–44 (1984); *McClean v. Crabtree*, 173 F.3d 1176, 1181 (9th Cir. 1999).  Here, no

15   reasonable juror could conclude that certain "other uncompensated overtime" activities are

16   compensable under the FLSA because the substantial evidence presented at trial establishes that

17   (1) Plaintiffs already are adequately compensated pursuant to a reasonable, negotiated agreement

18   for time spent preparing for or related to court appearances, or (2) the activities are non-

19   compensable training or similar activities.

20              **a.      Court Appearances**

21            Under 29 C.F.R. § 785.23, a "reasonable agreement of the parties" may govern and

22   supplant an employer's duties to compensate employees under the FLSA, especially where it is

23   "difficult to determine the exact hours worked under the[] circumstances."  29 C.F.R. § 785.23;

24   *Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677, 679–81 (8th Cir. 1996) (holding that

25   § 785.23 applies beyond the context of "employees who live and perform all of their work on

26   their employer's premises or who work entirely at home" as the text might suggest); *see also*

27   *Brock v. City of Cincinnati*, 236 F.3d 793, 805 (6th Cir. 2001) ("With difficult factual problems

28   swirling around both the issue of what amounts to FLSA 'work' and the monitoring and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO
SD\664259.8

11

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1  calculation of time spent on such 'work,' we regard the § 785.23 reasonable agreement provision

2  as doubly appropriate . . . .").  Agreements like these -- which seek to alleviate the difficulty in

3  tracking specific hours -- are permissible under the FLSA as long as they reflect reasonable

4  compensation for the type of work at issue.  29 C.F.R. § 785.23; *Rudolph*, 103 F.3d at 680–81;

5  *Huss v. Huntington Beach*, 317 F. Supp. 2d 1151, 1157 (C.D. Cal. 2000).  The provisions of the

6  collective bargaining agreements between the City and the Plaintiffs' union contain just this type

7  of reasonable agreement concerning compensation for time spent by officers appearing in court

8  on their days off.

9       Each Memorandum of Understanding ("MOU") between the City and Plaintiffs' union,

10  the San Diego Police Officers' Association ("SDPOA"), in effect since 2002 has provided that:

11       Employees eligible for premium overtime that are required, as a

12       result of their employment responsibilities, to make court
appearances during otherwise off-duty hours, shall be treated as

13       follows:

14       A. The employee shall receive compensation at the rate of time and
one-half of his/her regular base rate for all time actually spent in

15       court (minimum of four hours), excluding court recess time. . . .

16

17  *E.g.*, Defendant's Ex. 1047-0046 (2003 MOU Art. 30).  That is, when officers are called to court

18  outside of their scheduled shift hours, they are paid at least four hours of overtime, regardless of

19  the actual amount of time they spend in court.  If an officer spends more than four hours in court,

20  he is compensated for the number of hours he actually spent in court.  *Id.*; *see also* Defendant's

21  Exs. 1026–1028 (Department Procedure 1.20 -- Overtime).  In their trial testimony, Plaintiffs

22  have acknowledged that they receive this minimum of four hours of premium compensation for

23  each court appearance during off-duty hours.[18]

24       The evidence presented at trial confirms that the MOU's four-hour court pay minimum is

25  reasonable compensation for officers' court appearances and related preparatory activities,

26

27  [18]     Trial Tr. 1280:21–1281:5, Jan. 15, 2009 (Browder); Trial Tr. 760:9–17, 763:11–764:7,

28  Jan. 13, 2009 (McCollough); Trial Tr. 1695:11–25, Jan. 22, 2009 (Sarot); Trial Tr. 1471:14–16,
Jan. 20, 2009 (Broxtermann).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

12

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    including obtaining and reviewing reports, preparing diagrams, or travel between the courthouse

2    and the location where any necessary, impounded evidence is maintained.[19]  Plaintiffs' trial

3    testimony indicates that the majority of the time, an in-court appearance takes less than four

4    hours.[20]  When a court appearance takes longer than four hours, Plaintiffs were paid premium-

5    rate overtime for all of the hours they actually spent in court.[21]

6          Plaintiffs argue that the MOU's four-hour court time provision is not reasonable

7    compensation for their court-related activities.  However, Plaintiffs have not presented any

8    evidence that the time spent preparing for court off-duty is so substantial that it renders the four-

9    hour minimum unreasonable.  Instead, Plaintiffs' testimony establishes that off-duty preparatory

10   activities are generally quick tasks, such as fielding phone calls from a deputy prosecutor or

11   pulling and reviewing arrest reports.[22]  These basic preparatory activities were taken into account

---

[19]     Trial Tr. 133:9–14, Jan. 7, 2009 (Lansdowne) (explaining, in response to a question pertaining to compensation for travel time associated with picking up evidence, "I believe that is why they get the minimums"); Trial Tr. 813:11–15, Jan. 13, 2009 (McCollough) ("Court callback pay is -- the City has made an agreement with the officers' association that if you show up for court, no matter the time it takes, *because of all the preparation for court*, that you get four hours of compensation at premium rate.") (emphasis added).

[20]     Trial Tr. 767:13–776:5, Jan. 13, 2009 (McCollough) (recounting five court appearances where McCollough spent .8, 2.25, 1.5, 1.6, and 2.1 hours in court, yet was paid for four hours, and admitting that these were "very typical" examples of his court experiences); Trial Tr. 1470:15–1471:9, Jan. 20, 2009 (Broxtermann) (most of his court appearances last between an hour to three-and-a-half hours, and that the time it takes to pull and review a report in preparation for these court appearances ranges from fifteen to twenty minutes); *see also* Defendant's Exhibits 1092–1097, 1099–1100, 1094A, 1099A, 1100A (overtime slips).

[21]     Trial Tr. 1280:21–1281:5, Jan. 15, 2009 (Browder); *see also* Defendant's Exhibits 1026–1028, 1047.

[22]     Trial Tr. 757:4–5, Jan. 13, 2009 (McCollough) ("Well, obviously I could get the report on duty, and I normally did."); Trial Tr. 1470:15–1471:9, Jan. 20, 2009 (Broxtermann) (the time it takes to pull and review a report in preparation for his court appearances ranges from fifteen to twenty minutes); Trial Tr. 1699:7–1700:22, Jan. 22, 2009 (Sarot) (testifying that for normal court appearance "5 to 30 minutes is probably within that time frame somewhere" for court preparation).  *See also* Trial Tr. 292:23–293:3, Jan. 8, 2009 (Cornicelli) ("Q. Have you ever had to prepare away from the job site for court? . . . A. I can usually do it when I am working or when I am getting ready to go to court."); *id.* at 94:9–12 (explaining that contact with district attorneys did not occur "very frequently" and "a lot of it was done when I was working" during "normal business hours.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

13

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   by the SDPOA and the City when they negotiated the MOU.  Moreover, several Plaintiffs

2   admitted that these preparatory activities can often be completed during their scheduled shift.[23]

3          In the absence of any evidence that these preparatory activities were extensively time-

4   consuming, the overwhelming evidence establishes that the four-hour minimum provision is

5   reasonable compensation for the time Plaintiffs claim to have spent preparing for and attending

6   court.  Based upon the evidence presented during Plaintiffs' case-in-chief, no reasonable juror

7   could conclude that the MOU provision regarding court pay is unreasonable.  *See Rudolph*, 103

8   F.3d at 684 (an employee could only be entitled to additional compensation under the FLSA for

9   activities subject to this type of agreement if the agreement provided an "unreasonably short

10  amount of time" to perform the tasks in issue and the employer knew the time was too short).

11  Accordingly, the City is entitled to judgment as a matter of law with respect to the following

12  Plaintiffs' claims for compensation for court-related activities: [24]

13          • Browder:  three hours per month, Trial Tr. 1255:12–15, Jan. 15, 2009;

14          • Broxtermann:  unable to specify what portion of his claim of two hours and

15              twenty minutes per week pertained to court-related time, Trial Tr. 1472:11–

16              1474:5, Jan. 20, 2009;[25]

17

18

---

19  [23]    Trial Tr. 757:4–5, Jan. 13, 2009 (McCollough) ("Well, obviously I could get the report
    on duty, and I normally did."); *id.* at 777:15–19 (certain pieces of evidence needed for court, like
20  traffic tickets, can be faxed over directly to the officer's office from Records); Trial Tr. 989:3–6,
    Jan. 14, 2009 (Friedman) ("Q. And so you have an opportunity to pull the reports that you need
21  to prepare for your court appearance while you are on duty?  A. Yes."); Trial Tr. 1698:14–17,
    Jan. 22, 2009 (Sarot) (testifying that it would be possible to obtain copies of reports or citations
22  in the days or weeks preceding the court appearance, presumably while on duty).  *See also* Trial
    Tr. 1697:21–1698:13, Jan. 22, 2009 (Sarot) (testifying that he could not think of a reason why he
23  didn't request lab reports while on duty, but that he "would often wait to the very last moment"
    to obtain a lab report "[b]ecause there is also a chance that if you call on your subpoena the night
24  before or even that morning, you get called off and not even have to go.").

25  [24]    Plaintiffs Bane, McCollough, and Shiraishi do not allege that they performed any
    uncompensated court-related activities.

26  [25]    Plaintiff Broxtermann's inability to specify how he determined that his "other"
27  uncompensated overtime claimed averaged two hours and twenty minutes per week, or to
    estimate what proportion of this claim pertains to court-related time, including his express
28  concession that doing so would be tantamount to "taking a guess," establishes that he has not
    proved the amount of overtime worked as a matter of just and reasonable inference.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

14

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

- Friedman:  an average of ten minutes per week, Trial Tr. 987:25–988:2, Jan. 14, 2009;

- Larmour:  approximately six to fourteen hours per year (seven to sixteen minutes per week), Trial Tr. 1160:18–1161:6, 1190:24–1191:1, 1192:22–1193:5, Jan. 14, 2009;[26]

- Sarot:  approximately twenty minutes, or eight percent of his weekly "other" claim of 248 minutes per week, Trial Tr. 1711:2–10, Jan. 22, 2009.[27]

### b.    Training Time

Under the FLSA, attendance at lectures, meetings, training programs, and similar activities need not be counted as working time if the following four criteria are met: "(1) Attendance is outside of the employee's regular work hours; (2) Attendance is in fact voluntary; (3) The course, lecture, or meeting is not directly related to the employee's job; and (4) The employee does not perform any productive work during such attendance." 29 C.F.R. § 785.27; *see also* Dep't of Labor W-H Adm. Op. (June 1, 1994); Dep't of Labor W-H Adm. Op. No. 1589 (Sept. 12, 1985).  Applying this regulation, courts have found a variety of activities -- many of which Plaintiffs are claiming in the present case -- to be non-compensable under the FLSA.  The evidence presented at trial conclusively establishes that time spent training to maintain weapons proficiency falls squarely within this Department of Labor Regulation, rendering this time non-compensable as a matter of law.

---

[26]    Although Plaintiff Larmour did not specify how much of his "other" claim pertained to court preparation, he identified only three miscellaneous, or "other" activities:  "Miscellaneous work could be preparation for trials, as far as in court.  I use -- also use it for range -- I use it for range time as far as going to the range.  The Department gave us the opportunity, as far as field units, to purchase our own AR-15's, which is a military type rifle, or 223 round. . . . There could be mending or taking care of uniforms.  Basically, that is about it."  Trial Tr. 1160:18–1161:6, Jan. 14, 2009 (Larmour).  He later testified that the range activities "could be a minimum of two to three hours," *id.* at 1190:24–1191:1, "a minimum of three times -- a minimum of, say, two times if you are just going to qualify, and two pre-qualify shoots" per year. *Id.* 1192:22–1193:5.  Accordingly, if between four and twelve hours per year of "other" time is devoted to range activities, court preparation must make up the balance of the six to fourteen hours.

[27]    Although Plaintiff Sarot was unable to testify with any specificity as to how he calculated his "other" claim, he testified that for court preparation and travel his "best estimate would be 8 percent."  Trial Tr. 1711:2–10, Jan. 22, 2009 (Sarot).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

15

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    Pursuant to Department of Labor regulations, off-duty time spent engaged in weapons

2    proficiency activities of Plaintiffs' own accord is not compensable.  *Bull v. United States (Bull I)*,

3    68 Fed. Cl. 212, 256 (2005); *see also Jackson v. City of San Antonio*, No. SA-03-CA-0049-RF,

4    2006 WL 2548545 at *14 (W.D. Tex. Aug. 31, 2006) (unpublished disposition) (holding off-duty

5    weapons training was not compensable).

6    In *Bull I*, the Federal Claims court analyzed regulations defining compensable off-duty

7    time spent in training to determine that off-duty weapons practice time was not compensable

8    under the FLSA.  68 Fed. Cl. at 256.[28]  Rejecting the claims of the plaintiff customs enforcement

9    officers to compensation for time spent preparing for and participating in marksmanship exams,

10   the court explained that an employee is entitled to compensation for training time only if "the

11   training is required by the agency and the employee's performance or continued retention in his

12   or her current position will be adversely affected by non-enrollment in such training."  *Id.*

13   (quoting 5 C.F.R. § 551.423(b)(1)).[29]  Applying this standard, the court determined that the

14   plaintiffs failed to establish that their employment would be adversely affected if they did not

15   participate in off-duty training as long as they passed their tests, as plaintiffs "could not point to a

16   single [officer] who failed every chance at qualification . . . such that termination resulted."  *Id.*

17   at 257.  Notably, the court concluded that "even though an officer's employment depends upon

18   passing qualification tests, *the existence of the tests is not a sufficient basis to convert off-duty*

19   *training into a requirement*."  *Id.* (emphasis added)

20   Additionally, the court found that plaintiffs failed to prove that the purpose of training

21   was to "improve their performance" in their current positions, as officers "are not principally

22   employed to use a firearm, nor is off-duty firearms training necessary to improve the day-to-day

23

---

24   [28]    While the *Bull I* court analyzed the plaintiffs' claims under the rubric of Office of
25   Personnel and Management (OPM) regulations, it recognized that "OPM and DOL have
     promulgated, in similar terms, regulations that define compensable off-duty time spent in
26   training[,]" *id.* at 255, and included the analogous DOL regulations throughout the decision.

     [29]    The analogous DOL regulations are concerned with whether attendance is "voluntary"
27   and whether an employee is "given to understand that his present working conditions or the
     continuance of his employment would be adversely affected by nonattendance."  *Id.* at n.44
28   (citing 29 C.F.R. § 785.28).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

16

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   performance of their work.  Rather, [the employer] required [officers] to maintain only a

2   minimum weapons proficiency, which plaintiffs did not establish to be high enough to qualify as

3   a skill unique to their employment." *Id.* at 257–58.  The court was also influenced by "the fact

4   that 'the method, location, and amount of off-duty [] training were left to the officers' complete

5   discretion[.]'" *Id.* at 259 n.49.  Indeed, the *Bull I* plaintiffs "enjoyed complete discretion to

6   decide how and when to practice with their weapons off duty.  If the officers chose to engage in

7   off-duty practice, [the employer] neither imposed nor proscribed a particular practice regimen."

8   *Id.*  Consistent with the *Bull I* opinion, off-duty weapons training is not compensable work.

9           Here, Plaintiffs' evidence presented at trial conclusively establishes that the time spent

10  engaged in weapons training is not compensable as a matter of law.  According to the evidence,

11  SDPD officers are required to attend thrice-yearly Department shoots, which coincide with the

12  shift rotation once every four months.[30]  Two of these shoots are for training; one is for

13  qualification.  SDPD officers are expected to, and typically do, engage in these activities while

14  on duty.[31]

15          Plaintiffs presented no evidence that officers are required, directed, or expected to engage

16  in off-duty weapons training.[32]  If an officer chooses to engage in off-duty shooting practice, he

17  has complete discretion to decide when, how, and where to do so; the City imposes no practice

18  regimen.[33]  In addition, the majority of officers "are not principally employed to use a firearm,"

19  and thus are obligated only to maintain a minimum level of shooting proficiency.  Officers in

20  assignments requiring a relatively high degree of shooting proficiency, such as the sniper

21  assignment held by Sarot, are provided with additional training while on duty or during

---

22  [30]     Trial Tr. 986:1–8, Jan. 14, 2009 (Friedman).

23  [31]     Trial Tr. 986:9–10, Jan. 14, 2009 (Friedman).

24  [32]     Trial Tr. 986:19–987:12, Jan. 14, 2009 (Friedman) ("Q.  And outside of those
    Department-wide shoots, is it up to you when you go practice?  A. Yes.  Q. The Department
25  doesn't tell you you have to go to practice on a specific day and a specific time?  A. That's
    correct….Q. And other than the three annual Department shoots, nobody from the Department
26  has directed you to go to the range to practice?  A. No…."); Trial Tr. 1477:8–13, Jan. 20, 2009
    (Broxtermann) (acknowledging it is up to him when and how often to engage in off-duty range
27  practice).

28  [33]     Trial Tr. 986:19–987:12, Jan. 14, 2009 (Friedman); Trial Tr. 1477:8–13, Jan. 20, 2009
    (Broxtermann).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

17

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   specially-scheduled, fully-compensated training periods.[34]  Moreover, Plaintiffs have not

2   presented any evidence that their retention by the Department is premised upon their ability to

3   pass the annual range certification, nor upon practicing for this certification off duty.

4           Additionally, although Plaintiff Larmour seeks compensation for time spent training on

5   the AR-15, this is an optional additional firearm that he chose to purchase.  Accordingly, neither

6   the expense of the rifle, nor the approximate four to twelve hours per year spent qualifying and

7   practicing on it, are compensable.[35]

8           Following the law as set forth by the Department of Labor Regulations and applicable

9   parallel authorities, no reasonable juror could find that time spent engaged in off-duty weapons

10  proficiency training is compensable under the FLSA.  29 C.F.R. § 785.27; *Bull I*, 68 Fed. Cl. at

11  256–57; *Jackson*, 2006 WL 2548545 at *14.  Accordingly, the City is entitled to judgment as a

12  matter of law with respect to the following Plaintiffs' claims for compensation for range training

13  activities:

14      •  Broxtermann:  unable to specify what portion of two hours and twenty minutes

15         per week pertained to range training time, Trial Tr. 1477:14–18, Jan. 20, 2009;[36]

16      •  Friedman:  claiming range practice as "other" uncompensated overtime, but did

17         not specify what portion of his "other" claim was for range practice, Trial Tr.

18         984:15–19 Jan. 14, 2009;

19      •  Larmour:  although the testimony is somewhat unclear, it appears that Larmour

20         stated he goes to the range for two to three hours between two and four times per

21         year, which is approximately five to fourteen minutes per week.  Trial Tr.

22         1190:24–1191:1, 1192:10–12, Jan. 14, 2009.[37]

23

---

24  [34]  Trial Tr. 1688:14–16, Jan. 22, 2009 (Sarot) (testifying that he has rifle training twice a month and SWAT training once a month).

25  [35]  Trial Tr. 1160:18–1161:6, 1190:24–1191:1, 1192:22–1193:5, Jan. 14, 2009 (Larmour).

26  [36]  Here again, Plaintiff Broxtermann failed to satisfy even the just and reasonable inference standard of *Mount Clemens*; indeed, he admitted "It is hard for me to kind of guesstimate, really. I just hate to guess and be completely off."  Trial Tr. 1477:14–18, Jan. 20, 2009.

27

28  [37]  Plaintiffs Bane, Browder, McCollough, Sarot, and Shiraishi do not allege that they are entitled to compensation for range-training activities.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

18

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

## c.  Uniform Maintenance

Plaintiff Larmour included uniform maintenance time as a part of his claimed other uncompensated activities.[38]  This time spent maintaining police uniforms is not "work" under the FLSA.  In addition, when there is a provision in the collective bargaining agreement that is meant to fully compensate for expenses associated with uniform maintenance, no additional compensation for expenses associated with uniform maintenance is required under the FLSA.[39]  In *Hellmers v. Town of Vestal*, 969 F. Supp. 837, 844 (N.D.N.Y. 1997), for instance, the court held that the plaintiff was "not entitled to overtime compensation for time spent cleaning and maintaining his police uniform" because there was a collective bargaining agreement which provided a stipend for "either dry cleaning or purchasing new uniforms."  Likewise, here, each MOU that has been in existence since 2002 includes a provision for an annual uniform allowance.  *E.g.*, Defendant's Ex. 1047-0040 (2003 MOU, Art. 26.II.B.).  Since 2003, this allowance has been $900 per year.[40]  This allowance is agreed-upon compensation for uniform replacement and maintenance costs that may have accrued to Plaintiff Larmour.  29 C.F.R. § 778.217.  Accordingly, the City is entitled to judgment as a matter of law regarding this portion of Plaintiff Larmour's claim.

---

[38]    Trial Tr. 1193:11–1194:5, Jan. 14, 2009 (Larmour) ("Q.  I believe in your declaration you were also claiming compensation for time spent cleaning and maintaining your uniform, correct?  A.  That would be a very, very, very minimum amount, as far as that would be, when you go and purchase uniforms you have to go through fittings.  And, at least for me, as tall as I am and things, you have to get it fitted.  That was the time I was considering.  And also the time I was considering for tailoring, as far as if I take a -- lost a button, got a rip.  Any number of things.  Q. at some period between August of 2002 and when you retired, Central Division had a laundering service, correct?  A.  Yes.  Q.  How long was that laundering service in effect?  A.  I can't give you the dates, but I used it.  Like I said, I am not taking into account laundry as far as getting my uniform laundered, I am taking into account, for my fee there, as far as keeping the uniform stitched properly or, you know, as far as buttons.  And also for fittings.").

[39]    In its Trial Brief, the City mistakenly argued that the uniform stipend was intended to constitute a reasonable agreement regarding *time* spent maintaining uniforms.  In fact, the MOU stipend is for reimbursement of *expenses* associated with costs incurred to maintain uniforms, including related services such as dry cleaning.

[40]    The 2000 MOU provided a uniform allowance of $700 per year.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

19

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

**B.    Portal-to-Portal Act**

If each Plaintiff establishes that he engaged in "work" that the City "suffered or permitted," each Plaintiff must also establish that his or her claimed work activities do not fall within the scope of the FLSA's Portal-to-Portal Act.  Under the Portal-to-Portal Act, the City is not liable to any Plaintiff for either:  "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, [or] (2) activities which are preliminary to or postliminary to said principal activity or activities."  29 U.S.C. § 254(a).

The "preliminary" and "postliminary" rules enunciated by the Portal-to-Portal Act were meant to protect employers, not to extend liability.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) (quoting 29 U.S.C. § 254(b)) ("The Portal-to-Portal Act of 1947 relieves an employer of responsibly for compensation employees for 'activities [that] are preliminary or postliminary to [the] principal activity or activities' of a given job.").  By default, activities performed before or after an employee's shift are not compensable; it is only when such activities are "integral and indispensable" to a principal activity, and are performed prior to or following the shift primarily for the benefit of the employer, that such activities are rendered compensable.  *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976).  "[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' under *Steiner*."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 40–41 (2005).

The Portal-to-Portal Act renders non-compensable certain activities for which Plaintiffs are claiming compensation.

**a.    Home to Work Travel**

Plaintiffs Browder and Sarot also claimed that they were due overtime compensation for certain non-court travel time.[41]  Under the Portal-to-Portal Act, this travel time is not compensable as a matter of law, irrespective of whether the travel took place on an otherwise

---

[41]    Trial Tr. 1255:18–20, Jan. 15, 2009 (Browder) (travel time to and from SWAT training); Trial Tr. 1621:18–1622:15, 1687:22–1689:14, 1712:13–21, Jan. 22, 2009 (Sarot) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

20

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1  scheduled day off.  29 C.F.R. §§ 553.221, 785.35, 785.38; *Kavanagh v. Grand Union Co.*, 192

2  F.3d 269, 273 (2d Cir. 1999); *Imada v. City of Hercules* ("*Imada II*"), 138 F.3d 1294 (9th Cir.

3  1998).  This includes travel time to and from trainings.  *Imada*, 138 F.3d at 1296–97.  Thus, no

4  evidence presented at trial could allow the jury to conclude that this time is compensable, and the

5  City is entitled to judgment as a matter of law with respect to this claimed time, as follows:

6  • Browder: 20 minutes per month, Trial Tr. 1255:18–20, Jan. 15, 2009.[42]

7  • Sarot:  2 hours 4 minutes per week, Trial Tr. 1712:13–21, Jan. 22, 2009.[43]

8  **b.     Preliminary and Postliminary Activities**

9  To avoid the Portal-to-Portal Act with respect to other types of activities, each Plaintiff

10  must prove that his claimed "pre-shift" and "post-shift" overtime does not include non-

11  compensable preliminary or postliminary activities.  "The words 'preliminary activity' mean an

12  activity engaged in by an employee before the commencement of his 'principal' activity or

---

[42]    Browder's claim seems to be that the travel time is compensable because he goes to the station to put his SWAT uniform on before driving to SWAT training.  Trial Tr. 1242:22–1243:13, Jan. 15, 2009 (Browder).  This is irrelevant to the analysis.  Moreover, Browder never stated that he was required to travel from the station to SWAT academy.  *Id.* at 1243:7–13.  In fact, Browder admitted that -- as with the Class B uniform -- Department Policy permits him to put on the SWAT uniform at home or away from the station.  *Id.* at 1286:13–16.

[43]    Sarot's claim pertains to travel to and from SWAT trainings at a variety of locations.  Trial Tr. 1621:18–1622:15, 1687:22–1689:14, Jan. 22, 2009.  According to Sarot, each trip was from forty-five to sixty minutes each way.  *Id.*  Sarot was unable to identify the total number of hours he seeks for such travel.  However, Sarot testified that such travel "has to be fifty percent or better" of his entire "other" estimate.  Trial Tr. 1712:13–21, Jan. 22, 2009 (Sarot).

Although Sarot also testified that he occasionally may stop to assist a motorist or other law enforcement agency while traveling to and from SWAT training, this testimony is insufficient to establish that he is entitled to overtime compensation for some portion of his travel time.  Sarot did not specify when, how often, or how much time he spent engaged in these types of activities.  Nor did he present any evidence that he informed an appropriate supervisor that he had performed such activities such that the City should be charged with constructive knowledge of that time.  The only evidence that he presented was that, on the occasions when a stop would make him late for a training session, Sarot would let a supervisor or trainer at the SWAT academy know that he was late because he had stopped to render assistance to someone on the way in.  Trial Tr. 1696:14–19, Jan. 22, 2009 (Sarot).  Even assuming this notification of unspecified supervisors were sufficient to establish constructive knowledge (which it is not), Sarot has not proven that he was not already compensated for this time because on these occasions, he would already have been compensated by the City for the time that his SWAT training was scheduled to begin.  If Sarot was late to the SWAT training because he had rendered roadside assistance, that time would be captured in his scheduled training, for which he arrived late.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

21

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   activities, and the words 'postliminary activity' mean an activity engaged in by an employee

2   after the completion of his 'principal' activity or activities."  29 C.F.R. § 790.7(b).  An activity

3   that is deemed to be either "preliminary" or "postliminary" to a principal activity is simply not

4   compensable.  Any activity that is necessarily performed before or after a principal activity and

5   that is "integral and indispensable" to the principal activity is considered a compensable

6   principal activity.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 40 n.8 (2005).  Accordingly, in order to

7   establish FLSA liability for these pre- and post-shift activities, each Plaintiff must prove that the

8   activities are so integral and indispensable to his principal activity (or activities) that the activity

9   is itself a principal activity which necessitates compensation.  If not, these activities are merely

10  preliminary or postliminary and are not compensable under the FLSA.

11         While there is no definitive standard for defining what is "integral and indispensable," it

12  is clear that "[t]he more the preliminary (or postliminary) activity is undertaken for the

13  employer's benefit, the more indispensable it is to the primary goal of the employee's work, and

14  the less choice the employee has in the matter, the more likely such work will be found to be

15  compensable."  *Hellmers v. Town of Vestal*, 969 F. Supp. 837, 843 (N.D.N.Y. 1997) (citing

16  *Reich v. New York City Transit Auth.*, 45 F.3d 646, 650 (2d Cir. 1995)).  In *Dunlop v. City Elec.,*

17  *Inc.*, the court held that the important inquiry is whether the activity is necessary to the business

18  and is performed by the employees, primarily for the benefit of the employer, in the ordinary

19  course of that business.  527 F. 2d 394, 401 (5th Cir. 1976); *see also Blum v. Great Lakes*

20  *Carbon Corp.,* 418 F.2d 283 (5th Cir. 1969); *Jackson v. Air Reduction Co.*, 402 F.2d 521 (6th

21  Cir. 1968).  Accordingly, when pre- and post-shift activities of the employees are not requested

22  by the employers and result in little, if any, benefit to the employer, the activities are non-

23  compensable preliminary or postliminary activities.  *Cherup v. Pittsburgh Plate Glass Co.*, 350

24  F. Supp. 386 (W.D. Va. 1972).  Plaintiffs ignore this legal standard and instead assume that an

25  activity that results in *any* benefit to the employer must be compensable, and cannot be treated as

26  a non-compensable preliminary or postliminary activity.  This is not the law.  The proper test is

27  whether the employer derives "significant benefit," not whether the employer is the "sole"

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

22

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1 | beneficiary.  *Treece v. City of Little Rock*, 923 F. Supp. 1122, 1125–27 (E.D. Ark. 1996); *see*

2 | *also Dunlop v. City Elec., Inc.*, 527 F.2d at 401.

3 |       Plaintiffs have not presented substantial evidence that the various pre- and post-shift

4 | activities claimed were "integral and indispensable" to a principal activity.  Therefore, these pre-

5 | and post-shift activities are "preliminary" and "postliminary," respectively, and are not

6 | compensable under the Portal-to-Portal Act as a matter of law.  Judgment in the City's favor

7 | therefore also should be granted on this ground.

8 |       **C.**    **Plaintiffs Have Not Satisfied Their Burden to Prove That Certain Activities Are More Than *De Minimis***

9

10 |       Even if Plaintiffs establish that a certain activity was "work" that was required by the

11 | City, they also bear the burden of demonstrating that time spent engaging in these activities was

12 | not *de minimis*.  Given the evidence presented at trial, Plaintiffs have not met this burden for

13 | certain claimed activities.

14 |       Under the *de minimis* doctrine, Plaintiffs "must show that the time spent engaged in the

15 | activity was not so 'insubstantial and insignificant' as to bar recovery."  *Abbey v. United States*,

16 | 82 Fed. Cl. 722, 728 (2008) (quoting *Bull I*, 68 Fed. Cl. at  225).  In determining whether time

17 | spent engaging in certain types of work is *de minimis*, three factors are relevant:  (1) the practical

18 | administrative difficulty of recording time; (2) the aggregate amount of compensable time; and

19 | (3) the irregularity or unpredictability of the additional work time.  *Lindow*, 738 F.2d at 1063–64;

20 | *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *Alvarez v. IBP, Inc.*,

21 | 339 F.3d 894, 903–04 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005); *Bobo v.*

22 | *United States (Bobo II),* 136 F.3d 1465, 1468 (Fed. Cir. 1998); *Hesseltine v. Goodyear Tire &*

23 | *Rubber Co.*, 391 F. Supp. 2d 509, 518–20 (E.D. Tex. 2001); *Adams v. United States,* 65 Fed. Cl.

24 | 217, 222 (2005); *Abbe v. City of San Diego*, Nov. 9, 2007 Order (Dkt. #265), at 11; *Bull I*, 68

25 | Fed. Cl. at 220–21 (citing *Anderson,* 328 U.S. at 693).

26 |       The practical administrative difficulty inquiry takes into account, among other things,

27 | (1) whether there is a "wide variance in the amount of time spent" by different employees to

28 | accomplish the same task; and (2) whether "the task of recording the time spent . . . exceed[s] the

LATHAM&WATKINS ᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

23

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   time expended in performance of the duties." *Lindow*, 738 F.2d at 1063–64; *accord Bobo v.*

2   *United States (Bobo I)*, 37 Fed. Cl. 690, 702 (Fed. Cl. 1997) ("[A]mong the plaintiffs who take

3   their dogs on relief breaks, the amount of time that these sessions take is minimal and wide

4   ranging -- spanning from five to 15 minutes per occurrence.  Creating a reliable system to chart

5   these relief breaks would pose great administrative difficulties to the INS."), *aff'd Bobo II*, 136

6   F.3d at 1468; *New York City Transit*, 45 F.3d at 653; *see also Bull I*, 68 Fed. Cl. at 226.

7          It is also important to note that existing law analyzes whether activities are *de minimis*

8   only on a daily basis.  *See, e.g.*, *Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2008 WL

9   2020323 *11 (N.D. Ala. Jan. 22, 2008) (unpublished disposition) (citing and discussing with

10  approval *Lindow*, 738 F.2d at 1062) ("Regardless of the number of employees for whom Plaintiff

11  seeks back wages, or the length of time for which such pay is sought, the proper focus is on the

12  aggregate amount of uncompensated time for each employee per day, not the total number of

13  employees over any length of time.  Moreover, any damages will be individual damages and will

14  vary from employee to employee.  Thus, it is not appropriate to aggregate the time spent by

15  multiple employees, and it is equally inappropriate to aggregate that time over a period longer

16  than a single workday."); *Bull I*, 68 Fed. Cl. at 226 ("The aggregate amount of compensable time

17  takes into account, 'the amount of time per occurrence dedicated to the activity in question.'")

18  (quoting *Bobo I*, 37 Fed.Cl. at 701, *aff'd Bobo II*, 136 F.3d at 1468); *Nardone v. Gen. Motors,*

19  *Inc.*, 207 F. Supp. 336, 340 (D.N.J. 1962) (rejecting the argument that claims over a two-year

20  period, in the aggregate, defeated *de minimis* defense as "misconstru[ing]" the *de minimis*

21  doctrine, under which "the basic tasks still are in terms of minutes per day").

22          Applying the correct *de minimis* factors, Plaintiffs have not presented sufficient evidence

23  to support a jury conclusion that various activities for which they claim overtime compensation

24  are more than *de minimis* in nature.

25              **a.      Time Spent Responding to Emails and Phone Calls at Home**

26          The City does not require or expect its non-supervisory officers to take and respond to

27  email or phone calls at home, and Plaintiffs put forth no evidence at trial to the contrary; hence,

28  this time is non-compensable under the FLSA.  *See, e.g.*, *Hellmers*, 969 F. Supp at 837, 842–

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

24

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   44.[44]  However, to the extent that some Plaintiffs claim that their individual supervisors expected

2   them to take and return non-emergency phone calls or emails at home, these Plaintiffs did not

3   present substantial evidence that the time spent engaging in these activities took more than a few

4   minutes each day (with the exception of Plaintiff Bane's purported SWAT-related phone calls);

5   rather Plaintiffs' limited testimony establishes a great variance in the amount of time these tasks

6   took on a daily basis, exacerbating the administrative difficulty of tracking these off-duty tasks.[45]

7   Plaintiffs also failed to present evidence to establish that the City and SDPD senior management

8   possessed actual or constructive knowledge that any individual officers spent more than a *de*

9   *minimis* amount of time engaged in such activities.  *See Barvinchak v. Indiana Regional Med.*

10  *Ctr.*, No. 3:2006-69, 2007 WL 2903911 (W.D. Pa. Sept. 28, 2007) (unpublished disposition).

11  Additionally, Plaintiffs' testimony establishes that when such phone calls were reported,

12  overtime was paid.[46]

13                    **b.    Post-Shift Activities**

14          Using the same standard discussed above, Plaintiff McCollough also did not present

15  substantial evidence that his claimed post-shift activities were anything more than *de minimis*.

16  Plaintiff McCollough testified that he spent an average of five minutes per day engaged in

17  various work-related activities.[47]  Thus, even if the jury concluded that all the evidence put forth

18  at trial regarding post-shift claims warrants a conclusion that Plaintiffs were engaged in required

19  "work," the daily time spent engaged in these activities is *de minimis* as a matter of law.

20

21

---

22  [44]     In fact, the evidence establishes that not even supervisory officers are expected to answer
    their Department-issued cell phone while off duty.  Trial Tr. 1668:19–23, Jan. 22, 2009 (Sarot)
23  ("I have never been specifically told that I am required to have the work cell phone with me at
    home, no.").

24  [45]     Trial Tr. 985:7–12, Jan. 14, 2009 (Friedman) ("Q.  Okay. And the amount of time that
    you spent taking phone calls or checking emails at home would vary from day to day?  A. Yes.
25  Q.  Did you keep any logs of these activities since the time this lawsuit was filed in 2004?  A.
    No, I did not."); Trial Tr. 1729:23–1730:9, Jan. 22, 2009 (Sarot) (phone calls at home take from
26  a couple to fifteen or twenty minutes at most).

27  [46]     Trial Tr. 1269:4–1273:9, Jan. 15, 2009 (Browder) (received four-hour callback overtime
    on several occasions for phone calls with district attorney).

28  [47]     Trial Tr. 734:21–735:1, Jan. 13, 2009 (McCollough).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

25

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1

2

**D.**      **Plaintiffs Have Not Put Forth Sufficient Evidence That the City "Suffer[ed] or Permit[ted]" These Activities**

3   Even if Plaintiffs are able to establish that a certain activity is "work," each Plaintiff must

4   also prove that the City "suffer[ed] or permit[ted]" him to engage in the work.  With respect to

5   the "suffer or permit" question, the Court ruled on summary judgment that "[t]he only potential

6   question of fact is whether Defendant was or should have been aware that Plaintiffs were not

7   reporting overtime actually worked."  Nov. 9, 2007 Order (Dkt # 265) at 13:3–5.  At that time,

8   the Court concluded a genuine issue of material fact remained regarding Plaintiffs' assertion that

9   the City created a culture in which officers were discouraged from reporting overtime less than

10   either thirty or sixty minutes.  *Id.* at 13:25–14:9.  However, Plaintiffs' case-in-chief failed to

11   offer substantial evidence that such a culture was sufficiently pervasive during the relevant

12   statute of limitations period (beginning no earlier than August 16, 2002) such to constitute actual

13   or constructive knowledge on behalf of the City.  This Court should therefore enter judgment as

14   a matter of law in favor of the City with respect to the "suffer[ed] or permit[ted]" prong.

15   Even if this Court allows Plaintiffs to exceed the scope of the only remaining material

16   factual issues following summary judgment, Plaintiffs still fail to meet the "suffer or permit"

17   prong for several reasons:  (1) Plaintiffs' own failure to report overtime precludes them from

18   arguing actual or constructive knowledge in the absence of evidence that the City directed them

19   to falsify their records; (2) Plaintiffs did not establish that the requisite City Officials or SDPD

20   management -- as opposed to only low-level sergeant–supervisors -- were aware that Plaintiffs

21   worked overtime without compensation; (3) even assuming that the knowledge of low-level

22   sergeant–supervisors is sufficient to bind the City, Plaintiffs at most have demonstrated that

23   supervisors observed them performing work-related activities, but have not made the necessary

24   showing that these supervisors knew that the officers were not reporting this work as overtime;

25   and (4) as to certain activities, such as activities performed at home and the various post-shift

26   activities, Plaintiffs have put forth no evidence that *any* supervisors knew these activities were

27   being performed.

28

LATHAM&WATKINSLLP   SD\664259.8
Attorneys At Law
San Diego

26

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1      **1.**    **Plaintiffs Have Failed to Present Substantial Evidence That the City**
                **Created a Culture in Which Officers Were Discouraged From**
2                 **Reporting Overtime During the Relevant Time Period**

3           Plaintiffs have not presented substantial evidence that the City created a culture in which

4 officers were discouraged from reporting overtime of less than a certain amount.  Plaintiffs

5 overwhelmingly testified that their overtime requests consistently were approved, regardless of

6 the amount of time they requested.[48]  Not a single Plaintiff testified that he was ever disciplined

7 for submitting overtime request for any length of time, or for any other reason whatsoever.  Trial

8 Tr. 1170:19–21, Jan. 14, 2009 (Larmour).  While Plaintiffs testified that a "culture" existed to

9 discourage the submission of overtime for less than one hour or less than one half-hour, Plaintiffs

10 were unable to identify the source of this culture.[49]  At best, Plaintiffs established that personal

11 choice or peer pressure -- as opposed to management-imposed pressure -- accounted for their

12 reluctance to submit overtime slips for under a certain amount of time.[50]

---

13    [48]     This is universally true but for one exception.  Officer Browder testified that Sergeant
14 Albert Massey rejected an overtime slip because it was for less than an hour.  However, since
that incident, Officer Browder admitted -- and the evidence showed -- that he submitted several
15 overtime slips for less than an hour and Sergeant Massey routinely approved them.  Trial Tr.
1265:16–24, 1268:6–1269:3, Jan. 15, 2009 (Browder).  Browder's  testimony therefore is
16 insufficient to constitute substantial evidence of an ongoing culture to discourage full overtime
reporting during the applicable statutory period.  *See also* Trial Tr. 414:20–22, Jan. 8, 2009
17 (Battrick) ("Q. Since 2001 or 2002, none of your overtime slips that you personally submitted
have been rejected, have they?  A. No, they have not."); Trial Tr. 805:19–22, Jan. 13, 2009
18 (McCollough) ("Q. since August of 2002, Sergeant McCollough, have you ever submitted an
overtime request that has been denied for any reason?  A. No, not that I recall."); Trial Tr.
19 1170:8–10, Jan. 14, 2009 (Larmour) ("Q.  Since August of 2002, you have never submitted an
overtime slip that was denied, have you?  A.  No."); Trial Tr. 1664:9–21, Jan. 22, 2009 (Sarot)
20 ("Q. . . Now, I believe you testified that you personally have submitted overtime slips in the
period since August 2002, correct?  A.   yes, I have. . . . Q.   Sure.  Since August 2002, have you
21 personally ever submitted an overtime slip to your supervisor and that slip was rejected or
denied?  A.  No.  It wasn't rejected or denied.  the most -- I never had one rejected or denied.");
22 Trial Tr. 925:9–12, Jan. 13, 2009 (Friedman) ("Q. Yes.  I don't recall you testifying that you
have ever submitted an overtime request that has been denied; is that correct?  A. That is
23 correct.").

   [49]     *See, e.g.*, Trial Tr. 886:10–20, Jan .13, 2009 (Friedman) ("I think, the most accepted
24 practice is -- the rule of thumb, 30, 30 minutes . . . .  Q. When you say the accepted practice, who
is that the accepted practice by? A. By the Department.  Q. What do you mean by the
25 Department? A. Well, I want to say my supervisors, as I have been coming through the
organization.  I am assuming that is the way it is.  I haven't heard anyone do anything
26 different.").

   [50]     Trial Tr. 1466:8–12, Jan. 20, 2009 (Broxtermann); Trial Tr. 1498:23–1499:8; 1529:18–
27 19, Jan. 20, 2009 (Shiraishi).  *See also* Trial Tr. 384:19–385:4, Jan. 8, 2009 (Battrick)
(explaining that he sometimes put in overtime requests for a half hour, but never under a half
28 hour, because "I never really saw anybody ever put in for less than half hour"); Trial Tr. 560:9–

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO
SD\664259.8
27
CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    Notably, Plaintiffs with supervisory roles overwhelmingly testified that they never

2    communicated to their subordinates that they should not submit requests for overtime if they

3    were less than thirty or sixty minutes.[51]  They also testified that they never denied overtime

4    requests because they were under thirty minutes or under sixty minutes.[52]  Sergeant Shiraishi

5    admitted that he consistently encouraged his officers to submit overtime, and even apprised them

6    that it was their right under the Fair Labor Standards Act.[53]  Sergeant Sarot admitted that he

7

8

9    _____

561:15, Jan. 12, 2009 (Bane) (recounting an incident from the 1990's where officers were told

10   not to report overtime and commenting that it was "pretty strong peer pressure"); Trial Tr.
1148:8–15, Jan. 14, 2009 (Larmour) ("A.  I came on in this Department in 1972.  In 1972 the

11   supervisors, the people I dealt with and my peers, from the academy, on through, if it was under
half an hour, you just didn't put in for overtime.  That was kind of the scale, you know.  If it is --

12   even at half an hour they didn't want you to put in for it.  Their, kind of, scale back then was an
hour.  And it was discouraged.  You wanted this job, you were kind of dedicated for it."); Trial

13   Tr. 890:5–19, Jan. 13, 2009 (Friedman) (explaining that he did not want to "nickel and dime" the
Department because he admired supervisors like Harvey Kitchell, who had a "strong work ethic,

14   and came in and did what it took to get the job done").

Plaintiff Sarot testified that he perceived certain comments from then-Lieutenant Bill

15   Maheu to be intended to dissuade officers from submitting overtime slips at SWAT academy in
1995.  Trial Tr. 1599:22–1600:14, Jan. 22, 2009.  Even taking this testimony at face value, this

16   testimony establishes a particular practice with respect to SWAT academies back in 1995 and
does not establish a widespread culture beyond that context.  Moreover, because the incident in

17   question occurred in 1995, ten years before the filing of this lawsuit, it certainly does not
establish that such a culture existed during the time period relevant to this lawsuit.

18   [51]   Trial Tr. 1524:3–17, Jan. 20, 2009 (Shiraishi); Trial Tr. 1171:15–21, Jan. 14, 2009

19   (Larmour); Trial Tr. 1667:1–7, Jan. 22, 2009 (Sarot); Trial Tr. 806:23–807:1, Jan. 13, 2009
(McCollough).  *Compare* Trial Tr. 889:1–2, 889:11–890:1, Jan. 13, 2009 (Friedman) (stating that

20   he had given a speech to his officers that he is "not a nickel and dime guy," but further stating
that "had someone submitted [an overtime slip for less than thirty minutes] to me, I don't think I

21   would have rejected it").

[52]   Trial Tr. 1171:18–21, Jan. 14, 2009 (Larmour); Trial Tr. 804:3–805:2, Jan. 13, 2009

22   (McCollough) (McCollough approved a .7 overtime slip on December 15, 2006); *id.* at 806:23–
807:1 (McCollough) (never instructed any officer whom he supervised not to submit an overtime

23   request for less than an hour); Trial Tr. 888:17–889:2, Jan. 13, 2009 (Friedman) (explaining that
no one has ever given him an overtime slip for less than 30 minutes, but if someone did, "I don't

24   think I would have rejected it"); *id.* at 926:12–14 (Friedman) ("Q.  And, as supervisor, have you
ever refused an overtime request for any reason?  A.  No.").  *See also* Trial Tr. 413:19–25, Jan. 8,

25   2009 (Battrick) ("Q.  You have never denied an overtime slip for work that you thought was
legitimate, have you?  A.  No.  Q.  In fact, you have only denied requests for overtime when you

26   thought the person did not actually perform legitimate compensable work, correct?  A.  That's
correct."); Trial Tr. 630:5–7, Jan. 12, 2009 (Kanaski) ("I don't believe I have ever denied

27   overtime, even when it wasn't preapproved.  I have signed slips that necessarily weren't
preapproved.").

28   [53]   Trial Tr. 1525:6–23, Jan. 20, 2009 (Shiraishi).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

28

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   encouraged his officers to submit overtime for all time they worked, and on occasion even filled

2   out the overtime slip and gave it to the officer to input the ending time and sign.[54]

3       While evidence has been presented at trial that suggests that officers may have been

4   discouraged from reporting all of their overtime many years ago, there is no evidence that this

5   occurred during the relevant time period beginning in August 2002, or even for years preceding

6   it.[55] The current SDPD Command has repeatedly instructed its supervisors and officers that

7   although unnecessary overtime should be limited, *all legitimate overtime requests must be*

8   *approved*.[56] No supervisory Plaintiff testified that he had ever been instructed to not approve

9   overtime for less than thirty or sixty minutes.[57]

10

11

---

12   [54]    Trial Tr. 1667:8–21, Jan. 22, 2009 (Sarot).

13   [55]    Trial Tr. 106:16–20, Jan. 7, 2009 (Lansdowne) ("When I came here, five and a half years
14   ago, I had heard that [telling officers not to put in overtime requests for an hour or half an hour]
     is something that happened back in the 80's."); Trial Tr. 322:7– 21, Jan. 8, 2009 (Cornicelli)
     (culture of discouraging overtime for less than an hour was the practice in 1981; under current
15   practice "we see overtime slips in increments of one-tenth of an hour."); Trial Tr. 385:23–
     386:19, Jan. 8, 2009 (Battrick) (only recollection of overtime slips denied occurred "years and
16   years and years ago," "back in, like, 1987"); Trial Tr. 763:2–8, Jan. 13, 2009 (McCollough)
     (acknowledging an incident where a Captain told him not to put in for overtime of less than 30
17   minutes took place in the 1980s, "probably '86."); Trial Tr. 1655:17– 24, 1664:17–20, Jan. 22,
     2009 (Sarot) (incident where overtime discouraged occurred in 1995, no overtime slips have
18   been denied since 2002);  Trial Tr. 925:13–20, Jan. 13, 2009 (Friedman) (incident of overtime
     slip being rejected occurred sometime between 1990 and 1995).

19   [56]    Trial Tr. 106:20–21, Jan. 7, 2009 (Lansdowne) ("But I put a stop to it."); Trial Tr.
20   107:16–23, Jan. 7, 2009 (Lansdowne) (If Sergeants or Captains told the Chief the policy of
     discouraging overtime was ongoing, "I would correct it" by "giv[ing] a very strict and direct
     order to get it done."); Trial Tr. 149:22–24, Jan. 7, 2009 ("Department policy is that … all
21   legitimate overtime shall be compensated."); Trial Tr. 181:4–6, Jan. 7, 2009 (Lansdowne) ("It is
     a statement I made from day one.  If we are doing police work, there is no restriction on
22   overtime.  None whatsoever."); Trial Tr. 321:16–20, Jan. 8, 2009 (Cornicelli) (Department
     policy with regards to officers staying past the end of their shift is that officers are entitled to
23   overtime.); Trial Tr. 925:21–926:4, Jan. 13, 2009 (Friedman) ("Q. I mean, no supervisor has
     specifically told you that you should not submit an overtime slip for less than 30 minutes since
24   August of 2002?  A. Not that I recall, no."); Trial Tr. 1059:14–24, Jan. 14, 2009 (Cooper)
     (current policy is that legitimate overtime worked without pre-approval should "absolutely" be
25   submitted and paid); *Id.* at 1086:18–19 ("The expectation has never been that you are to work
     without being paid.").

26   [57]    Trial Tr. 1171:1–17, Jan. 14, 2009 (Larmour); Trial Tr. 1666:17–21, Jan. 22, 2009 (Sarot)
27   ("No.  They never said I should not approve overtime slips."); Trial Tr. 806:19–22, Jan. 13, 2009
     (McCollough) ("[I]f an officer came to me with an overtime slip, even [if] it was less than an
28   hour[,] I would approve it.  There was no directive or order that says we would not approve it.
     We would approve it.").

LATHAM&WATKINS LLP   SD\664259.8
ATTORNEYS AT LAW
SAN DIEGO

29   CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
     DEFENDANT'S MOTION FOR JUDGMENT AS A
     MATTER OF LAW; MEMORANDUM OF PS & AS

1    Importantly, Plaintiffs consistently conflate an employer's "discouraging" its employees

2    from working overtime, with an employer's "discouraging" employees from requesting

3    compensation for overtime legitimately worked.[58]  The difference is crucial.  While the City is

4    not permitted to discourage officers from *reporting* overtime that is legitimately worked and

5    earned, the City is clearly permitted to manage its budget by discouraging officers from *working*

6    overtime in the first place.  *See, e.g.*, *Fletcher v. Universal Tech. Inst., Inc.*, No. 6:05CV585

7    ORL31DAB, 2006 WL 2297041, 152 Lab. Cas. (CCH) P35, 156, at *6 (M.D. Fla. June 15,

8    2006) (unpublished order) (there is no problem where employer attempted to discourage

9    overtime by telling employees they needed pre-approved authorization to work overtime, the

10   FLSA violation occurred where employer also told employees not to report legitimate overtime

11   worked on their time cards) (citing *Whitaker v. Pacific Enterprises Oil Co. (USA)*, 956 F.2d 1170

12   (10th Cir. 1992) (unpublished opinion) (an employer's discouraging overtime work does not, in

13   itself, constitute a violation of the FLSA).  Thus, while the City is well within its legal rights to

14   place restrictions on working overtime, much of the evidence Plaintiffs have submitted

15   erroneously suggests the contrary.  As such evidence is legally irrelevant, it should be

16   disregarded.

17

18

---

19   [58]   Trial Tr. 516:1–8, Jan. 12, 2009 (Bane) (explaining that in September 2008, Captain
Cornicelli told Bane that if an officer worked pre- or post-shift overtime, the officer would be
20   paid for that overtime and then instructed not to do it again); *see also* Trial Tr. 414:23–415:11,
Jan. 8, 2009 (Battrick) (explaining that since 2002, the Department has not instructed officers to
21   work overtime and then not report it, but instead has given supervisors the word to be "careful
with overtime," which means avoiding work that would require overtime compensation); Trial
22   Tr. 497:21–498:18, Jan. 12, 2009 (Bane) ("Q. Does requesting overtime change as the year
progresses?  A.  Yes, it does.  As the overtime budget disappears, after four to five months into
23   the calendar year, fiscal year, a directive will come out asking supervisors to be a lot more
careful as far as giving out overtime, to signing overtime slips, to generating activities that will
24   generate overtime.  Q.  And at what point in the year would you say that that occurs?  A.  Just
before the first of the year, just after.  Q.  Could you give me an example of what you mean by
25   that?  A.  A lot of it has to do with patrol work and extended shift.  Unfortunately, with the
nature of our business, the things that we -- situations that we are put into don't fall into 9:00 to
26   5:00 type of things.  If you run into someone that has been stabbed, someone that has been raped,
in the past you stayed with that person until you finished whatever you are doing with them,
27   either take them to the hospital, finishing reports, those type of things.  Currently, if you run into
something like that towards the end of your shift, the supervisor will get involved and bring on
28   someone else that is working that next shift to take that person for you so you don't incur the
overtime.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

30

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1

**2. Plaintiffs Failed to Present Substantial Evidence of the City's Actual or Constructive Knowledge of Uncompensated Overtime Work**

2

**a. Plaintiffs Prevented the City From Acquiring Actual or Constructive Knowledge of Uncompensated Overtime Work**

3

4  If the City had no knowledge that a Plaintiff engaged in overtime work, and the Plaintiff

5  failed to notify the City or otherwise deliberately prevented the City from acquiring knowledge

6  of the work, the City's failure to pay the Plaintiff for those hours is not a violation of the FLSA.

7  *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). As the Ninth

8  Circuit explained, "[a]n employer must have an opportunity to comply with the provisions of the

9  FLSA . . . . [W]here the acts of an employee prevent an employer from acquiring knowledge, . . .

10  the employer cannot be said to have suffered or permitted the employee to work in violation of

11  [the FLSA]." *Id.* at 414–15.

12  In *Forrester*, the Ninth Circuit affirmed summary judgment in favor of the employer

13  because the plaintiff in that case failed to raise an issue of material fact as to whether any official

14  of the company knew or should have known that he had been uncompensated for overtime work

15  he alleged he performed. *Forrester*, 646 F.2d at 414. In that case, the plaintiff admitted that he

16  did not mention the alleged unpaid overtime to any manager at the company; nor did he report

17  the overtime on his time sheets as per company policy and procedure. *Id.* The plaintiff in

18  *Forrester* knew that that overtime was to be reported on his time sheets and that the company

19  regularly paid all reported overtime. *Id.* In granting summary judgment in favor of the

20  employer, the Court held that based on these facts, the acts of the *employee* in failing to notify

21  the employer and failing to report the alleged overtime in accordance with company policy,

22  prevented the employee from later claiming that the employer suffered or permitted him to work

23  in violation of the FLSA. *Id.* at 414–15.

24  The evidence presented in Plaintiffs case-in-chief is indistinguishable from the evidence

25  in *Forrester*. Plaintiffs admit that they did not mention any unpaid overtime work to any

26  supervisor or manager in the SDPD, much less City officials or SDPD Command Staff.[59]

27

28  [59]  Trial Tr. 1193:8–10, Jan. 14, 2009 (Larmour); Trial Tr. 1201:7–10, Jan. 15, 2009
(Larmour);  Trial Tr. 1624:12–13, 1679:25–1680:14, 1690:23–1691:2, 1696:20–21, Jan. 22,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

31

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   Plaintiffs knew that overtime was to be reported on their time sheets and that the City regularly

2   paid all reported overtime.[60]  Because Plaintiffs, like the plaintiff in *Forrester*, did not include

3   their alleged uncompensated overtime hours on their timecards and did not notify the City of

4   these uncompensated hours before bringing this lawsuit, Plaintiffs cannot now claim that the City

5   suffered or permitted uncompensated overtime.

6          Having failed to notify the City or to comply with the City's overtime procedures,

7   Plaintiffs may not claim that the City had actual or constructive knowledge as a matter of law.

8   Indeed, numerous courts have followed *Forrester*'s logic in holding that a plaintiff fails to meet

9   the "suffer or permit" standard (*i.e.*, actual or construction knowledge) where the employee has

10  failed to notify the employer of time worked, either directly or by following the overtime

11  procedure that is in place.  *See*, *e.g.*, *Newton v. City of Henderson*, 47 F.3d 746, 748–49 (5th Cir.

12  1995) ("If we were to hold that the City had constructive knowledge that [Plaintiff] was working

13  overtime because [the City] had the ability to investigate whether or not [he] was truthfully

14  filling out the City's payroll forms, we would essentially be stating that the City did not have the

15  right to require an employee to adhere to its procedures for claiming overtime."); *Davis  v. Food

16  Lion*, 792 F.2d 1274, 1278 (4th Cir. 1986) (affirming judgment for employer where employee

17  falsified time records by underreporting time worked); *Brumbelow v. Quality Mills, Inc.*, 462

18  F.2d 1324, 1327 (5th Cir. 1972) (because "[t]here is no evidence that the company in any manner

19  encouraged workers to falsely report . . . the appellant was estopped and could not profit from

20  her own wrong in furnishing false data to the employer"); *Gaylord v. Miami-Dade County*, 78 F.

21  Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("An employer does not have knowledge of

22

23

24  2009 (Sarot); Trial Tr. 985:16–24, Jan. 14, 2009 (Friedman) (admitting supervisor would not be
    aware of activities being performed off-duty, unless supervisor was involved with the phone call
25  or email); Trial Tr. 1271:18–1273:9, Jan. 15, 2009 (Browder) (implicitly admitting that -- absent
    submitting an overtime slip for the time spent on the phone with the district attorney --
26  supervisor would not necessarily know he was receiving calls at home from the district attorney).

27  [60]     Trial Tr. 1193:8–10, Jan. 14, 2009 (Larmour); Trial Tr. 885:2–25, Jan. 13, 2009
    (Friedman); Trial. Tr. 570:9–13, Jan. 12, 2009 (Bane) ("Q.  …Did you understand that the City
28  and the Department were relying on the pay cards and the overtime slips, you submitted, to
    compensate you for your regular and overtime pay?  A.  Yes, I did.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

32

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   uncompensated overtime when an employee submits time sheets showing such overtime did not

2   occur.").

3        **b.      Plaintiffs Have Not Put Forth Sufficient Evidence That City
             Officials or SDPD Management Knew of Uncompensated
4            Overtime Activities**

5        Plaintiffs may prove that the City suffered or permitted their alleged overtime work only

6   by proving that the City's upper management, *i.e.*, City officials or SDPD Command Staff (those

7   (those officials holding the rank of Lieutenant or above) possessed the actual or constructive

8   knowledge.  *See, e.g., Bull I*, 68 Fed. Cl. at 224 ("The actual or constructive knowledge must be

9   attributable to someone with authority to bind the [employer]."); *Newton v. City of Henderson*,

10  47 F.3d 746, 749 (5th Cir. 1995) (evaluating constructive knowledge of the Chief of Police and

11  captains); *Maciel v. City of Los Angeles*, 569 F. Supp. 2d 1038, 1048 (C.D. Cal. 2008)

12  (determining that a sergeant's knowledge of alleged uncompensated overtime was insufficient to

13  satisfy the plaintiff officer's burden of proof because police sergeants do not qualify as

14  "management").

15       The knowledge of low-level sergeant–supervisors is insufficient to bind the City as a

16  matter of law.  *See, e.g., Maciel*, 569 F. Supp. 2d at 1048; *Newton*, 47 F.3d at 749; *Bull I*, 68 Fed.

17  Cl. at 224; *Holzapfel v. Town of Newburgh (Holzapfel II)*, 950 F. Supp. 1267 (S.D.N.Y. 1997).

18  In a 2008 decision, the Central District of California reasoned that management in the LAPD was

19  defined as "Captains and above," because -- unlike sergeants -- captains were covered by a

20  separate bargaining agreement than patrol officers.  *Maciel*, 569 F. Supp. 2d at 1048, n.10.

21  Moreover, as a matter of policy, it would be odd to bind the employer with the knowledge of

22  sergeants -- many of whom are also plaintiffs in this case.  To illustrate, Sergeant McCollough is

23  both a Trial Plaintiff and has been a supervisor of Officer Mensior and Officer Zdunich, who

24  were set to be Trial Plaintiffs but withdrew for personal reasons.  Sergeant Shiraishi now

25  supervises Officer Browder.  Numerous other Plaintiffs in the case supervise, and are supervised

26  by, other Plaintiffs.  To allow this would be to allow the perverse result of having sergeants be

27  both employers and employees in the same FLSA trial.  Plaintiffs have cited no precedent

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

33

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   permitting this anomalous result, nor have they cited any precedent supporting treatment of

2   sergeants–supervisors as management in the context of the SDPD.

3         For the vast majority of claimed activities, Plaintiffs presented no evidence that high-

4   ranking City officials or SDPD Command Staff had actual knowledge that officers were working

5   uncompensated overtime.[61]  To the contrary, at least some Plaintiffs admitted that the command

6   staff was not even present much of the time, due to shift rotations.[62]  Nor did Plaintiffs ever seek

7   to meet with Chief Lansdowne or any member of SDPD Command Staff regarding their

8   overtime complaints.[63]  This is true despite Chief Lansdowne's use of an open-door policy and

9   his provision of an anonymous method of reporting complaints or concerns.[64]  Nor did any

10   Plaintiff file a grievance with the City regarding the Department's overtime practices prior to the

11   initiation of this lawsuit.[65]  Absent any evidence that high-ranking SDPD officials had

12   knowledge that Plaintiffs were working uncompensated overtime, actual knowledge cannot be

13   imputed to the City.

14         Similarly, Plaintiffs have not presented substantial evidence that any management-level

15   officials or officers had constructive knowledge of the uncompensated overtime hours Plaintiffs

---

[61]    Trial Tr. 330:6–23, Jan. 8, 2009 (Cornicelli) (Captain Cornicelli was never aware of uncompensated overtime work performed by Plaintiffs Bane, Friedman, or McCollough when she was their commanding officer in Traffic Division).

[62]    Trial Tr. 1176:24–1177:7, Jan. 14, 2009 (Larmour); *see also* Trial Tr. 1465:2–17 (Broxtermann) (noting that on some occasions he was the last person in the station and no supervisors were present).

[63]    Trial Tr. 180:20–181:10, Jan. 7, 2009 (Lansdowne) (no patrol officer ever discussed being discouraged from submitting overtime slips with Chief Lansdowne, either formally or informally); *id.* at 220:15–20 (trial Plaintiffs never raised an overtime issue with the Chief).

[64]    Trial Tr. 179:25–181:2, Jan. 7, 2009 (Lansdowne) (explaining his open-door and anonymous "Ask the Chief" policies and noting that the only overtime questions he ever received in five years concerned the officers' ability to work more overtime and make more money).

[65]    The grievance Plaintiffs mentioned during the examination of Mr. Cooper was not germane to the issues in this lawsuit.  *See* Trial Tr. 1089:2–1090:19, Jan 14, 2009 (Cooper).  To the contrary, that grievance was filed by an officer regarding the provision in the MOU which limits officers to one four-hour minimum plus whatever additional time is spent in afternoon session if the court appearance pertains to one case, as opposed to two four-hour minimums if the officer has morning and afternoon appearances in two different cases.  The grievant in this particular instance ultimately accepted the decision by the Labor Relations Department denying the grievance.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

34

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    claim in this lawsuit.  All evidence Plaintiffs have presented establishes the Department's written

2    policies and instructions to its officers are to submit overtime requests for all compensable

3    overtime hours worked.[66]  SDPD management had no reason to believe any Plaintiff disobeyed

4    the written policies, especially given that Plaintiffs routinely requested, and the City routinely

5    paid, large quantities of overtime.[67]  The Plaintiffs admitted that they did not report this time to

6    their supervisors or to any member of the SDPD management.[68]

7         The only possible exception to the City's lack of knowledge relates to overtime worked at

8    SWAT academies or on other specific projects.  At trial, Plaintiffs presented a few Commanding

9    Officer Citations issued during the relevant time period which commended them for working

10   overtime hours without additional compensation.  These commendations support, to some

11   degree, Plaintiffs' assertion that supervisors were aware of some of their uncompensated

12   overtime hours.[69]  However, taking these commendations in the light most favorable to Plaintiffs,

13

---

14   [66]    Trial Tr. 91:10–12, Jan. 7, 2009 (Lansdowne) ("My understanding, if you direct them to
     work or you are aware of them doing a job that is required by the Department to do, that you
15   have to pay them."); Trial Tr. 885:2–25, Jan. 13, 2009 (Friedman) (explaining that under the
     Department's overtime procedure, anything outside of forty hours per week "would be
16   overtime," and further stating that "the policy is that you submit your overtime slip for actual
     time to the nearest tenth of an hour").

17   [67]    Trial Tr. 83:14–18, Jan. 7, 2009 (Lansdowne) ("There are policies and procedures within
18   the Police Department on what overtime is compensable.  The officers, I believe, follow those
     direction and rules, and supervisors make sure it gets done and supervised.  And reports should
19   be signed off by the supervisors."); Trial Tr. 222:8–11, Jan. 8, 2009 (Lansdowne) ("[I] very
     much felt that these are adults.  I trust them with a weapon and the ability, and the necessity, at
20   time, to use deadly force, and I ought to be able to trust them to follow orders."); Trial Tr.
     564:19–565:25, Jan. 12, 2009 (Bane) (admitting that from 2000 to 2007, Bane submitted and was
21   paid for "substantial" amounts of overtime); *see also* Defendant's Exhibits 1092-1097, 1099-
     1100, 1105, 1094A, 1099A, 1100A (overtime slips).

22   [68]    Trial Tr. 1193:8–10, Jan. 14, 2009 (Larmour); Trial Tr. 1201:7–10, Jan. 15, 2009
     (Larmour);  Trial Tr. 1624:12–13, 1679:25–1680:14, 1690:23–1691:2, 1696:20–21, Jan. 22,
23   2009 (Sarot); Trial Tr. 985:16–24, Jan. 14, 2009 (Friedman) (admitting supervisor would not be
     aware of activities being performed off-duty, unless supervisor was involved with the phone call
24   or email); Trial Tr. 1271:18–1273:9, Jan. 15, 2009 (Browder) (implicitly admitting that -- absent
     submitting an overtime slip for the time spent on the phone with the district attorney --
25   supervisor would not necessarily know he was receiving calls at home from the district attorney).

26   [69]    Although not relevant to this motion, which must be assessed exclusively by reference to
     evidence presented in Plaintiffs' case-in-chief, the City will present evidence during its case-in-
27   chief that establishes this language was included in commendations for many years as boilerplate
     language that would not necessarily lead a management-level supervisor to conclude that a
28   person had engaged in activities that would be compensable under the FLSA or under
     Department procedures.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

35

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   they all arose in the context of work performed on very specific projects, such as SWAT

2   academy trainings.  It is therefore impossible to infer from these few isolated commendations

3   that widespread knowledge existed with respect to other activities, such as the various pre-shift,

4   post-shift, and the remaining "other" activities that Plaintiffs are claiming.

5           c.      **Even If the Knowledge of Sergeant–Supervisors Is Sufficient,
                    Plaintiffs Still Failed to Establish the City's Knowledge**

6

7           Even assuming that knowledge of sergeant–supervisors is sufficient for Plaintiffs to meet

8   their burden, Plaintiffs case-in-chief still falls short of offering substantial evidence of actual or

9   constructive knowledge for three reasons:  (1) Plaintiffs at most established that they were

10  observed at the station premises, not that they were observed working; (2) even when Plaintiffs

11  claim supervisors observed them engaging in work activities, Plaintiffs did not establish that the

12  sergeants knew that they were working outside of their shift hours; and (3) even assuming

13  Plaintiffs did establish that supervisors knew they were *working*, Plaintiffs have not offered

14  substantial evidence that these supervisors knew this work was *unreported*.

15          First, the majority of Plaintiffs' evidence of knowledge demonstrates little more than

16  knowledge that Plaintiffs were present on work premises.[70]  As discussed above, a Plaintiff's

17  mere presence at the workplace does not render the time spent there "work," unless the

18  Plaintiff's presence is required by the employer.  *See* 29 C.F.R. § 790.7(h) ("[W]hen the

19  employee voluntarily arrives at his place of employment earlier than he is either required or

20  expected to arrive," this time is not compensable.).  It follows, therefore, that an employer's

21  knowledge of a Plaintiff's presence at the workplace is insufficient to establish liability.  In most

22  cases, Plaintiffs have offered little more than broad speculation that when supervisors observed

23

24  [70]     Trial Tr. 534:3–11, Jan. 12, 2009 (Bane) (explaining that in the Mounted Unit, the

25  Lieutenant "rarely" came around while Bane performed pre-shift activities); *id.* at 544:2–18,
    (noting that supervisors were "present" while Bane performed post-shift activities, but not

26  commenting on whether they knew exactly what activities Bane engaged in); Trial Tr. 1149:2–4,
    16–1150:12, Jan. 14, 2009 (Larmour) (occasionally interacted with supervisors pre-shift, but

27  during some watches they would not be there); *id.* at 1176:24–1177:7; Trial Tr. 1427:20–25, Jan.
    20, 2009 (Broxtermann) (when asked whether supervisors observed him conducting pre-shift

28  activities, responded only that he was "pretty friendly with a lot of the supervisors" and he would
    "say hi to them when I walk by").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

36

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1  them at the workplace that those supervisors *knew* Plaintiffs were engaged in work or work-

2  related activities.  This offering does not constitute substantial evidence.

3    Second, even when Plaintiffs were observed at work performing work-related activities,

4  the evidence demonstrates that supervisors had no idea whether Plaintiffs were performing those

5  activities on or off shift.  The evidence overwhelmingly demonstrates that sergeants and

6  lieutenants present at the station at the same time as Plaintiffs would not necessarily know

7  whether or not the Plaintiffs were on or off shift.  Plaintiffs testified that their schedules varied

8  and that it was common to "flex" their schedules for personal convenience (*i.e.*, to work an

9  adjusted schedule for the day, rather than their normal shift).[71]  The testimony demonstrates that

10  officers are given a wide latitude of autonomy and supervisors are not in the position to monitor

11  an officer's every action.

12    Third, and finally, assuming Plaintiffs have shown that supervisors knew they were

13  working and that they were doing so in addition to their regular shift (*i.e.*, working overtime),

14  Plaintiffs still failed to provide *any* evidence whatsoever that the supervisors knew that this

15  overtime was *unreported*.  As this Court clearly explained at summary judgment, "mere

16  knowledge that overtime is *worked* is not evidence of knowledge that such overtime was

17  *unreported*."  Nov. 9, 2007 Order (Dkt # 265), at 13:22–23 (emphasis original).  Assuming

18  Plaintiffs' case-in-chief provided substantial evidence that supervisors knew that Plaintiffs were

19  working overtime, no evidence whatsoever was elicited to establish that supervisors knew that

20  this overtime was unreported.

21      **d.**  **Plaintiffs Failed to Establish That *Any* Supervisor Had**

22          **Knowledge That Certain Activities Were Performed Off-Duty**

23    For certain claimed activities, Plaintiffs failed to present substantial evidence that *any*

---

24  [71]  Trial Tr. 1058:8–13, Jan. 14, 2009 (Cooper) (" . . . the problem is, if these aren't your

25  employees you may not have any reason to believe that they are here early.  You don't know

their shift, you don't know if they are flexing schedule, you don't know their schedule.  So it

26  might be difficult for a Sergeant who does not directly supervise those."); *see also* Trial Tr.

789:21–24, Jan. 13, 2009 (McCollough) (allows officers who work for him to flex their

27  schedules during a particular workweek to accommodate various personal matters); Trial Tr.

930:8–12, Jan. 13, 2009 (Friedman); *id.* at 993:22–994:3 (stating that he adjusted his own shift

28  hours on occasion and that he allowed the officers who work for him to do so on occasion as

well).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

37

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    supervisor had knowledge that Plaintiffs even performed these activities off-duty -- much less

2    that they failed to report it.  An employer cannot violate the FLSA where the it has no knowledge

3    of activities allegedly performed and the employee fails to inform anyone of his off-duty

4    activities.  *See Newton*, 47 F.3d at 749.

5                            **(1)    Plaintiffs Presented No Evidence That Supervisors
                                     Knew They Performed "Other" Uncompensated
6                                     Overtime Work at Home**

7            Plaintiffs presented no substantial evidence that the City had actual or constructive

8    knowledge of the Plaintiffs' claimed "other uncompensated overtime" for work they allegedly

9    performed at home or away from their workplaces.  Plaintiffs admitted that they never reported

10   this time to their supervisors or to a member of the SDPD management.  For example, Plaintiff

11   Friedman admitted that other than the times he exchanged email or a phone call with his

12   supervisor, she would not be aware of any other uncompensated work-related activities he may

13   have performed at home or away from the station.[72]  To the extent these activities were not

14   performed at the workplace, unless the Plaintiffs had reported the time to their supervisors or to

15   SDPD management, the City lacked actual or constructive knowledge that any Plaintiff was

16   engaged in such activities while off-duty.[73]

17                           **(2)    Plaintiffs Failed to Present Sufficient Evidence That
                                     Supervisors Knew of Plaintiffs' Claimed Post-Shift
18                                    Activities**

19           Plaintiffs' evidence presented at trial does not establish that the City had actual or

20   constructive knowledge of the Plaintiffs' claimed post-shift uncompensated overtime.  Plaintiffs

21   admitted that their supervisors would not always remain at the station after the end of a shift, and

22   that their supervisors would not necessarily know if and whether an officer had completed work-

23   related activities beyond his or her shift hours.  For example, Plaintiff Shiraishi admitted that he

24

25   ─────────────────

26   [72]    Trial Tr. 985:16–24, Jan. 14, 2009 (Friedman).  *See also* Trial Tr. 1193:8–10, Jan. 14,
     2009 (Larmour) (never sought compensation for time spent off-duty at the range with optional
27   AR-15 rifle); Trial Tr. 1696:12–19, Jan. 22, 2009 (Sarot) (supervisor would only know he had
     stopped to render assistance en route to SWAT training if he arrived late).

28   [73]    Trial Tr. 292:20–22, Jan. 8, 2009 (Cornicelli) ("Q. Have you ever seen narcotics officers
     have to prepare off duty for court? A. Have I personally seen that off duty?  No.").

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

38

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   did not inform his supervisors of his claimed "other uncompensated overtime" activities, and that

2   his supervisors were not present to observe him working outside of the regularly-scheduled shift

3   hours.[74]   Plaintiff Broxtermann further observed sometimes he was the last one in the station, and

4   no supervisor was present when he finished his reports.[75]   Supervisors implicitly acknowledged

5   that they would not always be in a position to know if the officers they supervised had submitted

6   and been paid for overtime, since the oncoming sergeants would be the ones to approve their late

7   reports and sign overtime slips.[76]

8          E.   **Plaintiffs Have Not Established the Amount and Extent of Overtime Worked
              as a Matter of Just and Reasonable Inference**

9

10          If any Plaintiff establishes that he actually worked compensable overtime, then he must

11   next prove the amount and extent of overtime worked.   If the Plaintiff is unable to produce

12   accurate evidence of the overtime hours he worked using the employer's records, the Plaintiff

13   may meet this burden of proof by showing that the City failed to keep accurate and complete

14   records of all hours worked.   *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687

15   (1946).   Only if the Plaintiff makes this showing, then he may establish the hours he worked by

16   "just and reasonable inference."   *Id.*

17          If the inaccuracy or incompleteness of the City's records is caused by the Plaintiff's own

18   failure to provide information to the City regarding the amount of overtime worked, then the

19   Plaintiff is responsible for inaccuracies in the records pertaining to him.   *See Newton v. City of

20   Henderson*, 47 F.3d 746, 749–50 (5th Cir. 1995); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d

21   1324, 1327 (5th Cir. 1972), relied upon in *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 574 F.

22   Supp. 630, 632 (D. Ore. 1979), *aff'd at* 646 F.2d 413 (9th Cir. 1981); *Walling v. Woodruff*, 49 F.

23

---

24   [74]     Trial Tr. 1518:21–1519:2, Jan. 20, 2009 (Shiraishi).

25   [75]     Trial Tr. 1465:2–17, Jan. 20, 2009 (Broxtermann).

26   [76]     Trial Tr. 1175:1–5, Jan. 14, 2009 (Larmour) (acknowledging that oncoming sergeant
     would be able to approve overtime for officers held over from prior shift); Trial Tr. 982:26–21,
27   Jan. 14, 2009 (Friedman) (will ask oncoming sergeant to "stop in and check on any of my
     officers still working on paper"); Trial Tr. 422:24–423:11, Jan. 8, 2009 (Battrick) (noting that
28   sometimes he would approve overtime the next day, "[o]r it would be, you know, whoever
     ultimately would sign that report").

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO
SD\664259.8
39
CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   Supp. 52, 55 (M.D. Ga. 1942).  In that case, the Plaintiff may not claim that the City's records

2   were inaccurate and incomplete, unless the Plaintiff can prove that the City instructed the

3   Plaintiff to falsify his time records to underreport overtime worked.  *See Brumbelow*, 462 F.2d at

4   1327.  Simply put, if the City has no records relating to overtime claims because the Plaintiff

5   failed to make claims of overtime, then the Plaintiff -- and not the City -- is responsible for the

6   inaccuracies and must produce competent evidence of overtime hours worked, *i.e.*, the Plaintiff

7   may not rely on the "just and reasonable inference" standard.[77]

8       **F.      Plaintiffs Have Failed to Present Sufficient Evidence to Prove That the City's
            Violation of the FLSA, If Any, Was Willful**
9

10      The normal statute of limitations for FLSA violations is two years.  29 U.S.C. § 255(a).

11   In order to extend the statute of limitations to three years, Plaintiffs must establish by a

12   preponderance of the evidence that violations of the FLSA were "willful."  *See id.*  Assuming

13   Plaintiffs have presented some evidence in their case-in-chief establishing violations of the

14   FLSA, Plaintiffs have not gone the extra step to present *any* evidence that the alleged violations

15   were willful.  Thus, Plaintiffs are at most entitled to the normal two-year statute of limitations,

16   which would cover only those violations beginning August 16, 2003.

17      To establish a "willful violation" of the FLSA, Plaintiffs needed to show that the City

18   either knew or showed reckless disregard for whether its conduct was prohibited by the statute.

19   *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–35 (1998).  If the City only knew that the

20   law was *potentially* applicable, its conduct is not "willful."  Furthermore, negligence is not

21   enough to establish willfulness.  *Id.*; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003);

22   *Reich v. Gateway Press*, 13 F.3d 685, 702–703 (3d Cir. 1994); *Lockwood v. Prince George's*

23   *County*, 58 F. Supp. 2d 651, 658 (D. Md. 1999); Kevin O'Malley et al., *Federal Jury Practice*

24   *and Instructions, Civil*, Fair Labor Standards Act § 175.35, p. 656 (5th ed. 2001) (current

25   ───────────────────────

26   [77]   If the Court concludes that Plaintiffs have carried their burden to prove the inaccuracy of
     the City's records, Plaintiffs may not recover more than the amount of uncompensated overtime
27   they worked as a matter of just and reasonable inference, *i.e.*, the *reasonable* amount of time
     engaged in compensable work activities.  *See, e.g.*, *Bull v. United States*, 68 Fed. Cl. 276 (2005);
28   *Albanese v. Bergen County*, 991 F. Supp. 410, 424 (D.N.J. 1998); *Hellmers v. Town of Vestal*,
     969 F. Supp. 837 (N.D.N.Y. 1997); *Amos v. United States*, 13 Cl. Ct. 442, 450 (1987).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO                SD\664259.8

                                        40

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    through 2008); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993).  In *McLaughlin*,

2    the Supreme Court explained that "[t]he fact that Congress did not simply extend the limitations

3    period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious

4    that Congress intended to draw a *significant* distinction between ordinary violations and willful

5    violations."  486 U.S. at 132 (emphasis added).

6           Plaintiffs have presented no evidence that the City's alleged violation of the FLSA was

7    "willful."  On the contrary, the evidence has overwhelmingly demonstrated that the City has

8    taken affirmative steps to comply with the FLSA, by making efforts to stay apprised of the law in

9    this area, implementing policies, and routinely approving and encouraging the submissions

10   overtime requests.[78]  In addition, at each Division, informational posters are displayed explaining

11   the FLSA.[79]

12          Importantly, Plaintiffs cannot meet their burden by simply showing that the City knew or

13   should have known that Plaintiffs were working uncompensated overtime, because this is the

14   minimum showing necessary to establish that the City violated the FLSA at all.  Such a showing

15   is therefore insufficient on its own to merit the "significant distinction between ordinary

16   violations and willful violations," as is necessary to warrant the extension of the statute of

17   limitations.  *McLaughlin*, 486 U.S. at 132.  Plaintiffs have not gone beyond this minimum

18   showing to elicit testimony that the City maliciously, intentionally, or willfully violated the

19   FLSA.  In fact, to accept Plaintiffs' position that neither they nor their superiors understood

20   certain activities to constitute "work," is to accept that the City was at most *negligent* as to the

21   possibility that it was violating the FLSA, and truly not knowingly or recklessly disregarding that

---

[78]     Trial Tr. 1025:2–12, Jan. 14, 2009 (Cooper) (discussing training provided by the
Department in overtime reporting and overtime procedures); *id.* at 1026:14–16 (no specific
training regarding the legal definition of "work," but noting that "there certainly is training on
what is compensable and what is not overtime" under the Department's
procedure); *id.* at 1026:21–1027:3 (received and responded to numerous questions as a Deputy
City Attorney regarding various FLSA issues; participated in collective bargaining sessions
where these types of issues were brought up); *id.* at 1028:2–15 (has addressed various questions
at all ranks regarding overtime issues); *id.* at 1072 (noting, with respect to Department policies
and procedures "throughout the years you review case law, you review all kinds of things to
make sure that we are in compliance with the FLSA"); *id.* at 1072:21–23 (noting that Department
Procedure 1.20 would have received legal review).

[79]     *E.g.*, Trial Tr. 1576:1–4, Jan. 22, 2009 (Sarot).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

41

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    possibility.  Indeed, where, as here, the employer's FLSA liability depends in part upon the

2    resolution of unsettled and relatively-novel legal issues, the mere fact of potential FLSA liability,

3    without more, is insufficient to establish a willful violation.  The Supreme Court has repeatedly

4    rejected the argument that an employer's behavior is "willful" merely because the employer

5    knows the FLSA (or other labor law) is "in the picture."  *See McLaughlin*, 486 U.S. at 133–34;

6    *Biggins*, 507 U.S. at 614–15 (rejecting an "in the picture" standard for finding willful ADEA

7    violations); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–30 (1985).  The Supreme

8    Court explained that a standard of willfulness that requires the employer to merely know the

9    FLSA is "in the picture" would "virtually obliterate[] any distinction between willful and

10    nonwillful violations," destroying the two-tiered approach intended by Congress.  *McLaughlin*,

11    486 U.S. at 132–33.  Because, at most, Plaintiffs have shown *non*feasance, not *mal*feasance, they

12    qualify for the standard two-year, not three-year, statute of limitations as a matter of law.

13        **G.**     **Plaintiffs' Remaining Claims to Compensable Overtime Are Severely**

14              **Limited by 29 U.S.C. § 207(k)**

15             **1.**     **Plaintiffs' Claims Should Be Limited to Uncompensated Overtime in Excess of Three Hours Per Seven-Day Work Period**

16          Under the FLSA, employees normally are entitled to receive overtime pay, at time-and-a-

17    half (*i.e.*, the premium rate), for all hours worked in excess of forty per week.  29 U.S.C.

18    § 207(a)(1); Nov. 9, 2007 Order (Dkt # 265), at 14:17–19.  However, § 207(k) provides an

19    exception to that rule for public agencies, like the City, with respect to "any employees in law

20    enforcement activities," to whom "a work period of at least 7 but less than 28 days applies."

21    29 U.S.C. § 207(k); Nov. 9, 2007 Ord. at 14:19–23.  These employees are entitled to overtime

22    pay only after they have worked more than 171 hours in a twenty-eight day work period (or, as

23    in this case, forty-three hours in a seven-day work period), which equals 156 hours on a yearly

24    basis.  29 U.S.C. § 207(k)(2); Nov. 9, 2007 Ord. at 14:23–25.  The City has already established

25    the § 207(k) exemption with respect to Plaintiffs.  Nov. 9, 2007 Ord. at 14–20.  Furthermore, the

26    Court already has ruled that Plaintiffs are not entitled to any "gap time" payments.  Nov. 9, 2007

27    Ord. at 20.  In addition, the Court also has ruled that the § 207(k) partial exemption applies in

28    each and every work period, irrespective of whether the officer worked any overtime for which

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

42

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

he or she was compensated in the work period.  *See* Order Granting Defendant's Motion for Summary Judgment on Breach of Contract Claim and Partial Summary Judgment on Fair Labor Standards Act Claim, Aug. 19, 2008 (Dkt # 491) at 6–7; Order Denying Plaintiffs' Amended Motion for Reconsideration, Oct. 28, 2008 (Dkt # 528) at 2 (City obligated to pay only *uncompensated* overtime hours in excess of forty-three per work period).[80]  Thus, unless Plaintiffs prove that they are owed in excess of three hours of uncompensated overtime in any particular work period, Plaintiffs have not presented sufficient evidence to support their claims and the City is entitled to judgment as a matter of law.  *See* Aug. 19, 2008 Ord. at 6; Oct. 28, 2008 Ord. at 3–4.

The evidence presented at trial establishes that the City's maximum potential liability to each of the trial Plaintiffs is limited to the following hourly amounts (h:mm) per week, after § 207(k) is applied:

| Plaintiff | Pre-shift/wk | Post-shift/wk | "Other" claims/wk | Total claims/wk | Total claims remaining after 207(k) adjustment (3 hrs/wk) | Time Period |
|---|---|---|---|---|---|---|
| Bane | 0:30 | 0:40 | 6:55 | 8:05 | 5:05 | [81] |
| | 0:30 | 0:40 | 5:55 | 7:05 | 4:05 | [82] |
| | 0:23 | 1:20 | 0:57 | 2:40 | 0:00 | [83] |
| | 0:20 | 0:00 | 0:00 | 0:20 | 0:00 | [84] |

---

[80]     Counsel for Plaintiffs suggested during an evidentiary hearing on January 27, 2009 that Plaintiffs may again advance their argument that in any work period when an officer was paid overtime compensation for three or more hours, that the § 207(k) partial exemption would no longer have any impact upon Plaintiffs' claimed overtime for that work period, *i.e.*, that Plaintiffs would not, in that circumstance, have to prove that they worked *uncompensated* hours in excess of forty-three hours per work period.  This argument already has been considered and rejected in the Court's rulings on Plaintiffs' motion for reconsideration.  Oct. 28, 2008 Ord. (Dkt # 528) at 2.

[81]     Bane's calculations for full-time SWAT assignment, August 2002 through December 2002.

[82]     Bane's calculations for full-time SWAT assignment, January 2003 through October 2003.

[83]     Bane's calculations for Mounted Enforcement Unit assignment, October 2003 through March 2006.

[84]     Bane's calculations for Traffic Division assignment, March 2006 through 2008.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

43

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

| Plaintiff | Pre-shift/wk | Post-shift/wk | "Other" claims/wk | Total claims/wk | Total claims remaining after 207(k) adjustment (3 hrs/wk) | Time Period |
|---|---|---|---|---|---|---|
| Browder | 1:40 | 1:00 | 2:25 | 4:45 | 1:45 | [85] |
| Broxtermann | 1:20 | 1:40 | 2:20 | 5:20 | 2:20 | [86] |
| Friedman | 2:00 | 0:40 | 0:45 | 3:25 | 0:25 | [87] |
|  | 0:15 | 0:00 | 0:00 | 0:15 | 0:00 | [88] |
|  | 1:40 | 0:40 | 0:45 | 3:05 | 0:05 | [89] |
| Larmour | 2:20 | 1:00 | 0:21 | 3:41 | 0:41 | [90] |
| McCollough | 1:20 | 0:20 | 0:00 | 1:40 | 0:00 | [91] |
| Sarot | 1:20 | 1:00 | 4:08 | 6:28 | 3:28 | [92] |
|  | 2:20 | 1:00 | 4:08 | 7:28 | 4:28 | [93] |
| Shiraishi | 1:20 | 1:00 | 3:46 | 6:06 | 3:06 | [94] |
|  | 1:20 | 1:00 | 0:00 | 2:20 | 0:00 | [95] |

Because Plaintiff McCollough's work period or weekly claims do not exceed three hours, the evidence is insufficient as a matter of law to establish any liability by the City to Plaintiff

---

[85]    Browder's calculations constant across all periods through 2008.

[86]    Broxtermann's calculations constant across all periods, through 2008.

[87]    Friedman's calculations for Accident Investigations Bureau assignment, August 2002 through November 2003.

[88]    Friedman's calculations for Traffic Investigations Unit assignment, November 2003 through October 2004.

[89]    Friedman's calculations for Accident Investigations Bureau assignment, November 2004 through 2008.

[90]    Larmour's calculations constant across all periods, through retirement in May 2007.

[91]    McCollough's calculations constant across all periods, through 2008.

[92]    Sarot's calculations for Patrol assignments, between August 2002 and October 11, 2005.

[93]    Sarot's calculations for Sergeant assignment, between October 12, 2005 and 2008.

[94]    Shiraishi's calculations for Neighborhood Policing assignment, August 16, 2002 through February 28, 2003.

[95]    Shiraishi's calculations for Patrol assignments, between March 1, 2003 and promotion to Sergeant on August 23, 2008.  Shiraishi is not asserting any claims since his promotion to Sergeant.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

44

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1  McCollough.  Similarly, the evidence is insufficient as a matter of law to establish any liability

2  by the City to:  (1) Plaintiff Bane during the periods of time he was assigned to the Mounted

3  Enforcement Unit or the Traffic Division; (2) Plaintiff Friedman during the period of time he

4  was assigned to the Traffic Investigations Unit; and (3) Plaintiff Shiraishi during the period of

5  time he was assigned to patrol assignments (not neighborhood policing).[96]  With regard to

6  Friedman, the remaining potential liability for the periods of time he was assigned to the

7  Accident Investigations Bureau between 2005 and 2008 -- approximately five minutes per week

8  -- is arguably *de minimis* as a matter of law.

9         In addition, should the Court grant the City's motion for judgment as a matter of law with

10  respect to court preparation time and range certification time, *see supra* at 11–19, the City also is

11  entitled to judgment as a matter of law with respect to the work period or weekly claims of

12  Plaintiffs Broxtermann and Friedman (from November 2004 through 2008), whose claims would

13  not exceed three hours per week or work period when the court preparation and range practice

14  time is removed from their claims.

15         **2.      The "Eighty Percent" Rule Is Inapplicable, or Has Been Satisfied**

16         While Plaintiffs recently have argued that the City is not eligible for the § 207(k)

17  exemption as to any particular Plaintiff unless the City first establishes that the Plaintiff spent

18  more than eighty percent of his working time engaged in "law enforcement" activities, this

19  contention is flawed in that it fails to recognize that Plaintiffs, as sworn law enforcement

20  officers, are *always* considered engaged in law enforcement activities.  *See* 29 C.F.R.

21  § 553.211(a) ("[T]he term 'any employee . . . in law enforcement activities' refers to any

22  employee (1) who is a uniformed or plainclothed member of a body of officers and subordinates

23  who are empowered by State statute or local ordinance to enforce laws designed to maintain

24  public peace and order and to protect both life and property from accidental or willful injury, and

25  to prevent and detect crimes, (2) who has the power to arrest, and (3) who is presently

26  ─────────────────

27  [96]      Were the Court to determine that Plaintiffs have failed to prove any purported violation
    of the FLSA was willful, *see supra*, the City would be entitled to judgment as a matter of law

28  with regard to Shiraishi, as the neighborhood policing assignment concluded prior to the two
    year statute of limitations.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

45

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   undergoing or has undergone or will undergo on-the-job training and/or a course of instruction

2   and study which typically includes physical training, self-defense, firearm proficiency, criminal

3   and civil law principles, investigative and law enforcement techniques, community relations,

4   medical aid and ethics."); *see also Mills v. State of Maine*, 839 F. Supp. 3, 5–6 (D. Me. 1993)

5   (probation officers considered engaged in law enforcement for purposes of § 207(k) and

6   regulations when they satisfied the three-part test of 29 C.F.R. § 553.211(a).  The City has

7   elicited testimony from each of the Plaintiffs that establishes that they are law enforcement

8   officers who are engaged in law enforcement activities.[97]

9           This is so even when Plaintiffs are engaged in support functions or during periods when

10   they may be assigned to light duty.  29 C.F.R. § 553.211(b) ("Employees who meet these tests

11   are considered to be engaged in law enforcement activities regardless of their rank, or of their

12   status as 'trainee,' 'probationary,' or 'permanent,' and ***regardless of their assignment to duties***

13   ***incidental to the performance of their law enforcement activities*** such as equipment

14   maintenance, and lecturing, or to support activities of the type described in paragraph (g) of this

15   section, whether or not such assignment is for training or familiarization purposes, or for ***reasons***

16   ***of illness, injury or infirmity***.") (emphasis added).  Therefore, contrary to Plaintiffs' assertion in

17   their proposed jury instructions, "a police officer working as a dispatcher" *is* engaged in law

18   enforcement activities and is properly subject to a § 207(k) work schedule.  Indeed, the

19   regulation upon which Plaintiffs purport to rely is inapposite as it provides only that " '***civilian***'

20   ***employees*** of law enforcement agencies . . . who engage in such support activities as those

21   performed by dispatcher" are "[n]ot included in the term 'employee in law enforcement

22   activities.'"  29 C.F.R. § 553.212 (emphasis added).

23           Notably, the Department of Labor has issued a Notice of Proposed Rulemaking that

24   proposes to remove § 553.212 altogether from its interpretive regulations.  Proposed Rules,

25

26   ───────────────
    [97]     Trial Tr. 1451:18–52:16, Jan. 20, 2009 (Broxtermann); Trial Tr. 566:3–567:14, Jan. 12,
27   2009 (Bane); Trial Tr. 1513:18–1514:25, Jan. 20, 2009 (Shiraishi); Trial Tr. 1259:10–1260:2,
     Jan. 15, 2009 (Browder); Trial Tr. 803:6–15, Jan. 13, 2009 (McCollough); Trial Tr. 1163:16–
28   1165:8, Jan. 14, 2009 (Larmour); Trial Tr. 1661:3–1662:21, Jan. 22, 2009 (Sarot); Trial Tr.
     966:16–967:23, Jan. 14, 2009 (Friedman) (except for a four-day period in August 2003).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO        SD\664259.8

46        CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
          DEFENDANT'S MOTION FOR JUDGMENT AS A
          MATTER OF LAW; MEMORANDUM OF PS & AS

1  Dep't of Labor, W-H Div., RIN 1215-AB13, Updating Regulations Issued Under the Fair Labor

2  Standards Act, 73 FR 43654 (Jul. 28, 2008).  Specifically, the Department of Labor recognizes

3  that, in effect, the "eighty percent rule" served only as a "gloss on the pre-existing regulatory

4  definition" of employees engaged in fire protection activities.  *Id.* at 43658.  In light of the

5  enactment of 29 U.S.C. § 203(y), and court decisions construing § 553.212 in light of the

6  adoption of § 203(y), the DOL concluded that § 553.212 is "unnecessary."  *Id.*  Although the text

7  of the regulation purports to apply the "eighty percent rule" to law enforcement employees as

8  well as employees engaged in fire protection activities, given the breadth of the definition of

9  employees engaged in law enforcement activities stated in § 533.211 (which expressly includes

10  support activities and other duties incidental to law enforcement activities), the eighty percent

11  "gloss" is not applicable to law enforcement employees.  The DOL's proposal to remove

12  § 553.212 from its interpretive regulations implicitly recognizes the inapplicability of the "eighty

13  percent rule" to law enforcement officers.[98]

14      Even if the Court were to conclude that the City must make some additional showing to

15  satisfy the Department of Labor's "eighty percent" regulation,[99] the evidence presented at trial is

---

16,17  [98]  As of this date, no final action has been taken on the proposed rule, although the comment period is closed.

18,19  [99]  Plaintiffs' statements at trial and in conferences with the Court suggest that Plaintiffs contend the City must prove that Plaintiffs were engaged in "law enforcement activities" for purposes of § 207(k) through evidence documenting the precise amount of time each Plaintiff spent engaged in any particular work activity.  This assertion is not supported by any authority.

20,21,22,23,24,25  Instead, the City's research confirms that in the relatively few cases discussing the § 207(k) partial exemption as it applies to law enforcement officers, courts implicitly assume that law enforcement officers employed by a public agency are engaged in "law enforcement activities" such that they would be subject to the § 207(k) partial exemption.  *See*, *e.g.*, *Adair v. City of Kirkland*, 185 F.3d 1055, 1060–62 (9th Cir. 1999); *Lamon v. City of Shawnee*, 972 F.2d 1145, 1151–55 (10th Cir. 1992); *Birdwell v. City of Gadsden*, 970 F.2d 802, 804–07 (11th Cir. 1992); *Lee v. Coahoma County*, 937 F.2d 220, 224–25 (5th Cir. 1991); *McGrath v. City of Philadelphia*, 864 F. Supp. 466, 477–78 (E.D. Pa. 1994).  In at least one case, a district court agreed that the § 207(k) exemption applies to employees who meet the three requirements of 29 C.F.R. § 553.211(a).  *Mills*, 839 F. Supp. at 5–6 (probation officers considered engaged in law enforcement for purposes of § 207(k) and regulations when they satisfied the three-part test of 29 C.F.R. § 553.211(a)).

26,27,28  The City's research has identified only one case that suggests that an employee who satisfies these requirements could be ineligible for the § 207(k) exemption if he or she performed more than twenty percent "nonexempt" work.  *Baker v. Stone County*, 41 F. Supp. 2d 965, 991–92 (W.D. Mo. 1999) (concluding that individuals who worked full time as sheriffs' deputies were engaged in law enforcement activities for purposes of § 207(k), but also concluding that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

47

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1    sufficient to establish that Plaintiffs were engaged in law enforcement activities in all work

2    periods for which they claim to have engaged in uncompensated overtime activities.[100]

3         In short, under any analysis, Plaintiffs' claimed uncompensated overtime hours are

4    severely limited, or in some cases, eliminated entirely, when § 207(k) is taken into account.

5    **H.    Plaintiffs Have Failed to Prove Their Regular Rate of Pay Was Miscalculated**

6         In some pre-trial briefing, Plaintiffs indicated that they contend the City miscalculated

7    their regular rate of pay.  However, Plaintiffs presented no evidence to support any such

8    contention during their case-in-chief; accordingly, the City is entitled to judgment as a matter of

9    law on this issue.[101]

10

11

---

12   these individuals would not be subject to § 207(k) during time periods that any were assigned as
     dispatchers).  However, this opinion is directly contradicted by the plain language of the
13   regulations, which treat sworn law enforcement officers as engaged in law enforcement activities
     even during period of time they may serve as dispatchers, and thus would not seem to be
14   persuasive authority.

15        Furthermore, cases discussing the so-called "eighty percent" rule as it was applied to fire
     protection employees (prior to the enactment of § 203(y)) imposed no such burden upon public
16   agency employers.  *E.g.*, *Christian v. City of Gladstone*, 108 F.3d 929, 933–35 (8th Cir. 1997);
     *see also* Dep't of Labor W-H Div. Ltr. Ruling (Jan. 9, 1992) (no requirement that time be broken
     down among calls).

17   [100]   Trial Tr. 725:22–726:9 (McCollough) (explaining duties in Northern Division patrol and
18   Traffic Division since August 2002); Trial Tr. 857:2–10, 861:10–21, 861:15–862:6, 864:11–25,
     Jan. 13, 2009 (Friedman) (describing assignments since August 2002 to Traffic Division
19   Accident Investigation Bureau, Traffic Investigation Unit, and collateral SWAT duties through
     November 2004); Trial Tr. 1414:22–1415:2, 1415:14–17, Jan. 20, 2009 (Broxtermann) (assigned
20   to Northern Division as a patrol officer since at least August 2002, discussing drunk driving
     enforcement efforts); Trial Tr. 464:22–465:23, 466:19–467:3, 467:17–468:1, 496:14–471:19,
21   Jan. 12, 2009 (Bane) (describing assignments and duties in SWAT, Mounted Enforcement Unit,
     collateral SWAT, and Traffic division, including the Photo Red Light and Vehicle Abatement
22   programs); Trial Tr. 1211:4–12, 1214:9–1215:7, Jan. 15, 2009 (Browder) (assigned to Western
     Patrol from 2001 to present, describing duties as member of Primary Response Team); Trial Tr.
23   1485:23–1486:4, 1491:23–1492:3, 1492:17-23, Jan. 20, 2009 (Shiraishi) (assigned to Western
     Division as Sergeant, previously assigned to Northeastern Division as a patrol officer and field
24   training officer, discussing duties as a patrol officer); Trial Tr. 1141:12–22, Jan. 14, 2009
     (Larmour) (describing assignment as sergeant for Barrio Logan area); *id.* at 1150:14–17 (served
25   as field sergeant); Trial Tr. 1570:1–13, Jan. 22, 2009 (Sarot) (describing investigative
     assignments); *id.* at 1571:3–15 (describing buffer zone protection program assignment), *id..* at
26   1572:11–25 (describing patrol capacity).

     [101]   Plaintiffs' Trial Brief contained no reference to improper rate of pay calculations.  *See*
27   Plaintiffs' Trial Brief (Dkt # 665).  Moreover, Plaintiffs' deposition testimony specifically
     indicated that the officers were not claiming compensation for improper rate calculations.
28   Accordingly, Plaintiffs have abandoned this argument.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

48

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

IV.    CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court enter judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) in favor of the City, as follows:

1.    All Plaintiffs failed to present substantial evidence that loading vehicles before their shifts constituted compensable "work" under the FLSA and governing case law.

2.    Plaintiffs Browder, Broxtermann, Sarot and Shiraishi, have failed to present substantial evidence that, at all relevant times during which they held the rank of Police Officer II or below, various pre-shift activities constituted compensable "work" time under the FLSA and governing case law.  These activities include loading patrol vehicles, checking email, checking telephone messages, and all other such pre-shift activities.

3.    Plaintiffs Browder, Broxtermann, Friedman, Larmour, and Sarot failed to present substantial evidence that they are entitled to additional overtime compensation under the FLSA for time spent preparing for, or related to, court appearances.  Plaintiffs and the City have entered into a "reasonable agreement of the parties" as permitted by Department of Labor Regulations and these activities therefore do not qualify for additional compensation as a matter of law.  The remaining Plaintiffs do not allege that they performed uncompensated court-related activities.

4.    Plaintiffs Broxtermann, Friedman, and Larmour failed to present substantial evidence that time spent in training in weapons proficiency is compensable under the FLSA.  Pursuant to Department of Labor regulations, time spent engaging in weapons proficiency on Plaintiffs' own accord is not compensable as a matter of law.  The remaining Plaintiffs do not allege that they performed uncompensated range training time.

5.    Plaintiff Larmour failed to present substantial evidence that time spent maintaining his uniform is compensable.  Under the Department of Labor Regulations, the annual uniform allowance represents agreed-upon compensation for uniform replacement and maintenance costs.  The City is therefore entitled to a judgment as a matter of law against Plaintiff Larmour's claim for uniform maintenance.  The remaining Plaintiffs do not allege that they performed uncompensated uniform maintenance.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

49

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

6.      Plaintiffs Browder and Sarot failed to present substantial evidence that certain (non-court-related) travel time was compensable under the FLSA.  Under the Portal-to-Portal Act, this time is not compensable as a matter of law.  The remaining Plaintiffs do not allege uncompensated (non-court-related) travel time.

7.      All Plaintiffs failed to present substantial evidence that the various pre-shift and post-shift activities for which they seek compensation were integral and indispensable to a principal activity.  Accordingly, these pre-shift and post-shift activities are "preliminary" and "postliminary," respectively, and are not compensable as a matter of law under the Portal-to-Portal Act.

8.      All Plaintiffs failed to present substantial evidence that certain  of their claimed pre-shift, post-shift, and "other" activities were more than *de minimis*.  Accordingly, the City is entitled to judgment as a matter of law with respect to these activities.

9.      All Plaintiffs failed to present substantial evidence that the City suffered or permitted them to engage in uncompensated work during the relevant time period.

10.     All Plaintiffs failed to present substantial evidence that the City failed to keep accurate and complete records of all hours worked.

11.     Alternatively, if Plaintiffs have presented evidence sufficient to avoid wholesale judgment as a matter of law on their claims, the City nevertheless is entitled to judgment as a matter of law to the extent indicated below as to each of the trial Plaintiffs' claims:

    a.     <u>Plaintiff Joseph Bane</u>:  The City is entitled to judgment as a matter of law on Plaintiff Bane's pre-shift, post-shift, and "other" claims for all periods except for the period between August 2002 and October 2003, when he was assigned to full-time SWAT, because he has proven no uncompensated overtime for these activities in excess of the 29 U.S.C. § 207(k) partial exemption.  The City is likewise entitled to judgment as a matter of law on Bane's pre- and post-shift claims during the period of time he was assigned to full-time SWAT because he has proven no uncompensated overtime for these activities in excess of the § 207(k) partial exemption.

LATHAM&WATKINS℠
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

50

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

b.  <u>Plaintiff Thomas Broxtermann</u>:  The City is entitled to judgment as a matter of law on Plaintiff Broxtermann's pre- and post-shift claims because he has proven no uncompensated overtime for these activities in excess of the 29 U.S.C. § 207(k) partial exemption.  In addition, because Broxtermann's remaining "other" uncompensated overtime claims consist exclusively of time spent preparing for court for which he already has been compensated, and time spent practicing at the range for which no compensation is due, the City is entitled to judgment as a matter of law as to all of Broxtermann's claims.

c.  <u>Plaintiff Neal Browder</u>:  The City is entitled to judgment as a matter of law on Plaintiff Browder's pre- and post-shift claims because he has proven no uncompensated overtime for these activities in excess of the 29 U.S.C. § 207(k) partial exemption.  In addition, applying the remainder of the § 207(k) partial exemption against Browder's "other" overtime claims, lowers those claims such that the City could not possibly be liable for more than one hour, forty-six minutes per week.  As to this remaining "other" uncompensated time, the City is entitled to judgment as a matter of law with respect to the portion of this time that pertains to court preparation activities (forty-one minutes per week) because he has already been compensated for that time.  Partial judgment as a matter of law also should be granted in favor of the City on the portion of Browder's "other" claim that pertains to time spent traveling to and from SWAT training (four minutes per week), because no compensation is due for this activity as a matter of law.  Taking account these adjustments, Browder remains with an "other" overtime claim of, *at most*, one hour, one minute per week (one hour forty-six minutes minus forty-one minutes (court) minus four minutes (travel time)).

d.  <u>Plaintiff Kevin Friedman</u>:  The City is entitled to judgment as a matter of law on Plaintiff Friedman's claims while he was assigned to the Traffic Investigation Unit because he has proven no uncompensated overtime in excess of the 29 U.S.C. § 207(k) partial exemption.  The City also is entitled to partial

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

51

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   judgment as a matter of law on Friedman's claims while he was assigned to the

2   Accident Investigation Bureau, because he has proven not more than five minutes

3   of uncompensated pre- or post-shift overtime per week in excess of the § 207(k)

4   partial exemption during the period August 2002 until November 2004, and not

5   more than twenty-five minutes of uncompensated overtime per week in excess of

6   the § 207(k) partial exemption during the period November 2005 through

7   September 2008.  In addition, because ten minutes per week of Friedman's

8   remaining "other" uncompensated overtime claims consist exclusively of time

9   spent preparing for court for which he already has been compensated, if this

10   court-related time is subtracted from Friedman's claims, the City is entitled to

11   judgment as a matter of law as to all of Friedman's claims during the period

12   August 2002 until November 2004, and could potentially be liable for not more

13   than fifteen minutes per week during the period November 2005 through

14   September 2008.

15   e.   Plaintiff Michael McCollough:  The City is entitled to judgment as a matter of law

16   on Plaintiff McCollough's claims because he has proven no uncompensated

17   overtime in excess of the 29 U.S.C. § 207(k) partial exemption.

18   f.   Plaintiff Ronald Larmour:  The City is entitled to partial judgment as a matter of

19   law as to Plaintiff Larmour's pre- and post-shift claims because he has proven not

20   more than twenty minutes per week of uncompensated overtime in excess of the

21   29 U.S.C. § 207(k) partial exemption.  In addition, because a portion of

22   Larmour's remaining "other" uncompensated overtime claims consist exclusively

23   of time spent preparing for court for which he already has been compensated, time

24   spent practicing at the range for which no compensation is due, and time spent

25   maintaining uniforms which is not compensable, the City also is entitled to

26   judgment as a matter of law on his "other" uncompensated overtime claims.

27   g.   Plaintiff Christopher Sarot:  The City is entitled to partial judgment as a matter of

28   law on Plaintiff Sarot's pre- and post-shift claims for all periods of time until his

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

52

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS

1   promotion in October 2005, because he has proven no uncompensated overtime

2   for these activities in excess of the 29 U.S.C. § 207(k) partial exemption.

3   Additionally, the City is entitled to judgment as a matter of law that the travel

4   time Sarot is seeking compensation for -- at least two hours per week -- and the

5   court preparation and travel time -- approximately twenty minutes per week -- is

6   not compensable during any period.

7     h. <u>Plaintiff Michael Shiraishi</u>:  The City is entitled to judgment as a matter of law on

8     Plaintiff Shiraishi's claims for all period except from August 16, 2002 to February

9     28, 2003, because, during these periods, he has proven no uncompensated

10    overtime in excess of the 29 U.S.C. § 207(k) partial exemption.  In addition,

11    because Shiraishi's remaining claims all fall outside the two-year limitations

12    period, if the Court agrees that Plaintiffs have failed to present sufficient evidence

13    to prove that the City, if it violated the FLSA, did so willfully, the City is entitled

14    to judgment as a matter of law as to all of Shiraishi's claims.

15   12. At a minimum, the City is entitled to judgment as a matter of law on all claims for

16  overtime compensation after September 2008, when Plaintiffs acknowledged they would adhere

17  to the Department's policies regarding approval and submission of overtime.

18   13. In addition, the City is entitled to partial judgment as a matter of law that a two-

19  year limitations period applies to Plaintiffs' claims, because Plaintiffs have failed to establish

20  that the City acted willfully to violate the FLSA.

21   14. The City is entitled to partial judgment as a matter of law with regard to

22  Plaintiffs' contention that Plaintiffs' regular rate of pay was improperly calculated.

23  Dated:  January 27, 2009     LATHAM & WATKINS LLP

24            Office of the City Attorney
              George Schaefer, Deputy City Attorney

25

26            By:  /s/ Colleen C. Smith
               Colleen C. Smith

27             colleen.smith@lw.com
              Attorneys for Defendant the City of San Diego

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\664259.8

53

CASE NOS. 05-CV-1629 &06-CV-0538 DMS (RBB)
DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW; MEMORANDUM OF PS & AS